Sara B. Brody (SBN 130222)
sbrody@sidley.com
Nicole M. Ryan (SBN 175980)
nicole.ryan@sidley.com
TJ Herron (SBN 331728)
therron@sidley.com
Stephen Tang (SBN 336273)
stang@sidley.com
SIDLEY AUSTIN LLP
555 California St., Suite 2000
San Francisco, CA 94104
Telephone: +1 (415) 772-1200
Facsimile: +1 (415) 772-7400

*Attorneys for Defendants*
SPLUNK INC., DOUGLAS MERRITT, and
JASON CHILD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE SPLUNK INC. SECURITIES LITIGATION | Case No. 4:20-cv-08600-JST<br><br>CLASS ACTION<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>Date:   November 18, 2021<br>Time:   2:00 p.m.<br>Judge:  Hon. Jon S. Tigar<br>Courtroom: 6 |

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...........................................................................................................1

II.   TIMELINE OF ALLEGED MISSTATEMENTS AND DISCLOSURES ...................................1

III.  ARGUMENT.................................................................................................................2

    A.    Most of the Challenged Statements Are Protected by the PSLRA Safe Harbor. ..............2

    B.    Plaintiff Does Not Plead a Materially False or Misleading Statement. ...........................5

        1.    Statements Related to Hiring ...............................................................................5

        2.    Statements Related to Marketing Investments.......................................................9

        3.    Statement Regarding Layoffs ............................................................................12

    C.    Plaintiff Fails to Plead a Strong Inference of Scienter.....................................................12

    D.    Plaintiff Fails to Plead Loss Causation. .........................................................................14

        1.    Plaintiff Does Not Allege Loss Causation for the Layoffs Statement. ................14

        2.    Plaintiff Fails to Allege Loss Causation Under a Revelation of Fraud Theory....14

        3.    Plaintiff Fails to Allege Loss Causation Under a Risk Materialization Theory. .14

IV.   CONCLUSION.............................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ................................................................................................... 6

*In re Apple Inc. Sec. Litig.*,
2020 WL 2857397 (N.D. Cal. June 2, 2020) ...................................................................... 15

*BofI Holding, Inc. Sec. Litig.*,
2017 WL 2257980 (S.D. Cal. May 23, 2017) ....................................................................... 6

*Carvelli v. Ocwen Fin. Corp.*,
934 F.3d 1307 (11th Cir. 2019) ........................................................................................ 3, 4

*Daniels–Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ............................................................................................... 8

*In re Fusion-io, Inc. Sec. Litig.*,
2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ....................................................................... 3

*Huang v. Higgins*,
2019 WL 1245136 (N.D. Cal. Mar. 18, 2019)..................................................................... 8

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
998 F.3d 397 (9th Cir. 2021) ............................................................................................. 14

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ............................................................................................... 8

*Lamartina v. VMware, Inc.*,
2021 WL 4133851 (N.D. Cal. Sept. 10, 2021) .................................................................... 3

*In re Merit Med. Sys., Inc. Sec. Litig.*,
2021 WL 1258590 (C.D. Cal. Mar. 16, 2021)..................................................................... 3

*Mineworkers' Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018) ............................................................................................. 14

*Murphy v. Precision Castparts Corp.*,
2021 WL 2080016 (D. Or. May 21, 2021) ........................................................................... 5

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ............................................................................................. 13

*In re Nimble Storage, Inc. Sec. Litig.*,
   252 F. Supp. 3d 848 (N.D. Cal. 2017),
   *aff'd*, 756 F. App'x 779 (9th Cir. 2019).................................................................................... 11

*Nuveen Mun. High Income Opp. Fund v. City of Alameda*,
   730 F.3d 1111 (9th Cir. 2013) ................................................................................................ 15

*In re Pivotal Sec. Litig.*,
   2020 WL 4193384 (N.D. Cal. July 21, 2020)........................................................................... 3

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ........................................................................................... 4, 10

*Prodanova v. H.C. Wainwright & Co.*,
   993 F.3d 1097 (9th Cir. 2021) ................................................................................................ 13

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) .............................................................................................. 3, 4

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
   845 F.3d 1268 (9th Cir. 2017) ................................................................................................ 10

*In re Rigel Pharms. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) .................................................................................................. 13

*Sayce v. Forescout Techs., Inc.*,
   2021 WL 1146031 (N.D. Cal. Mar. 25, 2021)........................................................................... 6

*Sayce v. Forescout Techs., Inc.*,
   2021 WL 4594768 (N.D. Cal. Oct. 6, 2021)........................................................................... 6, 7

*Scheller v. Nutanix, Inc.*,
   450 F. Supp. 3d 1024 (N.D. Cal. 2020) ............................................................................ 5, 6, 8

*In re Twitter, Inc., Sec. Litig.*,
   2021 WL 4166725 (N.D. Cal. Sept. 14, 2021) ......................................................................... 4

*Webb v. Solarcity Corp.*,
   884 F.3d 844 (9th Cir. 2018) .................................................................................................. 13

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) .........................................................................................*passim*

*Yan v. ReWalk Robotics Ltd.*,
   973 F.3d 22 (1st Cir. 2020)....................................................................................................... 3

*Yaron v. Intersect ENT, Inc.*,
   2020 WL 6750568 (N.D. Cal. June 19, 2020) ........................................................................ 15

DEFENDANTS' REPLY ISO MOTION TO DISMISS CONSOL. COMPLAINT – CASE NO. 4:20-cv-08600-JST

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ................................................................................................. 8

DEFENDANTS' REPLY ISO MOTION TO DISMISS CONSOL. COMPLAINT – CASE NO. 4:20-cv-08600-JST

## I.      INTRODUCTION

The Opposition plays fast and loose with the challenged statements, repeatedly altering verb tenses and omitting key portions of the statements that show they are subject to dismissal.  A review of the full statements shows that most are protected by the PSLRA safe harbor, and none are false or misleading.  In addition, Plaintiff fails to allege scienter and loss causation with particularity.  Accordingly, the Court should dismiss the CC.[1]

## II.      TIMELINE OF ALLEGED MISSTATEMENTS AND DISCLOSURES

Because Plaintiff nowhere clearly sets out the alleged misstatements, Defendants list them below chronologically, in summary form and bold type, together with other relevant disclosures for reference.

| | |
|---|---|
| March 26, 2020 | Splunk filed its 10-K for the year ended January 31, 2020, in which **it made general statements about its growth strategy and expectation that its sales and marketing expenses will continue to increase as it continues to hire and invest in marketing**.  Mot. at 4; Ex. 1.  Splunk also disclosed its total sales and marketing expenses for the quarter, which had increased year-over-year and quarter-over-quarter.  Mot. at 5; Ex. 1. |
| May 21, 2020 | In an earnings call, Merritt and Child disclosed that Splunk was watching its cost structure closely, had frozen business travel, and had shifted from in-person marketing events to virtual ones.  Ex. 2 at 5, 12, 23.  In the same call, Child disclosed that Splunk instituted a temporary hiring freeze in March.  ¶¶ 50-51, 113; Ex. 2 at 23.  **He stated that Splunk has opened up hiring related to DQCs, and Merritt stated that Splunk's campaign cadence remains high**.  ¶¶ 110, 113; Ex. 2 at 12, 23. |
| June 1, 2020 | Splunk filed its 10-Q for the quarter ended April 30, 2020, in which **it made similar statements** and disclosures as it did in its March 10-K, including flagging noteworthy line-item changes to its sales and marketing expenses.  Mot. at 4-5; Ex. 3. |
| June 8, 2020 | Merritt participated in an interview with the Silicon Valley Business Journal, in which he stated that "I am not going to make a commitment to no layoffs." ¶ 115.  **He also predicted that unless there were unanticipated macro shifts**, Splunk would end the |

---

[1] Capitalized terms used herein have the same definition given to them in the Motion.

DEFENDANTS' REPLY ISO MOTION TO DISMISS CONSOL. COMPLAINT – CASE NO. 4:20-cv-08600-JST

| | |
|---|---|
| | year as a bigger company than it was at the beginning of the year.  ¶ 115; Ex. 4 at 7. |
| September 3, 2020 | Splunk filed its 10-Q for the quarter ended July 31, 2020, in which **it made similar statements** and disclosures as it did in the 10-K and June 10-Q.  Mot. at 4-6; Ex. 5. |
| September 14, 2020 | At an investor conference, **Child stated that Splunk was continuing to hire DQCs**.  ¶ 117; Ex. 6 at 8. |
| December 2, 2020 | In its press release and earnings call, Splunk disclosed a quarterly earnings miss and withdrawal of guidance.  ¶¶ 133-34; Ex. 7. |
| December 3, 2020 | At an investor conference, Child noted that Splunk had frozen hiring in March for "a few months," consistent with the freeze disclosed in May.  ¶ 96; Ex. 8 at 8.  He also noted a suspension of marketing investments back in March.  ¶ 96; Ex. 8 at 8. |

## III.   ARGUMENT

### A.   Most of the Challenged Statements Are Protected by the PSLRA Safe Harbor.

Plaintiff's contention that the challenged statements about Splunk's plans to "continue to" hire and invest in marketing are not forward-looking depends on improper omissions and alterations of verb tenses that obscure their true context.[2]  The statements in unadulterated form plainly refer to the future:

- "**We expect** that sales and marketing expenses **will** continue to increase . . . as we continue to hire additional personnel and invest in marketing programs."  ¶¶ 104, 106, 108-09; Ex. 1 at 51; Ex. 3 at 32; Ex. 5 at 36 (emphasis added).

- "**[W]e intend to** continue to make directed and substantial investments to expand . . . sales and marketing . . . ."  ¶¶ 104, 108; Ex. 1 at 16-17; Ex. 3 at 46; Ex. 5 at 56 (emphasis added).

- "**We expect to** continue to [aggressively] expand our sales and marketing organizations . . . ."  ¶¶ 106, 109; Ex. 1 at 44; Ex. 3 at 25; Ex. 5 at 27 (emphasis added).

- "The **key elements of our growth strategy are** to: . . . [c]ontinue to expand our direct and indirect sales organization . . . ."  ¶¶ 106, 109; Ex. 1 at 45; Ex. 3 at 25; Ex. 5 at 27 (emphasis added).

- "[W]e're continuing to hire DQCs. . . . **[W]e have to be** continuing to invest in sales capacity. . . . **[W]e're definitely going to** continue to be hiring."  ¶ 117; Ex. 6 at 8 (emphasis added).

Because the challenged statements pertain to future plans and projections, they bear no

---

[2] Plaintiff ignores Defendants' showing that the June 2020 Interview and September 2020 conference statements are forward-looking, thus conceding that those are forward-looking.  Mot. at 8-9.

DEFENDANTS' REPLY ISO MOTION TO DISMISS CONSOL. COMPLAINT – CASE NO. 4:20-cv-08600-JST

resemblance to the statements in many of the cases cited by Plaintiff, which clearly refer to *present* circumstances.  *E.g.*, *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017) ("Our pipeline continues to build to record levels.").  When statements use language such as "expect," "intend," or "going" to describe what a company will "continue" to do in the future, courts regularly hold that the statements are forward-looking and thus fall within the safe harbor.  *See Lamartina v. VMware, Inc.*, 2021 WL 4133851, at *8-9 (N.D. Cal. Sept. 10, 2021) ("We **expect** the strength we're seeing in the business **to continue** next year . . . .") (emphasis added); *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *15 (N.D. Cal. July 21, 2020) ("we're **going to continue** to press on that" and other similar statements) (emphasis added); *In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *11 (N.D. Cal. Feb. 12, 2015) ("[W]e **expect** our core enterprise business **to continue** to grow in excess of 50% . . . .") (emphasis added); *Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 34-35 (1st Cir. 2020) (ReWalk "**intend[s] to continue** to work with [various entities].") (emphasis added, alterations in original); *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1326 (11th Cir. 2019) ("Ocwen **expected 'to continue** to be profitable and generate strong operating cash flow'" and other similar statements) (emphasis added).  Plaintiff does not cite a single post-*Wochos* case that finds a comparable "expect to continue" or "intend to continue" statement to fall outside the safe harbor.[3]

Plaintiff also misapplies *Wochos*, in which the Ninth Circuit held that for a statement to fall outside the safe harbor, "a plaintiff must plead sufficient facts to show that the statement goes *beyond* the articulation of plans, objectives, and assumptions and instead contains an express or implied concrete assertion concerning a specific current or past fact."  *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1191 (9th Cir. 2021) (emphasis in original, internal quotations omitted).  Splunk's announcements that it "expects to," "intends to," or is "going to" continue to hire and invest in marketing are prognostications of future plans and objectives.  ¶¶ 104, 106, 108-09.  Likewise, the statement describing Splunk's "growth strategy" is a statement of future plans.  ¶¶ 106, 109.  The remaining statement, that Splunk "expect[s] that sales and marketing expenses will continue to increase . . . as [it] continue[s] to hire additional

---

[3] The only cited post-*Wochos* case that addresses a "continue" statement does not contain forward-looking "expect to continue" or "intend to continue" language, and fails to address *Wochos* in any event. *In re Merit Med. Sys., Inc. Sec. Litig.*, 2021 WL 1258590 (C.D. Cal. Mar. 16, 2021).

personnel and invest in marketing programs," is a future projection accompanied by an underlying assumption: Splunk's prediction that expenses would increase based on the assumption that hiring and marketing investments would continue.[4]  ¶¶ 104, 106, 108-09.  None of these statements contains a concrete assertion of a specific current or past fact.

Plaintiff's own say-so that the challenged statements are "mixed" does not change the analysis. In *Quality Systems*, for example, the statements at issue consisted of distinct clauses, each of which could be individually identified as either forward-looking or non-forward-looking.  865 F.3d at 1136 (statement predicting a "revenue range of growth of 21% to 24% for the year" (forward-looking) v. "greenfield opportunities are plentiful" (non-forward-looking)).  *Wochos* clarified that the non-forward-looking statements in *Quality Systems* were actionable because they were "separable" from the forward-looking statements and contained "'concrete' assertion[s] concerning a specific 'current or past fact.'" 985 F.3d at 1190-91 (quoting *Quality Sys.*, 865 F.3d at 1142, 1144).

In contrast, Splunk's plans to continue to hire and invest in marketing are neither separable nor concrete assertions of a specific current or past fact.  *See infra* Sections III.B.1-.2.  If Splunk "expects to continue" or "intends to continue," the infinitive "to continue" is an inextricable part of the full, forward-looking statement.  *Carvelli*, 934 F.3d at 1329.  Attempting to separate the allegedly present-tense declaration leaves only the meaningless fragment "expects to" or "intends to," requiring a consideration of the statement as a whole and treatment of the statement as forward-looking.  *Id.*; *see also Wochos*, 985 F.3d at 1192 (observing that many forward-looking statements "*necessarily* reflect[] implicit assertion[s]" about the present) (emphasis in original); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014) (holding that statements must be "examined as a whole" and "in context" and finding statement to be forward-looking even though it contains the present-tense comment "[w]e aren't hearing anything that causes us any significant concern"); *In re Twitter, Inc., Sec. Litig.*, 2021 WL 4166725, at *3 (N.D. Cal. Sept. 14, 2021) (noting that even a grammatically present-tense statement may still convey forward-looking information and thus fall

---

[4] The June 2020 Interview statement, whose forward-looking nature Plaintiff does not contest, also falls under this paradigm, with "[t]here would have to be some really unexpected shifts in the macro environment beyond what we've already modeled" reflecting the assumptions underlying the projection. ¶ 115.

4

within the safe harbor); *Murphy v. Precision Castparts Corp.*, 2021 WL 2080016, at *4 (D. Or. May 21, 2021) (reconsidering prior decision in light of *Wochos* and holding that statements such as "there is no change to the . . . framework we laid out" "do not include sufficiently 'concrete descriptions' of present facts to fall outside the protection of the Safe Harbor").

Finally, the PSLRA protects forward-looking statements that are *either* (a) identified as such and accompanied by meaningful cautionary statements; *or* (b) made without actual knowledge of falsity. *Wochos*, 985 F.3d at 1190. Plaintiff does not substantively address, and thus concedes, Defendants' showing that the challenged statements in Splunk's 10-Ks and 10-Qs were identified as forward-looking and accompanied by meaningful cautionary statements. *See* Mot. at 10-11. Thus, they are protected *irrespective of* Defendants' state of mind. *Id.* Regardless, Plaintiff fails to allege specific facts showing that Defendants had actual knowledge of falsity for any of the statements. *See infra* Section III.C.

**B.      Plaintiff Does Not Plead a Materially False or Misleading Statement.**

**1.      Statements Related to Hiring**

Plaintiff argues that the alleged misstatements are not puffery and that falsity is adequately pleaded because Splunk represented that it was currently hiring while there was a hiring freeze of sales personnel for the entire Class Period. Opp. at 13-18. This argument fails for several reasons.

First, the challenged statements are too vague, generalized, and aspirational to support liability. Mot. at 11-12. Plaintiff essentially concedes that several of the alleged misstatements are nonactionable corporate optimism ("[r]ight now things are going well for many tech companies, us included" (¶ 115); "[t]here is a lot of concerted effort that the sales teams are driving" (¶ 110); and statements about Splunk's growth strategy (¶¶ 106, 109)). The remaining statements are likewise nonactionable because they are vague, generalized assertions or aspirations which do not make any specific representations about the number of employees that have been hired or will be hired or specify a time frame (e.g., "we have to be continuing to invest in sales capacity" (¶ 117); "[w]e expect to continue to expand our sales and marketing organizations" (¶¶ 106, 109) (alteration in original)). Mot. at 4-5, 11-12.

Plaintiff ignores the relevant case holdings that Defendants cite, instead pointing to different portions of the cases. For instance, *Scheller v. Nutanix, Inc.* held that the statements "we are big on hiring" and "a lot of hiring [is going on]"—which, if anything, are *more* specific than the statements at

5

issue here—"are vague and amount to non-actionable puffery."  450 F. Supp. 3d 1024, 1036 (N.D. Cal. 2020) (alteration in original); *see also Sayce v. Forescout Techs., Inc.* (*Sayce II*), 2021 WL 4594768, at *4 (N.D. Cal. Oct. 6, 2021) ("[S]tatements such as Forescout 'hiring like crazy' and 'we've got hundreds of sales reps' are puffery."); *Sayce v. Forescout Techs., Inc.* (*Sayce I*), 2021 WL 1146031, at *4 (N.D. Cal. Mar. 25, 2021) (statement that "sales force was 'maturing and ramping nicely . . . ' is vague and non-actionable puffery"); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 708 (9th Cir. 2021) (statement that Google has a "very robust and strong privacy program" is nonactionable puffery).[5]

Second, Plaintiff does not adequately plead falsity for any of the challenged statements. Tellingly, the Opposition nowhere sets out the alleged misstatements at issue.  Rather, it includes only out-of-context snippets of the statements—often with the verb tense changed and with words added in brackets that are *not* part of the statements.  *See, e.g.*, Opp. at 1, 4, 8, 11, 14.  As demonstrated in the Motion and Ryan Declaration, the full statements show that Defendants made very general statements about Splunk expecting to continue to expand its sales and marketing organizations, and expecting its sales and marketing expenses to increase as it continues to hire additional personnel and invest in marketing, in the March 26, 2020 10-K, June 1, 2020 10-Q, and September 3, 2020 10-Q.  And, Child said during the May 21, 2020 earnings conference that Splunk was opening up hiring of DQCs and said during the September 14, 2020 conference that Splunk was continuing to hire DQCs.

In order to plead that any of the 10-K and 10-Q statements are false, Plaintiff would, at a minimum, need to plead particularized facts showing that Splunk had stopped all hiring and expected no more.  In order to plead that Child's verbal statements about hiring DQCs are false, Plaintiff would, at a minimum, need to plead particularized facts showing that Splunk had not opened up hiring of DQCs and was not continuing to hire DQCs at the time he made those statements.

---

[5] Plaintiff misleadingly says that the courts in *Scheller* and *Sayce I* found that certain other statements "could be actionable" (Opp. at 15) when in fact the court *dismissed* those statements and did *not* say they were actionable.  *Scheller*, 450 F. Supp. 3d at 1035-36; *Sayce I*, 2021 WL 1146031, at *4.  Indeed, in *Sayce II*, the court specifically held that the statement in question is nonactionable puffery and dismissed the complaint with prejudice.  2021 WL 4594768, at *4, 10.  And the statements in *BofI Holding, Inc. Securities Litigation* are much more specific than those here—and are not forward-looking.  2017 WL 2257980, at *9-10 (S.D. Cal. May 23, 2017) (e.g., "We have spent a significant amount of money on BSA/AML compliance upgrades and new systems and new personnel.").

6

Plaintiff does not dispute that it fails to plead facts showing that Splunk expected no hiring. Plaintiff nevertheless argues that it sufficiently pleads falsity by pointing to (1) Child's purported admissions about a hiring freeze; and (2) the FEs' allegations about a hiring freeze. However, Plaintiff misrepresents Child's statements, overstates the FEs' allegations, fails to address the specific deficiencies raised by the Motion, and conflates time periods.

Child said only that there was a short-term hiring freeze that began in March 2020.[6] This does not mean that all hiring stopped (*see* Mot. at 13), and Plaintiff's own allegations show that Splunk *was* hiring during this time period—FE 5 says that he was hired as a senior product marketing manager *in April 2020*. ¶ 69 & n.50; *see Sayce II*, 2021 WL 4594768, at *4 (holding that CW allegations about a hiring freeze did not establish falsity where they also showed there was hiring). Plaintiff contends that this does not matter because the hiring freeze was specific to salespeople, but that is not what the CC alleges, and the challenged statements are not specific to salespeople in any event. Moreover, Child's statements do not support an inference that the hiring freeze lasted for the entirety of the Class Period.

Nor are the FE allegations sufficient to fill the gap. Plaintiff ignores the fact that the *only* FE who alleges that there was a hiring freeze for the full Class Period is FE 3, a former marketing manager. His only basis for that assertion is that he heard Merritt reference a "hiring freeze" in an all-hands meeting in or around *March 2020* and was "also informed of the hiring freeze by his bosses in a product all-hands meeting" on an unspecified date. ¶ 76. He does *not* allege that Merritt or his bosses explained what that meant, which employees it covered, or how long it would last. As such, Plaintiff fails to establish that FE3 has personal knowledge of the length or scope of any hiring freeze. FE 4 makes the vague allegation that a hiring freeze "was ongoing in the months leading up to September 2020," but he

---

[6] Contrary to Plaintiff's assertion (Opp. at 4, 25), Child never said the hiring freeze lasted only two weeks. *See* Ex. 2 (5/21/2020) at 23 ("So, yeah, when everything started slowing down in early mid-March, we definitely did kind of put a freeze on hiring . . . to try to get a better sense of what the environment was going to – how it's going to unfold. It's been pretty clear that the underlying growth within our business is very healthy. So, we have been opening up hiring related to DQCs . . . . So, those areas we're definitely still hiring."); Ex. 8 (12/3/2020) at 8 ("When the pandemic hit, we like, I think, most every other company, froze hiring, suspended investments in marketing, a lot of the more offensive-oriented spend to try to figure out what's going to happen in the pandemic. After a few months when things, especially in the software world, I think, we saw that demand was still pretty strong, we then started rehiring and really getting much more aggressive about building pipeline.").

does not specify what this means or how long it lasted, provides only anecdotal accounts of certain—not all—unspecified positions not being filled, and claims no personal knowledge of Splunk's overall hiring policy.  ¶ 77; *Scheller*, 450 F. Supp. 3d at 1036.  The other FEs left in March 2020 (FE 8) and May 2020 (FE 7) and have no knowledge of what happened after they left.  ¶¶ 78 n.53, 79 n.54.  *See* Mot. at 13-15.

The FEs thus may have a reliable basis for saying they heard Merritt or others reference a hiring freeze in or around March 2020, but they do *not* have personal knowledge for claiming that Splunk conducted no hiring at all, or no hiring of any salespeople, during the Class Period or at the time of the alleged misstatements—and, in fact, they do not even allege that.  This is not a "definitional issue" better suited to summary judgment, nor are Defendants presenting an improper counter-factual narrative.  *See* Opp. at 2, 16.  It is *Plaintiff's* burden to plead particularized facts establishing falsity, which it fails to do. Where, as here, Plaintiff relies on confidential witnesses, their accounts must be "specific[] in time, context, and details," reliable, and based on personal knowledge.  *Huang v. Higgins*, 2019 WL 1245136, at *7 (N.D. Cal. Mar. 18, 2019); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 997 (9th Cir. 2009).  Moreover, courts should not accept unreasonable inferences or conclusory assertions, *Daniels– Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010), and plaintiffs are not automatically entitled to their claimed interpretation of a defendant's or witness's statement on a motion to dismiss.  *See, e.g.*, *Wochos*, 985 F.3d at 1193 (refusing to accept plaintiffs' assertion as to the meaning of defendant's statement regarding installation of manufacturing equipment; finding plaintiffs' argument that it must be accepted as true on a motion to dismiss to be contrary to the PSLRA's heightened pleading standard).

Plaintiff also fails to refute the Motion's showing that the challenged statements are not materially misleading in light of the disclosures made in Splunk's 10-K, 10-Qs, and May 21, 2020 earnings call.  Mot. at 14-15.  The 10-Qs specifically say that Splunk has "*increased headcount* to expand our field sales organization," which is inconsistent with any inference that all hiring (or all sales hiring) had stopped.  Ex. 3 at 39; Ex. 5 at 43 (emphasis added).[7]  Plaintiff tries to get around this fact by

---

[7] The Court *can* accept this information as true under the doctrine of incorporation by reference, as Plaintiff does not allege that the reported sales and marketing expenses are inaccurate.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) (noting that "it is generally true" that "a court 'may assume [an incorporated document's] contents are true for purposes of a motion to dismiss'")

DEFENDANTS' REPLY ISO MOTION TO DISMISS CONSOL. COMPLAINT – CASE NO. 4:20-cv-08600-JST

claiming that Merritt said the "field sales organization" includes marketing (Opp. at 18 n.13 (citing ¶ 110)), but he said no such thing, and paragraph 110 does not say that he did. To the contrary, the term "field sales organization" self-evidently refers to salespeople selling product in the field, and Merritt clearly tied the field to sales, not marketing. *See* Ex. 2 at 12.

Plaintiff seeks to discount Child's May 21, 2020 disclosure of a hiring freeze by arguing that the disclosure was itself false and misleading because Child said that Splunk had "kind of" put a freeze on hiring and that Splunk was "opening up hiring related to DQCs." Opp. at 17-18. However, Child's May 2020 disclosure closely tracks what he later said about the freeze on December 3, 2020 (*see supra* n.6)—which Plaintiff deems a corrective disclosure. And Plaintiff does not plead particularized facts showing that Child's statement that Splunk was hiring DQCs at that time was false: the CC contains no allegations about DQCs specifically, and none of the FEs allege—or have personal knowledge for alleging—that there was zero hiring of salespeople at the time of Child's statement. Thus, there is nothing inaccurate about the disclosure. Further, the fact that Splunk disclosed a hiring freeze in May 2020, regardless of its scope, refutes Plaintiff's claim that the June and September 2020 10-Q statements were materially misleading because they led investors to believe there had been no hiring freeze.

Throughout the Opposition, Plaintiff mischaracterizes a number of Defendants' arguments instead of responding to the actual arguments made. For instance, Defendants did *not* argue that the 10-K statements were not made on March 26, 2020. Opp. at 16 n.10. Rather, Defendants said that if the 10-K statements are historical representations, they are representations *as of the end of the reporting period*, i.e., representations about the fiscal year ended January 31, 2020. Mot. at 13 n.8. The 10-K page that Plaintiff cites makes this point directly. ECF No. 69-1 at 63. And Defendants did *not* argue that DQCs aren't salespeople—rather, Defendants showed that none of the FEs allege specific facts that contradict Child's May and September 2020 statements about hiring DQCs at that time. Mot. at 15.

### 2.    Statements Related to Marketing Investments

Plaintiff's argument that the statements about marketing investments are not puffery and that

---

(alteration in original, internal quotation omitted). But Defendants prevail whether or not the Court does so. The Court indisputably can consider the *fact* that the information was provided (RJN Opp. at 1), and Defendants' generalized statements about hiring and marketing are not materially misleading when read in light of all the information available to the market. *See also* RJN Reply.

9

falsity is adequately pleaded because there was a suspension of marketing investments for the entire Class Period (Opp. at 8-13) likewise fails.

First, like the hiring statements, the challenged statements about marketing investments are too vague, generalized, and aspirational to support liability. Mot. at 15-16. *See supra* Section III.B.1. They are vague not because they relate to "Splunk's expectations" (Opp. at 11) but because they "do not specify the amount of money that has been spent or will be spent on marketing or provide a time frame." Mot. at 16. And contrary to Plaintiff's argument, the statement that "our campaign cadence remains high" is a quintessential vague, mildly "optimistic, subjective assessment," *Intuitive Surgical*, 759 F.3d at 1060—not a concrete fact "capable of objective verification." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017).

Second, Plaintiff does not adequately plead falsity. In order to show that any of the 10-K or 10-Q statements are false, Plaintiff would, at a minimum, need to plead particularized facts showing that Splunk had stopped all marketing and spending on marketing and expected no more, which it fails to do.

Plaintiff argues that Child admitted to a prior suspension of marketing investments on December 3, 2020, but does not point to anything Child said concerning the scope or duration of the suspension. A vague comment that "[w]hen the pandemic hit, we like, I think, most every other company . . . suspended investments in marketing, a lot of the more offensive-oriented spend" (Ex. 8 at 8; *supra* n.6) does not mean that no money was spent on marketing or that no marketing occurred. And Child's statement does not support an inference that any suspension lasted for the entirety of the Class Period.

Plaintiff also argues that the FE accounts support falsity, but they show the opposite: that Splunk conducted marketing and spent money on marketing throughout the Class Period. FE 5, a senior product *marketing* manager, was hired by Splunk *in April 2020* (¶ 69), and the marketing FEs continued to work at Splunk during the Class Period (¶¶ 67-71). Plaintiff contends that the hiring of FE 5 is irrelevant, but it is not, as it shows that Splunk was hiring and investing in marketing during this time period.

None of the FEs allege with particularity that all marketing had stopped or that no money was spent on marketing throughout the Class Period—and even if their statements could be construed as saying that, Plaintiff does not establish the requisite reliability and personal knowledge for such an assertion. Plaintiff argues that two of the FEs "heard about the suspension directly from Merritt." Opp.

10

at 12 (citing ¶¶ 64-68).  But *neither* alleges that Merritt detailed the scope or length of the suspension. And the FE accounts are vague and internally inconsistent—one says the budget was "cut," two say it was "frozen," and none explain what that means or claim that all marketing or all spending on marketing had stopped.  ¶¶ 69, 71.  (Normally, a budget freeze refers to the budget remaining unchanged.)  In addition, none of the FEs establish personal knowledge of Splunk's overall marketing policy or the amounts spent by the entire marketing department.  *See* Mot. at 16-17.

Furthermore, the reported expenses in the 10-K and 10-Qs refute any suggestion that all spending on marketing stopped.  They show that Splunk spent hundreds of millions of dollars on sales and marketing each quarter, with an increase each quarter year-over-year, throughout the Class Period. Mot. 5-6, 17-18.  *See supra* n.7.  Plaintiff tries to get around this by arguing that the 10-K and 10-Qs report sales and marketing expenses jointly, but the challenged statements themselves refer to sales and marketing expenses jointly.  *See* Ex. 1 at 16-17, 51; Ex. 3 at 32, 46; Ex. 5 at 36, 56 ("[w]e expect that sales and marketing expenses will continue to increase"; "we intend to continue to make directed and substantial investments to expand our . . . sales and marketing"); Mot. at 4.  In addition, it is not plausible to claim—and Plaintiff does not in fact claim—that no money was spent on marketing given the hundreds of millions of dollars of sales and marketing expenses reported each quarter.  *See, e.g.*, *In re Nimble Storage, Inc. Sec. Litig.*, 252 F. Supp. 3d 848, 851 (N.D. Cal. 2017) (illogical to allege that company's two major segments were doing poorly when company was reporting record revenue), *aff'd*, 756 F. App'x 779, 780 (9th Cir. 2019).  Further, the 10-Qs *did* break down details of the spend between sales and marketing—reporting, for instance, a $5.9 million *decrease* in marketing-related expenses, primarily related to replacing in-person marketing events with virtual events due to COVID.  Ex. 5 at 43.

Moreover, Plaintiff essentially ignores Defendants' May 21, 2020 disclosures, in which Defendants informed investors that Splunk was watching its cost structure carefully, had switched from in-person to virtual events, and had frozen all business travel due to COVID—thus refuting Plaintiff's theory that the challenged statements were materially misleading because they led the market to think Splunk was not making any expense cuts as a result of COVID.  Mot. at 4, 17-18; Ex. 2 at 5, 12, 23.

Finally, Plaintiff fails to establish the falsity of the campaign cadence statement.  Plaintiff mischaracterizes Defendants' argument and Merritt's statement, which did not compare any metrics

11

across time periods. *See* Opp. at 11-12 & n.4; Mot. at 18. Rather, Merritt was explaining that Splunk was still holding events virtually and seeing high turnouts for those events (Ex. 2 at 12; Mot. at 18)—which Plaintiff does not claim is false.

### 3. Statement Regarding Layoffs

Plaintiff's argument that Merritt's June 2020 Interview statement misled the market into believing there had been no "layoffs or cutbacks" (Opp. at 18-19) fails for multiple reasons.

First, Plaintiff ignores the fact that Merritt specifically said in his June 2020 statement that Splunk was "not going to make a commitment to no layoffs." ¶ 115; Mot. at 18.

Second, what is vague is not Merritt's statement that Splunk would not commit to avoiding layoffs—that is perfectly clear. But the part of the statement that the CC contends is false is the sentence, "There would have to be some really unexpected shifts in the macro environment beyond what we've already modeled." ¶ 116. *That* is the type of vague, general statement on which Section 10(b) liability cannot rest. *See* Mot. at 18-19.

Third, Merritt never said that Splunk had not engaged in any layoffs or cutbacks. Indeed, Defendants had just disclosed a hiring freeze and other cutbacks two-and-a half weeks earlier during the May 21, 2020 earnings call. Plaintiff cannot tack onto the statement, "[t]here would have to be some really unexpected shifts in the macro environment," something that Merritt never said. *See* Mot. at 18-19. Even on a motion to dismiss, Plaintiff is not allowed to substitute its own self-serving contentions about the meaning of a statement for the statement itself. *See Wochos*, 985 F.3d at 1193.

Finally, Plaintiff ignores the fact that the FEs are conspicuously silent about the size of the new logo team that was laid off—despite being a part of that team and thus knowing that information—and thus fail to establish any material impact on Splunk's workforce. *See* Mot. at 19.

### C. Plaintiff Fails to Plead a Strong Inference of Scienter.

Plaintiff argues that scienter is adequately alleged because Defendants knew information at the time that contradicted their public statements by virtue of knowing of a hiring freeze, marketing suspension, and layoffs. Opp. at 20-21. Plaintiff is wrong. Knowing that there was a short-term hiring freeze, suspension of certain marketing investments, or layoffs—which is the most that Plaintiff alleges with particularity—does not contradict any of Defendants' statements. Mot. at 20; *supra* Section III.B.

12

And Defendants did not make any "false denials" (Opp. at 21): they *disclosed* a hiring freeze and expense cuts; they never claimed that Splunk had not conducted layoffs; and no facts are pled showing that Child's statements about hiring DQCs are false.  *See* Mot. at 4-5, 21; *supra* Section III.B.

Plaintiff faces the same problem as the plaintiffs in *Nguyen v. Endologix, Inc.*, 962 F.3d 405 (9th Cir. 2020), in which dismissal was upheld because the plaintiffs' scienter theory was not plausible.  Mot. at 21-22.  Plaintiff's theory is that Splunk was trying to mislead investors into thinking that, despite COVID, it was not cutting sales or marketing expenses.  But this theory is not plausible given that Splunk reported its sales and marketing expenses each quarter—which Plaintiff does not claim were misstated—and thus the market would learn, and did learn, precisely how much Splunk spent on sales and marketing each quarter.  It also makes no sense that Defendants would disclose a hiring freeze and other cost-saving measures in May 2020 if their intent was to mislead investors into thinking that Splunk was not cutting such expenses.

Plaintiff tries to minimize the importance of motive (Opp. at 22), but the Ninth Circuit has specifically stated that "the lack of a plausible motive certainly makes it much less likely that a plaintiff can show a strong inference of scienter."  *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1108 (9th Cir. 2021).  Plaintiff argues that Defendants were motivated to conceal the hiring freeze and suspension of marketing in order to secure a $1.265 billion debt offering and a favorable shareholder vote on pay.  Opp. at 22.  However, this ignores the fact that Child disclosed the hiring freeze and other cost-saving measures *before* the debt offering and shareholder vote took place.  Mot. at 20.  While Plaintiff tries to downplay Child's May 2020 disclosure of a hiring freeze, that disclosure corresponds to the December 3, 2020 disclosure on which Plaintiff relies, and Plaintiff does not allege particularized facts showing it was false.  *See supra* Section III.B.1.  And, regardless, a fundamental question remains: Why would Child disclose any hiring freeze at all if his intent was to deceive lenders and shareholders into thinking there had been no cutbacks or hiring freeze?  That is nonsensical.

Not only does Plaintiff fail to plead a plausible motive, but Defendants' voluntary disclosures and lack of improper stock sales weigh *against* scienter.  Mot. at 22 (citing *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018); *In re Rigel Pharms. Sec. Litig.*, 697 F.3d 869, 884-85 (9th Cir. 2012)).  *Webb* and *Rigel* are not "inapposite."  *See* Opp. at 22 n.15.  They explicitly hold that (i) voluntary

13

disclosures and (ii) a lack of stock sales can undermine scienter.  Nor is Defendants' showing of a lack of actual knowledge of falsity irrelevant, as Plaintiff suggests.  *See* Opp. at 21.  Actual knowledge *is* the scienter standard for any forward-looking statements that are not dismissed on the separate ground that they were accompanied by meaningful cautionary language.  *Wochos*, 985 F.3d at 1190.  And Plaintiff itself describes actual knowledge as its primary scienter theory—contending that scienter is shown because Defendants knew facts contrary to their public statements.  Opp. at 20-21.

**D.      Plaintiff Fails to Plead Loss Causation.**

**1.      Plaintiff Does Not Allege Loss Causation for the Layoffs Statement.**

Plaintiff does not dispute that it fails to allege any corrective disclosure about layoffs.  Mot. at 23.  Nor does Plaintiff plead loss causation for the layoffs statement under any other theory.  Plaintiff makes the unsubstantiated contention that Child's December 3, 2020 statements concerning *hiring* and *marketing* somehow establish the requisite link between the purported *layoffs* and Splunk's Q3 earnings miss.  Opp. at 23.  But Child said *nothing* about layoffs on December 3, and Plaintiff does not plead any other facts that establish a causal link.  Mot. at 24.  Thus, the alleged misstatement about layoffs must be dismissed for failure to plead loss causation.  *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (holding that plaintiffs must "show a 'causal connection' between the fraud and the loss . . . by tracing the loss back to the 'very facts about which defendant lied'").

**2.      Plaintiff Fails to Allege Loss Causation Under a Revelation of Fraud Theory.**

Plaintiff concedes that "the bulk of Splunk's stock price decline" occurred *before* Child's December 3, 2020 statements but contends that this is "irrelevant."  Opp. at 24.  To the contrary, this is clearly relevant because the CC alleges that Child's "stunning disclosures" on December 3 revealed the truth and "sent the Company's stock price tumbling 23%."  ¶¶ 134-36.  Where, as here, the stock drop *precedes* the alleged corrective disclosures, Plaintiff cannot allege loss causation under the classic theory of revelation of the fraud.  Mot. at 22-23 (citing *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 407 (9th Cir. 2021)).  Plaintiff does not dispute this principle.  Opp. at 24.

**3.      Plaintiff Fails to Allege Loss Causation Under a Risk Materialization Theory.**

Plaintiff therefore attempts to show loss causation by advancing a materialization-of-the-risk theory (*id.*; ¶ 132), but this strategy fails for two separate reasons: (1) Plaintiff does not allege sufficient

14

facts connecting the Q3 earnings miss to the alleged fraud; and (2) Plaintiff does not plead any concealed risks that materialized.

Plaintiff misleadingly attributes a securities analyst's questions about Q3 to Child, making it appear that the analyst's questions are really Child's own words. *See* Opp. at 2, 7, 12, 15, 24 (citing ¶ 139); Ex. 8 at 8-9. In addition, Plaintiff leaves out the rest of what Child said. Though Child spoke of hiring and marketing, he also said that market "demand" affected the quarterly pipeline and that, regardless, Splunk "absolutely had line of sight to hit [its] number." Ex. 8 at 9. He went on to explain that Splunk "had a little bit of a perfect storm in terms of having a little bit tighter of a pipeline," which included other factors such as a "tougher budgetary environment" and "an election right around that time." *Id.* According to Child, "a lot of things . . . unfortunately came together and made it a tough quarter." *Id.* And while several FEs discuss the importance of marketing and hiring in general terms, no one establishes the financial impact of the alleged marketing suspension or hiring freeze on Splunk's Q3 results—let alone that they "were proximate causes of investors' losses." Opp. at 24.

Moreover, Plaintiff cannot plausibly establish that any *concealed* risks about Splunk's hiring or marketing investments had materialized. *Nuveen Mun. High Income Opp. Fund v. City of Alameda*, 730 F.3d 1111, 1120 (9th Cir. 2013); Mot. at 25.[8] Plaintiff readily admits to the disclosure of a "temporary" hiring freeze on May 21, 2020—which contains the *same* information Child "revealed" on December 3, 2020. ¶¶ 50-51, 96. And Plaintiff fails to address the fact that Splunk disclosed marketing cutbacks in its May 2020 earnings call and June and September 2020 10-Qs, including disclosing a $14.5 million *decrease* in the travel portion of its *marketing* spend and a $5.9 million *decrease* in *marketing-related* expenses due to replacing in-person events with virtual ones. Mot. at 17-18. Thus, the market was already aware of this information, which cannot have caused the December 2020 stock price decline.

## IV.   CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss the CC.

---

[8] *See also Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568, at *10 (N.D. Cal. June 19, 2020) ("[P]laintiff fails to plead that channel stuffing concealed any *hidden* risk . . . as opposed to known risks . . . sufficient to plead a materialization of the risk theory.") (emphasis in original); *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *27 (N.D. Cal. June 2, 2020) (holding that plaintiff failed to allege loss causation where "there is no evidence that any of these risks were concealed").

15

Date: October 20, 2021                          SIDLEY AUSTIN LLP


                                                By: */s/* Sara B. Brody
                                                      Sara B. Brody

                                                *Attorneys for Defendants*
                                                SPLUNK INC., DOUGLAS MERRITT, and
                                                JASON CHILD

16