September 16, 2022

**FILED VIA ECF**

The Honorable Jon S. Tigar
United States District Judge
U.S. District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

RE:     *In re Splunk Inc. Securities Litigation*, Case No. 4:20-cv-08600-JST

Dear Judge Tigar:

The parties respectfully submit this joint letter concerning Lead Plaintiff's request for leave of court to file a motion to compel, which Defendants request that the Court deny. The parties met and conferred,[1] but have been unable to resolve the below disputes.

## I.     LEAD PLAINTIFF'S POSITION

Lead Plaintiff respectfully requests that the Court compel Defendants, and third-party witnesses they control, to produce the below documents in response to Lead Plaintiff's document requests ("Requests" (Ex. E)), and certain third-party subpoenas ("Subpoenas" (Exs. F & G)). Lead Plaintiff served the Requests on April 25, 2022; the third-party subpoena for Ms. Palin on May 12, 2022; and the third-party subpoena for Ms. St. Ledger on May 26, 2022. Yet Defendants and the witnesses they control have not produced <u>any</u> responsive documents.

### A.     Splunk's Market Share and Licensing Model

Requests 15 and 20 seek documents concerning, respectively, "Splunk's potential market access, market share, or the total addressable market ('TAM') for Splunk's products," and "any decline or change in Splunk's Financial Performance following its transition . . . to a 'term licensing' model." Ex. E at 12-13. Defendants refuse to produce <u>any</u> documents in response to these Requests, or even consider any compromise, wrongly claiming that "produc[ing] documents in response to other Requests" obviates the need to produce documents responsive to these Requests. Ex. D at 5.

Splunk's potential market access, share, and TAM are highly relevant to Lead Plaintiff's claims. *See, e.g.*, ECF No. 77 ("MTD Order" or "Order") at 2; ECF No. 65 ("Compl.") ¶¶ 35-38. The Complaint alleges that Defendants "misled investors into believing, incorrectly, that Defendants had not . . . made cutbacks" to Splunk's marketing, when, in fact, Defendants "had suspended investments in marketing." Order at 24. Investors thus had the false impression that Splunk was "tapping into a growing market" (rather than "cutting operational expenses") to address its negative cash flow, which was exacerbated by its transition to a "term licensing" model. Compl. ¶¶ 27-29; Order at 2. The documents requested are highly relevant to Lead Plaintiff's

---

[1] The parties participated in meet-and-confer calls on June 15, 17, and 21, 2022. The parties subsequently exchanged four meet-and-confer letters, dated July 6 and 27, and August 5 and 18, and attached hereto as Exhibits A through D.

The Honorable Jon S. Tigar
Page 2

claims because they include internal documents discussing Defendants' understanding of Splunk's ability to expand market access and share, including due to undisclosed cutbacks.

### B.      Splunk's Historical Net Revenues and Losses

Request 19 seeks documents concerning "Splunk's historical net revenue and losses, including the reasons for those historical financial results and their impact on Splunk's Financial Performance and operations." Ex. E at 13. Defendants again refuse to consider any compromise, wrongly claiming that their "agree[ment] to produce documents in response to other Requests" obviates the need to produce any documents responsive to it. Ex. D at 5-6.

Splunk's poor historical performance is central to both the Complaint and the Court's MTD Order. Lead Plaintiff alleges that Splunk's ambitious goal to generate more than $1 billion in operational cash flow by 2023 provided a strong motive for Defendants to misrepresent Splunk's investments in marketing. *See, e.g.*, Compl. ¶¶ 1, 25-38, 59-62, 123 (¶ 35: "Splunk assured investors that the Company would resolve its cash-flow challenges and become cash-flow positive through revenue growth—not by a suspension of marketing investments or a freeze in hiring"); MTD Order at 2 ("[b]efore the Class Period, Splunk had operated at a net loss every year since at least 2012," which led analysts to "express[] concern about the company's . . . running deficits [and] ability to generate profits"). These highly relevant documents are properly subject to discovery and must be produced.

### C.      Defendant Child's Statement that Splunk Was in the "Valley of Death"

Request 24 seeks documents concerning Defendant Child's "valley of death" statement. Ex. E at 14. Defendants refuse to produce any documents responsive to this request, contending that Child's statement is "irrelevant to Plaintiff's claims." Ex. D at 6.

After the Class Period, Defendant Child admitted that during the Class Period, the Company was in the "valley of death," i.e., had "negative revenue, negative margin, [and] negative cash flow." Compl. ¶¶ 12, 101. This statement is relevant to, among other things, Splunk's Class Period financial condition, Child's scienter concerning what he knew or should have known during the Class Period, and his motive to artificially inflate Splunk's stock price. *See, e.g.*, *Karinski v. Stamps.com, Inc.*, 2020 WL 5084093, at *2 (C.D. Cal. July 21, 2020) (post-Class Period discovery is "relevant to Defendants' knowledge when they made the alleged misstatements"). Request 24 (like Request 19) thus seeks highly relevant documents. Contrary to Defendants' assertion, it is of no moment that Child's admission itself is publicly available—Request 24 seeks documents ***about*** Child's statement, which are ***not*** publicly available, and must be produced.

### D.      Performance and Departures of Key Splunk Personnel

Request 30 seeks documents concerning the abrupt departures from Splunk of Defendant Merritt and key senior executives Susan St. Ledger (former President of Worldwide Field Operations, i.e., head of sales), Tim Tully (former CTO), and Carrie Palin (former Chief Marketing Officer). *See* Compl. ¶¶ 83 & n.55, 100. Request 31 seeks documents concerning the job performance of the Executive Defendants and other individuals identified in Defendants' Rule 26(a)(1) disclosures. Ex. E at 15. These requests are relevant to Defendants' scienter, and the reasons for relevant personnel-related decisions. *See, e.g.*, *Willis v. Big Lots, Inc.*, 2016 WL 8199124, at *8, *34 (S.D. Ohio Jan. 21, 2016). Defendants have refused to produce any documents responsive to these Requests, citing purported "privacy concerns." Ex. D at 6-7.

The Honorable Jon S. Tigar
Page 3

Defendants' refusal to produce these documents is improper. Defendants' assertion that "there was nothing suspicious about these departures" is baseless. St. Ledger, Tully, and Palin were top Splunk executives who "announced their sudden and unexpected resignations" without replacements either during or shortly after the Class Period. Compl. ¶ 100. Merritt resigned in November 2021, causing Splunk's stock price to plummet by 18%. Given these executives' key roles in the underlying events, Lead Plaintiff is entitled to discover the reasons for and terms of their departures. Defendants "privacy concerns" are meritless. The parties agreed to, and the Court entered, a protective order that protects the confidentiality of the materials. *See, e.g.*, *Bernstein v. Virgin Am. Inc.*, 2018 WL 6199679, at *3 (N.D. Cal. Nov. 28, 2018) (Tigar, J.) ("protective orders are routinely sufficient to protect party and non-party rights in personnel files") (collecting cases).

### E.        Text Messages Responsive to Lead Plaintiff's Non-Party Subpoenas

Lead Plaintiff issued the Subpoenas to key former Splunk employees Palin and St. Ledger, both of whom were discussed in the Complaint. Compl. ¶¶ 41, 69, 78, 83, 100. These witnesses, whom defense counsel represents, admit that they may have responsive "text messages on their personal devices," but refuse to collect and search them. Ex. B at 14. In support of their extreme position, Defendants again cite unsubstantiated "privacy concerns." Defendants ignore the Confidentiality Order, which ensures that information designated "CONFIDENTIAL" be disclosed only to limited categories of persons to whom Defendants expressly agreed. If Ms. Palin or Ms. St. Ledger possess responsive text messages, those documents must be produced. The parties can address any applicable privacy concerns in connection with that production. *See, e.g.*, *Zeleny v. Brown*, 2019 WL 1084177, at *3 (N.D. Cal. Mar. 7, 2019) ("it is not clear that [plaintiff] could obtain a complete set of communications . . . from [defendant]"); *In re Pac. Gateway Exch., Inc.*, 2001 WL 1334747, at *1 (N.D. Cal. Oct. 17, 2001) (personal devices in former employees' possession "could provide relevant data. Third parties may also have relevant documents").

## II.        DEFENDANTS' POSITION

The Court should deny Plaintiff's request for leave to file a motion to compel. Plaintiff's request is based on a mistaken view that it is entitled to any document that relates in any way to any fact discussed in the "Background" section of the Complaint. This is clearly wrong. A plaintiff is only entitled to discovery that is both "relevant to" an actual "*claim or defense*" in the case "and proportional to the needs of the case." FRCP 26(b)(1) (emphasis added); *see, e.g.*, *Engers v. AT&T*, 2004 WL 5902865, at *7 (D.N.J. Mar. 9, 2004). After the Court's MTD Order dismissing certain claims, the only remaining alleged misstatements relate to Splunk's sales hiring, marketing investments, and alleged layoffs during a six-month Class Period. Dkt. 77 at 17-18, 23-24, 27, 41-42. Defendants have agreed to produce documents related to these alleged misstatements, including, *inter alia*, documents related to Splunk's hiring and termination plans, Splunk's marketing investments, and Splunk's financial performance in the third quarter of fiscal year 2021. *See, e.g.*, Responses to Requests 5, 6, 8, 9, 10, 16, 21, 22 (Ex. H at 7-12, 15-16, 19-21).[2] Nevertheless, Plaintiff now seeks to compel production based on the below document and third-party subpoena requests, which are irrelevant to Plaintiff's claims, irreparably overbroad,

---

[2] Defendants agreed to produce documents both in their initial Responses and as part of the meet-and-confer process. *See* Exs. B, D, H. Once the meet and confer made it practicable, Defendants began collecting and reviewing documents for production. The parties are also meeting and conferring about Plaintiff's discovery responses.

The Honorable Jon S. Tigar
Page 4

unduly burdensome, unreasonably invasive of the privacy of Splunk's current and former employees, and/or not proportional to the needs of the case.[3] This request should be denied.

**Requests 15 and 20:** These requests, which seek documents related to Splunk's potential and actual "market access," "market share," and change in licensing models for a period of *almost five years*, are vastly overbroad, unduly burdensome, not reasonably particularized, and touch on nearly every aspect of Splunk's business. They are also irrelevant, as they do not relate to the remaining alleged misstatements about sales hiring, marketing investments, and layoffs during the six-month Class Period. Plaintiff contends that documents responsive to these requests could include documents discussing whether Splunk would be able to expand its market share despite its allegedly undisclosed marketing cutbacks. But Splunk has already agreed to produce documents that relate to the alleged marketing cutbacks in response to other requests. *See, e.g.*, Responses to Requests 5, 8, 13 (Ex. H at 7-10, 13-14); Ex. B (July 27 Letter) at 2. So the only documents at issue for these requests are documents related to market share and licensing models that do *not* relate to the alleged marketing cutbacks. Plaintiff has offered no explanation for why such documents are relevant to its claims or proportional to the needs of the case, and they are not.

**Request 19:** This request, which seeks all documents related in any way to "Splunk's historical net revenue and losses" for a period of *almost four years*, is likewise overly broad, unduly burdensome, not reasonably particularized, and touches on nearly every aspect of Splunk's business. It is also irrelevant to the remaining challenged statements. Plaintiff contends these documents are relevant because Splunk's operational cash flow goals provided a motive for Defendants to misrepresent Splunk's investments in marketing. But again, Defendants have already agreed to produce documents related to Splunk's withdrawal of its operational cash flow guidance and its investments in marketing. *See, e.g.*, Ex. H at 7-10, 13-14, 19-20. Plaintiff has offered no explanation for the relevance of documents about Splunk's historical revenue and losses that are *not* related to these issues, much less shown they are proportional to the needs of the case.

**Request 24:** This request, which seeks all documents related in any way to a post-Class Period statement attributed to Defendant Jason Child that Splunk was "in the valley of death" in 2020, meaning that it had "negative revenue, negative margin, negative cash flow," is also irrelevant and not proportional to the needs of the case. Plaintiff contends that documents responsive to this request are relevant to Splunk's financial condition during the Class Period and therefore also relevant to Mr. Child's knowledge, scienter, and motive. But there is no dispute that Splunk had negative revenue, negative margin, and negative cash flow in 2020, and this fact was publicly disclosed, as was Mr. Child's post-Class Period statement itself. Moreover, Defendants have already agreed to produce documents related to Splunk's financial condition during the Class Period, *see, e.g.*, Responses to Requests 16, 17, 22 (Ex. H at 15-17, 20-21), and Plaintiff has provided no reason why it needs these additional documents.

**Requests 30 and 31:** These requests seek all documents related in any way to the departures from Splunk of Defendant Douglas Merritt and third parties Susan St. Ledger, Tim Tully, and Carrie Palin, as well as all performance reviews and evaluations, for a period of *almost six years,* of Mr. Merritt, Mr. Child, all Splunk employees identified in Defendants' Initial

---

[3] The problems with the disputed discovery requests are addressed in greater detail in Defendants' Responses (Ex. H), the July 27 and August 18 Letters (Exs. B and D), and the Subpoena Responses and cover letters (Exs. I and J).

The Honorable Jon S. Tigar
Page 5

Disclosures, and all of Splunk's sales and marketing personnel (which would be thousands of people), and all related documents. These requests are not only overly broad, unduly burdensome, and not proportional to the needs of the case, but they are also irrelevant and unnecessarily interfere with the privacy rights of thousands of former and current Splunk personnel. The alleged misstatements at issue do *not* relate to the performance of Splunk personnel or the reasons for the departures of Splunk personnel.[4] In addition, personnel records like those sought by these requests are entitled to additional legal protections under both federal law and the California Constitution; thus, a heightened standard of relevance is required to obtain these documents in discovery. *See* Ex. B (July 27 Letter) at 11-12 (citing, *inter alia*, *Loop AI Labs Inc. v. Gatti*, 2016 WL 1712131, at \*2 (N.D. Cal. Apr. 29, 2016)). Plaintiff has not even met the normal standard for discovery relevance, much less a heightened one. Plaintiff asserts that these documents are relevant to scienter but does not explain how. And Plaintiff's claim that privacy concerns are entirely alleviated by the protective order entered in this case is inconsistent with the case law. *See, e.g.*, *Loop AI Labs*, 2016 WL 1712131, at \*2 (denying production of certain documents based on privacy grounds despite existence of protective order).

**Non-party Subpoenas:** Plaintiff seeks to force two non-party former Splunk employees, whose custodial documents Splunk has already agreed to produce,[5] to conduct unnecessary, overly burdensome, and unreasonably invasive searches of all their personal text messages for any messages related to numerous overly broad categories, including, *inter alia*, Splunk's financial performance, the Complaint's allegations, the COVID-19 pandemic, and their departures from Splunk. *See* Exs. I, J. These subpoenas are so broad that they seek text messages *up to the present day* on nearly every topic related in any way to Splunk. *See id.* Moreover, they are not tailored to the particular witnesses on which they have been served, which alone makes them impermissible. *E.g.*, *Khan v. Rogers*, 2018 WL 5849010, at \*4 (N.D. Cal. Nov. 6, 2018) ("Requests to nonparties should be narrowly drawn to meet specific needs for information.") (citation omitted). In fact, Plaintiff has served comparable subpoenas on eight other former Splunk employees and directors containing identical overbroad requests (on which it reserves its right to move to compel).

Plaintiff argues that the two former employees *might* have some unspecified messages that Splunk does not have. But that alone does not justify placing such a significant burden on these third parties. *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (Non-parties are entitled to "special protection against the time and expense of complying with subpoenas."). Moreover, Plaintiff points to no special circumstances that justify subjecting these third parties to this unreasonable burden *now*, instead of waiting until *after* significant party discovery has been conducted and seeing what, if any, specific areas of documents Defendants do not have. *See, e.g.*, *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007).

---

[4] Plaintiff describes the departures as "sudden" and "unexpected" but points to no *facts* that make them suspicious.

[5] Contrary to Plaintiff's assertion, Defendants do not control these former employees.

The Honorable Jon S. Tigar
Page 6


Respectfully submitted,


*/s/ Jonathan D. Uslaner*

Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
Caitlin C. Bozman (Bar No. 343721)
caitlin.bozman@blbglaw.com
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
2121 Avenue of the Stars, Suite 2575
Los Angeles, California 90067
Tel: (310) 819-3470
*-and-*
John Rizio-Hamilton (admitted *pro hac vice*)
johnr@blbglaw.com
Adam D. Hollander (admitted *pro hac vice*)
adam.hollander@blbglaw.com
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*Attorneys for Lead Plaintiff Louisiana Sheriffs'*
*Pension & Relief Fund and Lead Counsel for the Class*

**KLAUSNER, KAUFMAN, JENSEN &
LEVINSON**
Robert D. Klausner (admitted *pro hac vice*)
bob@robertdklausner.com
7080 NW 4th Street
Plantation, Florida 33317
(954) 916-1202
(954) 916-1232 (fax)

*Additional Counsel for Louisiana Sheriffs'*
*Pension & Relief Fund*

The Honorable Jon S. Tigar
Page 7

*/s/ Nicole M. Ryan*

Sara B. Brody (SBN 130222)
sbrody@sidley.com
Nicole M. Ryan (SBN 175980)
nicole.ryan@sidley.com
Matthew P. Henry (SBN 308878)
mhenry@sidley.com
TJ Herron (SBN 331728)
therron@sidley.com
Stephen Tang (SBN 336273)
stang@sidley.com
SIDLEY AUSTIN LLP
555 California St., Suite 2000
San Francisco, CA 94104
Telephone: +1 (415) 772-1200
Facsimile: +1 (415) 772-7400

*Attorneys for Defendants Splunk Inc.,*
*Douglas Merritt, and Jason Child*
*and Non-Parties Carrie Palin and*
*Susan St. Ledger*