# Exhibit A

# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

### ATTORNEYS AT LAW

NEW YORK ● CALIFORNIA ● ILLINOIS ● LOUISIANA ● DELAWARE

JONATHAN D. USLANER
jonathanu@blbglaw.com
(310) 819-3472

July 6, 2022

**<u>Via Email</u>**

Nicole Ryan, Esq.
SIDLEY AUSTIN LLP
555 California Street
Suite 2000
San Francisco, CA 94104

Re: *In re Splunk Inc. Securities Litigation*, 4:20-cv-08600-JST

Dear Nicole:

We write to memorialize and follow-up on our June 15, 17, and 21 meet-and-confers (the "Meet-and-Confers") concerning Defendants' June 10, 2022 Objections and Responses to Lead Plaintiff's First Request for the Production of Documents (the "Request(s)"), served on April 25, 2022, as well as to Lead Plaintiff's subpoenas duces tecum served on non-parties Carrie Palin and Susan St. Ledger (the "Subpoenas").[1]  As discussed below, we understand that: (1) Defendants have agreed to consider producing documents beyond the scope of what Defendants agreed to produce in their written responses and objections to certain Requests; (2) Lead Plaintiff has agreed to narrow certain Requests in an attempt to reach compromise; and (3) the parties are at an impasse with regard to certain of the Requests and Subpoenas.[2]

Please let us know by July 13, 2022, if Defendants' position concerning any of the Requests and Subpoenas discussed below has changed, so that Lead Plaintiff can promptly raise with the Court any disputes that require judicial intervention.

***First***, as we stated during the Meet-and-Confers, Lead Plaintiff believes that Defendants' responses and objections to many of the Requests are improper, and that Defendants should

---

[1] Lead Plaintiff has also served additional subpoenas duces tecum on former Splunk employees whom you represent and who have refused to produce responsive documents.  Lead Plaintiff reserves the right to raise disputes concerning the remaining subpoenas at an appropriate time.

[2] This communication does not, and is not intended to, discuss all of the parties' open discovery disputes and issues, as to which Lead Plaintiff reserves all rights.  Among other things, this letter does not address the appropriate search terms and custodians that Defendants will use to collect custodial documents.

2121 AVENUE OF THE STARS, SUITE 2575 ● LOS ANGELES ● CA 90067
TELEPHONE: 310-819-3470 ● www.blbglaw.com

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
July 6, 2022
Page 2

produce additional responsive documents beyond those agreed to in the responses and objections. You agreed to consider producing additional documents in response to certain Requests:

- ***Request No. 6*** seeks documents and communications concerning the New Logo Team, including what it did and was expected to do operationally and in terms of performance. Defendants limited their initial agreement to producing only documents concerning "the disbanding of the New Logo Team." During the Meet-and-Confers, Defendants agreed to consider producing a broader set of responsive documents given the discussions of the New Logo Team in both Lead Plaintiff's Consolidated Class Action Complaint (ECF No. 65) (the "Complaint") and the Court's order sustaining the Complaint in substantial part. *See In re Splunk*, *Inc. Sec. Litig.*, No. 4:20-cv-08600, ECF No. 77, slip op. at 35 (N.D. Cal. Mar. 21, 2022) (Tigar, J.) ("Order"). Among other things, the Court concluded that "Plaintiff's allegations raise the reasonable inference that a decline in the price of Splunk's stock was caused by an earnings miss for Q3 2020, which, in turn, was caused by the undisclosed actions regarding which Defendants allegedly misled investors, [including] . . . the layoff of the 'new logo' team that was responsible for building pipeline." Order at 35. Accordingly, Defendants' limited agreement to produce documents in response to Request No. 6 is improperly narrow, as it excludes responsive and highly relevant documents concerning the operations and performance of the New Logo Team, as well as the impact of disbanding the New Logo Team.

- ***Request No. 9*** seeks documents and communications from January 1, 2017 through the present concerning Splunk's hiring plans and forecasts. Defendants limited their initial agreement to producing documents only for the time period of March 1, 2020 through December 31, 2020. During the Meet-and-Confers, Defendants agreed to consider producing responsive documents covering a broader time period. Responsive documents that pre-date the March 2020 change in hiring plans are relevant to, among other things, Lead Plaintiff's allegations concerning Splunk's hiring plans in January of 2020. ¶79.[3] In an effort to reach a compromise, Lead Plaintiff would agree that Defendants may satisfy Request No. 9 by producing responsive documents from the period of January 1, 2019 through December 31, 2020.

- ***Request No. 11*** seeks documents and communications concerning headcount or budgetary requests made by Splunk sales and marketing personnel or by the New Logo Team. Defendants initially agreed to produce only documents sufficient to show Splunk's budgeted for and actual spending on marketing and its weekly sales hiring data. During the Meet-and-Confers, Defendants agreed to consider producing a broader set of responsive documents, given the Complaint's allegations concerning (i) unprecedented cuts in and suspension of the marketing budget and the impact of the denied requests for more marketing spending (¶¶69-74); (ii) frozen requisition for job openings for sales personnel and the impact of the open positions on the remaining sales force and the

---

[3] References to "¶_" are to paragraph(s) of the Complaint.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
July 6, 2022
Page 3

Company's top line and growth (¶¶75-83); (iii) specific requests for more sales personnel from the VP of Finance and VP of Partnerships (¶82); and (iv) how in 2020, there were more conversations and arguments about the headcount asks because the top-line growth was so aggressive and Splunk would need extra investment to support that growth (¶82). Accordingly, Defendants' limited agreement to produce documents in response to Request No. 11 is improperly narrow, as it excludes responsive documents concerning the headcount and budgetary requests made by Splunk sales and marketing personnel or by the New Logo Team.

- **Request No. 14** seeks documents and communications concerning the "All-Hands Meetings" and other internal Splunk meetings or calls during which Splunk's sales, marketing, New Logo Team, or New Logos were discussed. Defendants limited their initial agreement to produce documents concerning only the All-Hands Meeting discussed in Paragraph 69 of the Complaint. During the Meet-and-Confers, Defendants agreed to consider producing documents concerning the other meetings discussed in the Complaint. Those meetings include a meeting in or around February or March 2020 during which the Vice President of Product Marketing, the Chief Marketing Officer (Carrie Palin), and other senior leadership discussed the suspension of the marketing budget (¶69); an All-Hands meeting during which Defendant Merritt announced the layoffs of the New Logo Team (¶87); and All-Hands Meetings in early 2020 during which Defendant Merritt announced decisions to suspend marketing investments, freeze hiring, and lay off employees (¶121). The Court specifically discussed these allegations in its Order, including "that individual Defendants knew that the challenged statements would be misleading because," among other things, "individual Defendants knew that the company had suspended marketing investments, froze hiring of sales personnel, and laid off employees to an extent that could, and ultimately allegedly did, impact the Company's ability to generate sufficient pipeline and meet its growth and revenue targets, because Merritt announced such actions during an all-hands meeting at the start of the Class Period." Order at 31 (citing ¶121); *see also id.* at 4. Accordingly, Defendants' limited agreement to produce documents in response to Request No. 14 is improperly narrow, as it excludes responsive documents concerning meetings other than the one discussed in Paragraph 69.

- **Request No. 18** seeks documents and communications concerning the impact of the Covid-19 pandemic on Splunk's financial performance and operations. Defendants initially agreed to produce only documents sufficient to show the amounts Splunk budgeted for and actually spent on marketing, Splunk's weekly sales personnel hiring data, and the circumstances surrounding the disbanding the New Logo Team in June 2020. During the Meet-and-Confers, Defendants agreed to consider producing a broader set of responsive documents given the discussions of the impact of the pandemic on Splunk's financial performance and operations discussed in both Lead Plaintiff's Complaint and the Court's Order. *See* ¶¶48-52, 96, 135; Order at 3-4 ("[a]nalysts specifically commented during the Class Period that the pandemic was having no material impact on the company's fundamentals or its development of pipeline" and that Defendant Child admitted that

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
July 6, 2022
Page 4

"when the pandemic hit," the Company suspended investments in marketing and froze hiring), 19 (sustaining allegations that Defendants failed to disclose their "suspension of investments in marketing and the hiring freeze of sales personnel, which Plaintiff alleges were implemented approximately at the beginning of the pandemic and lasted throughout the Class Period"), 21, 27, 35. Accordingly, Defendants' limited agreement to produce documents in response to Request No. 18 is improperly narrow, as it excludes responsive documents concerning the impact of the pandemic on Splunk's operations and financial results.

- *Request No. 24* seeks documents and communications concerning Defendant Child's post-Class Period statement that during the Class Period Splunk was in "the valley of death." ¶101. Defendants initially refused to produce any documents in response to this Request. During the Meet-and-Confers, Defendants agreed to consider producing documents responsive to this Request. Defendant Child's post-Class Period admission is relevant to, among other things, his scienter concerning what he knew or should have known during the Class Period, as well as his motive for artificially inflating the stock price to secure favorable funding for the Company. *See Karinski v. Stamps.com, Inc.*, 2020 WL 5084093, at \*2 (C.D. Cal. July 21, 2020) (post-Class period discovery is "relevant to Defendants' knowledge when they made the alleged misstatements"); *In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3791716, at \*4-5 (C.D. Cal. Mar. 12, 2012) (same).

- *Request No. 25* seeks documents and communications concerning Spunk's stock price and changes to its stock price during the Class Period and on December 3, 2020. Defendants initially agreed to produce only documents concerning changes in Splunk's stock price on December 2-3, 2020. During the Meet-and-Confers, Defendants agreed to consider producing responsive documents concerning Splunk's stock price and stock-price changes on additional relevant dates. The Complaint alleges, and the Court's Order discusses and credits allegations, that Defendants kept the stock price artificially inflated with their Class Period misstatements and "Defendants had an incentive to deceive investors because doing so would help them secure financing for the company on favorable terms and would help them secure shareholder approval for their compensation packages." Order at 34, n.9; *see also id.* at 31, 33. Thus, documents concerning not just the actual stock price movements at the end of the Class Period, but documents and communications concerning contemplated or perceived reasons for those changes (or lack thereof during the Class Period) are highly relevant. In an effort to reach compromise, Lead Plaintiff would agree that Defendants may satisfy Request No. 25 by producing responsive documents concerning Splunk's stock price, and stock-price changes, on March 4-5, 2020; March 26-27, 2020; May 21-22, 2020; June 1-2, 2020; June 8-9, 2020; August 26-27, 2020; September 3-4, 2020; September 14-15, 2020; December 2-3, 2020; and March 3-4, 2021.

- *Request No. 26* seeks documents and communications concerning Splunk's communications with securities analysts and investors, analyst reports, and analyst commentary about the Company and its financial performance. Defendants initially agreed

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
July 6, 2022
Page 5

to produce only such communications concerning the sustained statements and the corrective disclosures. During the Meet-and-Confers, Defendants agreed to consider producing additional responsive documents in light of the Complaint's allegations concerning analysts' and investors' concerns and interpretations of Defendants' Class Period statements. *See* ¶¶29-30, 33, 37, 44, 46, 56; Order at 3 ("Analysts published statements indicating that they believed that Splunk was expanding and investing in its sales force and its sales efforts to reach its revenue and growth targets." (citing ¶56)). Accordingly, Defendants' limited agreement to produce documents in response to Request No. 26 is improperly narrow, as it excludes responsive and highly relevant documents concerning topics other than the sustained statements and corrective disclosures, such as the Company's financial performance, and also because it excludes responsive documents beyond just the communications with analysts, including, for example, drafts of those communications as well as internal communications at Splunk about the communications with analysts and investors.

- ***Request No. 27*** seeks documents and communications concerning Splunk's June 2020 debt offering. Defendants initially agreed to produce documents only in the custodial files of Defendants Merritt and Child responsive to this Request. During the Meet-and-Confers, Defendants agreed to consider producing responsive documents from the custodial files of agreed-upon custodians other than the individual Defendants. Such documents are highly relevant, and should be produced. *See In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015) ("The scienter of senior controlling officers of a corporation may be attributed to the corporation itself to establish liability as a primary violator of § 10(b) and Rule 10b-5."); *SEB Inv. Mgmt. AB v. Symantec Corp.*, 2019 WL 4859099, at *3 (N.D. Cal. Oct. 2, 2019) ("Our court of appeals has [] held [that] plaintiffs may meet their pleading burden as to scienter of a corporation by alleging facts creating a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter, even if that person is not a named defendant.").

Please provide Defendants' final position on these Requests by July 13, 2022 so that Lead Plaintiff can bring any disputes to the Court's attention that require judicial intervention to resolve.

***Second***, as part of an overall compromise and to avoid motion practice and narrow the parties' disputes to the extent reasonably possible, Lead Plaintiff is willing to narrow the following Requests to reach agreement on the scope of production:

- ***Request No. 1*** seeks organizational charts. During the Meet-and-Confers, you represented that the Company does not maintain or possess organizational charts created in the ordinary course of business, but instead has a system through which individual employees' reporting structures can be pulled up, which Defendants can then capture and produce. In an effort to reach compromise, Lead Plaintiff would agree that Defendants may satisfy Request No. 1 by producing screen shots of the reporting structures of relevant employees.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
July 6, 2022
Page 6

- ***Request Nos. 3 and 4*** seek documents concerning Splunk's public statements and the Executive Defendants' involvement therein.  Defendants have agreed to produce only documents regarding the alleged false statements and corrective disclosures discussed in Paragraphs 110-18 and 133-42 of the Complaint.  During the Meet-and-Confers, you claimed that the number of SEC filings, including Forms 8-K and press releases, included in Request No. 3, make responding to this request unduly burdensome.  In an effort to reach compromise, Lead Plaintiff would agree that Defendants may satisfy Request Nos. 3 and 4 by producing documents and communications concerning the Company's quarterly and annual reports, earnings releases and corresponding earnings calls, and presentations to investors and analysts from January 1, 2020 through March 2, 2021.

- ***Request No. 7*** seeks documents and communications concerning New Logos, including actual or expected sales and revenue attributed to New Logos.  Defendants have refused to produce any documents responsive to this Request that are not otherwise captured by other Requests, and objected on the ground that the Request is purportedly overbroad and unduly burdensome.  In an effort to reach compromise, Lead Plaintiff would agree that Defendants may satisfy Request No. 7 by producing documents and communications concerning documents reflecting or concerning forecasts for New Logos during the Relevant Period, including the expected sales and revenues attributable to New Logos, the actual sales and revenues attributable to New Logos, and actual or contemplated reasons for any difference between those expected and actual metrics and results.

- ***Request No. 8*** seeks documents and communications concerning actual or potential investments in and budgets for marketing and sales for fiscal years 2019 forward.  This Request is relevant to key allegations in the Complaint, including those found in Paragraphs 69-73 and 82-83.  During the Meet-and-Confers, you objected to producing the documents requested on the ground that Request No. 8 is purportedly overbroad and unduly burdensome.  In an effort to reach compromise, Lead Plaintiff would agree that Defendants may satisfy Request No. 8 by producing (i) documents sufficient to show the budgeted for and spent marketing amounts for fiscal years 2019 to 2021, weekly hiring data in fiscal year 2021, and monthly sales hiring data in fiscal years 2019 to 2021; as well as (ii) any documents and communications concerning Splunk's investments in marketing and sales that Splunk revised, delayed, suspended, eliminated, or considered but did not complete; agendas, minutes, notes, or talking points from meetings discussing these actual or potential investments or budgets; the Executive Defendants' knowledge of, role in, or participation in the budgets; and analyses concerning the impact of the changes on the Company's financial performance.

- ***Request No. 10*** seeks documents and communications concerning Splunk's hiring decisions.  The Court specifically discussed allegations about hiring decisions in its Order, crediting allegations concerning "Defendants' suspension of investments in marketing and the hiring freeze of sales personnel, which Plaintiff alleges were implemented approximately at the beginning of the pandemic and lasted throughout the Class Period, as

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
July 6, 2022
Page 7

well as the fact that Splunk had fired the 'new logo' team, which was responsible for generating pipeline, as of May 2020, to be effective in June 2020." Order at 19 (citing ¶¶75-88); *id.* at 20, n.5 (crediting former employees' accounts concerning hiring decisions); *id.* at 24 ("Plaintiff's allegations raise the reasonable inference that, by the time Merritt made the statements at issue, Defendants had already fired the 'new logo' team responsible for building pipeline, had suspended investments in marketing, and had implemented a hiring freeze of sales personnel, and that this played a role in the company's ultimate failure to build adequate pipeline and meet its growth and revenue targets for Q3 2020."). During the Meet-and-Confers, you objected to produce the requested documents on the grounds that the Request is purportedly overbroad and unduly burdensome. In an effort to reach compromise, Lead Plaintiff would agree that Defendants may satisfy Request No. 10 by producing documents and communications concerning Splunk's actual or contemplated hiring decisions concerning sales and marketing personnel, including without limitation New Logo Team members.

- ***Request No. 19*** seeks documents and communications concerning Splunk's historical net revenues and losses from January 1, 2019 through the present. This Request is relevant to key allegations in the Complaint, including those found in Paragraphs 25-38 and 59-62. *See e.g.*, ¶35 ("Critically, Splunk assured investors that the Company would resolve its cash-flow challenges and become cash-flow positive through revenue growth—not by a suspension of marketing investments or a freeze in hiring."); *see also* Order at 2. In response to this Request, Defendants refused to produce any responsive documents that were not captured by other Requests. In an effort to reach compromise, Lead Plaintiff would agree that Defendants may satisfy Request No. 19 by producing documents and communications for the time period of January 1, 2019 through December 31, 2020 concerning the reasons for Splunk's historical net revenues and losses before the Class Period, and the reasons for changes in Splunk's historical net revenues and year-over-year losses.

- ***Request No. 22*** seeks documents and communications concerning Spunk's financial performance in the third quarter of 2020, including the reasons for such financial performance. To date, Defendants have agreed only to produce documents sufficient to show Splunk's sales forecasts, deals in pipeline, and closed deals for this quarter. During the Meet-and-Confers, you objected to produce the documents requested on the grounds that the Request is purportedly overbroad and unduly burdensome. In an effort to reach compromise, Lead Plaintiff would agree that Defendants may satisfy Request No. 22 by producing documents and communications concerning (i) Splunk's sales forecasts, deals in the pipeline, and closed deals for the third quarter of fiscal year 2021; (ii) the missed sales forecasts for that quarter and the reasons for such misses; (iii) the deals that were expected to be, but ultimately were not, in the pipeline for the quarter; and (iv) the deals that were expected to, but did not, close in the quarter, and the actual or contemplated reasons those deals did not close in the quarter.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
July 6, 2022
Page 8

- ***Request No. 28*** seeks documents and communications concerning Splunk's Capital Raises.  Defendants have refused to produce any documents in response to this Request.  As the Complaint discusses, due to the Company's mounting losses and debt, "[s]ecuring . . . additional financing was mission critical for Defendants." ¶¶59-62; Order at 31-32 (sustaining allegations that the "individual Defendants had an incentive to . . . facilitate their efforts to secure additional financing for the company on favorable terms").  In an effort to reach compromise, Lead Plaintiff would agree that Defendants may satisfy Request No. 28 by producing documents and communications concerning any actual or contemplated Capital Raises in fiscal years 2019 through 2021 not captured by Request No. 27, including the reasons for any additional capital raises, actual or proposed use(s) for such proceeds, and the stated reasons that such Capital Raises were not conducted.

Please let us know by July 13, 2022 whether Defendants accept Lead Plaintiff's offers of compromise concerning Requests 1, 3, 4, 7, 8, 10, 19, 22, and 28 are acceptable to Defendants.

***Third***, based on our Meet-and-Confers, we understand that the parties have reached an impasse on the following Requests:

- ***Request No. 2*** seeks calendar entries for the Executive Defendants and other people listed on Defendants' Rule 26(a)(1) Disclosures.  Defendants have refused to produce calendar notices beyond certain custodians on the narrowed list of topics that Defendants have otherwise agreed to produce, claiming the Request is overly broad and "unreasonably expansive" as to time and topic.  As we discussed, we disagree.  These documents are relevant to identifying relevant discussions and meetings, including those alleged in the Complaint.  Applying restrictive terms and topics to a search for calendar entries will miss relevant information.

- ***Request No. 5*** seeks documents and communications concerning the Challenged Statements discussed in Paragraphs 110-18 of the Complaint.  Defendants have refused to produce documents from before March 1, 2020, claiming that the Request is overly broad and burdensome.  As we discussed during the Meet-and-Confers, we disagree.  "[C]ommon sense" dictates that facts relevant to scienter "will ordinarily date from before any alleged misrepresentations" because the "circumstances preceding the statements . . . would be among those knowable at the time of the statements. Thus, facts predating the class period are relevant to establish that statements made during the class period were materially false." *Toyota*, 2012 WL 3791716, at *4; *see also Stamps.com*, 2020 WL 5084093, at *2 (finding post-class period discovery "relevant to Defendants' knowledge when they made the alleged misstatements and proportional to the needs of the case").

- ***Request No. 12*** seeks documents and communications concerning the inadequacies and weaknesses of Splunk's sales personnel.  Defendants have refused to produce the responsive materials requested, agreeing only to produce documents "sufficient to show" Splunk's weekly sales hiring data during fiscal year 2021 and Splunk's monthly sales

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
July 6, 2022
Page 9

hiring data from fiscal year 2019 through 2021. The requested documents are highly relevant to, among other things, the Complaint's allegations regarding key individuals' requests for additional headcount that were rejected, as well as the allegations discussed in the Court's Order concerning the inadequacy of marketing and sales personnel to meet growth and revenue targets. *See* ¶¶75-83, Order at 19-20, 22-23, 26, 28, 31, 37. The Request is not overly broad or burdensome; it is limited to sales personnel—a core issue in this case.

- ***Request Nos. 15 and 20.*** These Requests seek documents and communications concerning Splunk's potential market access, market share, and total addressable market for Splunk's products (Request No. 15), and the decline in Spunk's financial performance following its changed business model and the effect on the Company's ability to become cash-flow positive (Request No. 20). These documents are highly relevant, concern matters discussed in both the Complaint and Court's Order, and should be produced. *See, e.g.*, ¶¶26-29 ("Defendant Child acknowledged to investors that the licensing model transition was 'hard on cash'."); Order at 2 (discussing "statements that indicated to investors that [Defendants] intended to achieve positive cash flow, not by cutting operational expenses, but by tapping into a growing market for the type of software Splunk produced").

- ***Request No. 30*** seeks documents concerning Defendant Merritt's departure from Splunk, as well as the departures of Susan St. Ledger, Tim Tully, and Carrie Palin. Defendant Merritt made many of the Challenged Statements and then, less than six months after Lead Plaintiff filed the Amended Complaint, abruptly resigned from his position as CEO of Splunk. Documents concerning Defendant Merritt's departure are relevant to whether Merritt's unexpected departure from Splunk relates to his knowingly false statements, and documents concerning the other departures, which are discussed in the Complaint (*see* ¶¶83 & n.55, 100) are also highly relevant. *See, e.g.*, *Willis v. Big Lots, Inc.*, 2016 WL 8199124, at \*8, \*34 (S.D. Ohio Jan. 21, 2016) (finding departure of high-level executives, including those months after the class period, relevant to scienter). Each of these individuals served in senior executive roles and announced their sudden and unexpected resignations without replacements either during or shortly after the Class Period. Moreover, St. Ledger and Palin were extensively involved in Splunk's sales and marketing organizations, as detailed in the Complaint. Documents concerning these individuals' departures are relevant to the relationship between their unexpected departures and the events at issue in this litigation.

- ***Request No. 31*** seeks documents relating to the Executive Defendants' performance. These documents are relevant because this action challenges the Executive Defendants' misconduct and violations of federal securities laws. Documents reflecting the Executive Defendants' performance are relevant to determining the scope of the Executive Defendants' alleged misconduct and the extent to which that misconduct was known and documented. And finally, Request No. 31 seeks documents relating to the performance of Splunk's sales and marketing personnel. Documents reflecting the performance of

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
July 6, 2022
Page 10

Splunk's sales and marketing personnel are relevant to the rationale underlying Defendants' hiring, firing, and other personnel-related decisions.

Defendants objected to Request Nos. 30 and 31 on privacy grounds.[4]  Because these documents are relevant, the appropriate course of action is for Defendants to produce them in a manner that protects privacy rights.  As Judge Tigar has recognized, "protective orders are routinely sufficient to protect party and non-party rights in personnel files." *Bernstein v. Virgin Am., Inc.*, 2018 WL 6199679, at \*3 (N.D. Cal. Nov. 28, 2018) (collecting cases). Here, the documents that Lead Plaintiff has requested are subject to the heavily negotiated and Court-entered protective order (ECF No. 96), which provides more than sufficient protection to address any privacy concerns implicated in producing the responsive documents.  In the interest of reaching resolution on these Requests, Lead Plaintiff will agree to the redaction of sensitive personal information unrelated to individuals' employment with Splunk, such as social security numbers, bank account information, and marital status.  *See Pac. Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co.*, 2019 WL 1199024, at \*3 (C.D. Cal. Mar. 11, 2019) (nondisclosure of such information further assuages privacy concerns).

- *Subpoenas.* Lead Plaintiff served the Subpoenas on third parties likely to have highly relevant documents: (1) Carrie Palin (the Company's Chief Marketing Officer who was hired by Defendant Merritt, had conversations with Merritt about the marketing needs of the Company, spoke to investors about the Company's marketing goals, and told Company employees about the suspension of the marketing budget, ¶¶41, 69, 100); and (2) Susan St. Ledger (the Company's President of Worldwide Field Operations who oversaw the Company's go-to-market capabilities, told Company employees about the hiring freeze in or around March 2020, asked for a higher headcount of sales personnel but was denied, and then abruptly resigned during the Class Period after internal disagreements over the budget and headcount required to meet the Company's goals, ¶¶78, 83 & n.55, 100).  Each is discussed in the Complaint and in the Court's Order.  ¶¶41, 69, 78, 83 & n.55, 100; Order at 3, 6.

  Lead Plaintiff's Subpoenas targeted nonduplicative documents specifically in the custody and control of these third parties, including text messages, documents and communications created or stored on any non-Company device or from personal email accounts, hard-copy documents the third parties took with them after their employment with Splunk ended, and documents concerning their unexpected departures.  You represent both of these individuals, and have refused to produce any documents from these third parties on the primary basis that Lead Plaintiff should be required to wait until the Company produces its

---

[4] Defendants also objected to Request Nos. 30 and 31 on the ground of burden given the number of sales and marketing employees you represented worked at the Company.  In the interest of compromise, if Defendants otherwise agree to produce documents responsive to Request Nos. 30 and 31, Lead Plaintiff would consider limiting these Requests to relevant portions of the personnel files of a narrower group of individuals.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
July 6, 2022
Page 11

documents before seeking any documents from these third parties.  Moreover, you have neither represented that the third parties do not possess relevant documents uniquely in their control, nor provided any basis for the third parties' claims of burden.[5]

Third-party discovery is allowed under Fed. R. Civ. P. 45, and there is no rule that precludes Lead Plaintiff from conducting third-party discovery until the completion of party discovery.  Courts recognize that third parties may likely possess relevant information not in any party's possession or control, and that such information is properly subject to discovery.  *See, e.g.*, *Staley v. Gilead Scis., Inc.*, 2022 WL 789125, at *2 (N.D. Cal. Mar. 14, 2022) (compelling third party production where witness "had at least some involvement in relevant decision making" and has not established that the subpoena is unduly burdensome); *Zeleny v. Brown*, 2019 WL 1084177, at *3 (N.D. Cal. Mar. 7, 2019) (compelling third party production where "it is not clear that [plaintiff] could obtain a complete set of communications . . . from [defendant]"); *In re Pac. Gateway Exch., Inc.*, 2001 WL 1334747, at *1 (N.D. Cal. Oct. 17, 2001) ("There may also be personal computers in the possession of former employees which . . . could provide relevant data. Third parties may also have relevant documents which they themselves would discard and not maintain, unless they were obliged to by a subpoena in this litigation."); *Philips N. Am. LLC v. KPI Healthcare, Inc.*, 2021 WL 4775639, at *4 (C.D. Cal. July 16, 2021) ("[T]he discovery Plaintiffs seek here meets Rule 26(b)'s broad definition of relevance. . . . [T]he burden shifts to [subpoena recipients] to show that discovery should not be permitted"); *Khosroabadi v. Mazgani Soc. Servs., Inc.*, 2018 WL 1858153, at *9 (C.D. Cal. Mar. 1, 2018) (third party "has not shown that searching for the requested information would be unduly burdensome"); *Adams v. Symetra Life Ins. Co.*, 2020 WL 6469949, at *5 (D. Ariz. Nov. 3, 2020) (ordering third party production where "it does not appear that [defendant] would have possession of the . . . documents at issue," including notes).  Your cited cases are in accord.  *See William*, 2020 WL 1643977, at *1 ("[B]oilerplate 'such discovery is not proportional' argument does not satisfy [the] burden to successfully resist this relevant discovery."); *Khan v. Rogers*, 2018 WL 5849010, at *5 (N.D. Cal. Nov. 6, 2018) (no showing that documents sought were not already in any party's possession, and third party submitted sworn statement that he no longer possessed personal device at issue).

Accordingly, we believe the documents responsive to Request Nos. 2, 5, 12, 15, 20, 30, and 31 as well as in response to the Subpoenas should be produced, and we intend to bring these matters to the Court's attention absent a change of position by Defendants.

***Finally***, the operative time period of the Requests is November 1, 2019 to the present.  In their Reponses, Defendants improperly attempt to limit their searches for documents responsive to

---

[5] As discussed above, the objections you have raised to the subpoenas on privacy grounds are unavailing.  As *William v. Morrison & Foerster LLP* recognizes, the third parties' privacy interests are adequately addressed by the parties' Protective Order, as well as through appropriate redactions.  2020 WL 1643977, at *1-2 (N.D. Cal. Apr. 2, 2020) (ordering production of relevant portions of personnel file).

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
July 6, 2022
Page 12

any of the Requests to the period of March 1, 2020 through December 31, 2020.  Highly relevant materials from Company files inevitably will be dated before and after the Class Period.  *See, e.g.*, *Toyota*, 2012 WL 3791716, at *4-5 (compelling pre- and post-Class Period discovery because those facts and circumstances are relevant to falsity and scienter); *see also Stamps.com*, 2020 WL 5084093, at *2 ("Some discovery shortly before and after the class period began is both relevant to Defendants' knowledge when they made the alleged misstatements and proportional to the needs of the case.").  As a compromise, and to avoid motion practice on this issue, Lead Plaintiff proposes January 1, 2020 through the 90-day lookback period following the Class Period, with certain requests warranting a longer time frame, which the parties can discuss.

Please provide your final positions on the items detailed above by July 13, so that we may promptly bring any disputes the Court's attention immediately.

Sincerely,

Jonathan D. Uslaner