# Exhibit B



SIDLEY AUSTIN LLP
555 CALIFORNIA STREET
SUITE 2000
SAN FRANCISCO, CA 94104
+1 415 772 1200
+1 415 772 7400 FAX

+1 415 772 1250
NICOLE.RYAN@SIDLEY.COM

AMERICA • ASIA PACIFIC • EUROPE

July 27, 2022

**CONFIDENTIAL**

**By Email**

Jonathan D. Uslaner
Bernstein Litowitz Berger & Grossman LLP
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
jonathanu@blbglaw.com

> Re:     *In re Splunk Inc. Securities Litigation*, Case No. 4:20-cv-08600-JST

Counsel:

We write in response to your July 6 meet-and-confer letter and in follow-up to our June 15, 17, and 21 meet-and-confer telephone conferences regarding Defendants' Objections and Responses to Lead Plaintiff's First Request for the Production of Documents, as well as Lead Plaintiff's non-party subpoenas propounded to former Splunk employees Carrie Palin and Susan St. Ledger.

### Requests for Production

In order to reach compromise and avoid a dispute:

Defendants will agree to Plaintiff's proposed compromise time period of January 1, 2020 to March 2, 2021 for most of the Requests for which Defendants agree to produce documents, subject to agreement on the time period for Plaintiff's responses and production in response to Defendants' requests for production (the "agreed-upon time period").

Defendants will also agree to produce further documents in response to the following Requests, as follows:

- **Request No. 1** (seeking organization charts). As we previously explained, the Company does not maintain organization charts created in the ordinary course of business, but instead has a system through which current employees' individual reporting structures can be pulled up and captured. As we offered during our meet-

Sidley Austin (CA) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Jonathan D. Uslaner
July 27, 2022
Page 2

and-confers and as you request in your letter, the Company will provide snapshots of the reporting structure for a limited number of current employees. Please let us know your list of requested relevant employees.

- **Request No. 6** (regarding the New Logo Team). Defendants will produce responsive, reasonably available, non-privileged documents regarding the New Logo Team from agreed-upon custodians for the agreed-upon time period (not limited to documents regarding the disbanding of the New Logo Team).

- **Request No. 8** (regarding investments in marketing and sales). Defendants have already agreed to produce responsive, reasonably available, non-privileged documents sufficient to show (i) the amounts Splunk budgeted for and spent on marketing in FY 2021; (ii) Splunk weekly sales hiring data for FY 2021; (iii) the amounts Splunk spent on marketing from FY 2019 through FY 2021; and (iv) Splunk monthly sales hiring data from FY 2019 through FY 2021 in response to this Request. In addition, Defendants will produce responsive, reasonably available, non-privileged documents concerning Splunk's investments in and budgets for marketing from agreed-upon custodians for the agreed-upon time period.[1]

- **Request No. 9** (regarding Spunk's hiring plans, goals, forecasts, and trends). Defendants have already agreed to produce responsive, reasonably available, non-privileged documents from agreed-upon custodians for the time period March 1, 2020 to December 31, 2020 in response to this Request. Defendants will also produce such documents starting January 1, 2020.[2] In addition, Defendants have agreed to produce the underlying hiring data going back to FY 2019 in response to Request No. 8.

- **Request No. 11** (regarding headcount or budgetary requests made by sales and marketing personnel). Defendants have already agreed to produce documents sufficient to show weekly sales hiring data for FY 2021 and the amounts budgeted for and spent on marketing for FY 2021 in response to this Request. Defendants will also

---

[1] The Request also vaguely references "investments in . . . sales." The case concerns alleged misstatements about sales hiring. Defendants have agreed to produce sales hiring data and other documents regarding hiring plans, goals, forecasts, and trends in response to this and other Requests.

[2] The letter's request for all documents from January 1, 2019 forward relating to hiring plans, goals, forecasts, and trends is substantially overbroad, extremely burdensome, unnecessary, and seeks the production of irrelevant information given that the Class Period does not even start until May 21, 2020, nearly a year-and-a-half later.

# SIDLEY

Jonathan D. Uslaner
July 27, 2022
Page 3

produce responsive, reasonably available, non-privileged emails from agreed-upon custodians for the agreed-upon time period.[3]

- **Request No. 14** (regarding all-hands meetings). Defendants will produce responsive, reasonably available, non-privileged documents regarding the all-hands meetings alleged in Paragraphs 67, 87, and 121 of the Complaint and the meeting with Carrie Palin alleged in Paragraph 69 of the Complaint from agreed-upon custodians.

- **Request No. 18** (regarding the impact of Covid-19). Defendants will produce responsive, reasonably available, non-privileged documents from agreed-upon custodians for the agreed-upon time period that discuss the impact of Covid-19, if any, on the Company's financial performance, sales, marketing, hiring, or layoffs.[4]

- **Request No. 22** (regarding Splunk's financial performance in Q3 FY 2021). In addition to the documents Defendants have already agreed to produce in response to this Request, Defendants will produce responsive, reasonably available, non-privileged documents that discuss (i) Splunk's sales forecasts, deals in the pipeline, and closed deals for Q3 FY 2021; (ii) the missed sales forecasts for that quarter and the reasons for such misses; and (iii) the deals that were expected to, but did not, close in the quarter, and the actual or contemplated reasons those deals did not close in the quarter, as requested in your letter,[5] from agreed-upon custodians for the agreed-upon time period.

- **Request No. 25** (regarding Splunk's stock price). Defendants will produce responsive, reasonably available, non-privileged documents, if any, regarding Splunk's stock price, or stock price changes, on May 21-22, 2020, June 8-9, 2020, September 14-15, 2020, and December 2-3, 2020[6] from agreed-upon custodians.

---

[3] Plaintiff's request for all documents relating to every headcount or budgetary request by any person in sales or marketing is overbroad and unduly burdensome, but Defendants will produce responsive documents within the agreed-upon custodians' emails.

[4] Plaintiff's request for all documents concerning any potential or actual impact of Covid-19 on any aspect of Splunk's operations is overly broad and unduly burdensome. Covid was a driving force for all companies at the time, and there are a multitude of documents about Covid testing, Covid safety protocols, etc. that are wholly irrelevant to this case—and implicate individuals' privacy interests—yet could be deemed to relate to Splunk's operations.

[5] We do not understand your letter's additional reference to "the deals that were expected to be, but ultimately were not, in the pipeline for the quarter." The deals in the pipeline encompass the deals that were expected for the quarter.

[6] These are the dates of the challenged statements and alleged corrective disclosures.

# SIDLEY

Jonathan D. Uslaner
July 27, 2022
Page 4

- **Request No. 26** (regarding communications with securities analysts and investors). Defendants have already agreed to produce responsive, reasonably available, non-privileged communications with analysts and investors regarding the Remaining Challenged Statements and Alleged Corrective Disclosures from agreed-upon custodians in response to this Request, and will do so for the agreed-upon time period (i.e., starting January 1, 2020). In addition, Defendants will produce responsive, reasonably available, non-privileged communications with analysts from March 1, 2020 to December 31, 2020 regarding Splunk or its financial performance, even if not about the Remaining Challenged Statements or Alleged Corrective Disclosures, from agreed-upon custodians.[7]

- **Request No. 27** (regarding Splunk's June 2020 debt offering). Defendants will produce responsive, reasonably available, non-privileged emails regarding the Debt Offering from the agreed-upon custodians (not limited to Mr. Merritt and Mr. Child).

Defendants respond as follows with respect to the additional Requests addressed in your letter.

- **Request No. 2**. Request No. 2 seeks any and all "calendar, diary, and journal entries" for fourteen individuals (Mr. Merritt, Mr. Child, and all other current and former Splunk employees listed in Defendants' Initial Disclosures) over a two-and-a-half year time period. As further explained in Defendants' objections and responses and in our meet-and-confers, this Request is vague and ambiguous in its request for "diary and journal entries," substantially overbroad, unduly burdensome, not proportional to the needs of the case, and seeks information that is irrelevant to Plaintiff's claims. It improperly seeks information from a broad swath of individuals for an unreasonably expansive time period *on any conceivable topic*—personal or business related—which encompasses materials far outside the subject matter of this action, namely Defendants' basis for and knowledge in connection with the Remaining Challenged Statements (i.e., verbal statements about hiring, marketing investments, and layoffs made on three occasions over a six-month time period).

  In response to this Request, Defendants have agreed to produce responsive, reasonably available, non-privileged calendar notices sent and received from agreed-

---

[7] Plaintiff's request for additional communications with investors unrelated to the challenged statements or corrective disclosures is overbroad, unduly burdensome, and seeks irrelevant information; it would include, for example, all documents related to all times that an investor contacted the Company for an investor packet. In addition, the request for all documents that "relate to" any analyst or investor communication is overbroad, unduly burdensome, vague and unclear, and seeks irrelevant information. If such "related" documents are relevant, e.g., because they discuss the Company's hiring plans or investments in marketing, they will be produced in response to other Requests for which Defendants have agreed to produce documents.

# SIDLEY

Jonathan D. Uslaner
July 27, 2022
Page 5

upon custodians for the time period March 1, 2020 to December 31, 2020 for those topics on which Defendants agree to produce responsive documents in response to other Requests. Plaintiff's insistence on all *additional* calendar notices for these individuals, on *every conceivable topic*—personal and business related—for a two-and-a-half-year time period, is plainly improper. There is no reason Defendants should search for and produce irrelevant calendar entries for a host of individuals. Such a request is substantially overbroad, unduly burdensome, invades the privacy of these individuals, and seeks irrelevant information that has nothing to do with Plaintiff's claims in this case.

- **Request Nos. 3 and 4**. Request Nos. 3 and 4 seek all documents regarding all of Splunk's quarterly and annual investor earnings calls, investor presentations, periodic SEC filings, 8-Ks, and press releases over a two-and-a-half-year time period. As set forth in Defendants' Responses and as further explained during our meet-and-confers, these Requests seek irrelevant information that is far outside the scope of Plaintiff's claims—which challenge only three sets of *verbal* statements by two of Splunk's officers during a *six-month* time period: statements made during a May 21, 2020 earnings call, a June 2020 Silicon Valley Business Journal interview, and a September 14, 2020 analyst conference. Furthermore, these Requests not only seek irrelevant information but are overbroad, unduly burdensome, and not proportional to the needs of the case.

  Your letter states that Plaintiff would agree that Defendants may satisfy these Requests by producing all documents concerning all of the Company's quarterly and annual reports, earnings releases, earnings calls, and presentations to analysts and investors during a fourteen-month time period. This proposal still seeks irrelevant information and is substantially overbroad, unduly burdensome, and not proportional to the needs of the case. Defendants have already agreed to produce responsive documents regarding all of the Remaining Challenged Statements and Alleged Corrective Disclosures in response to Request 5. There is no basis to require Defendants to search for and produce all documents regarding numerous earnings calls, earnings releases, analyst presentations, investor presentations, and SEC filings that are *not* the subject of this lawsuit. If such documents are responsive to other Requests for which Defendants have agreed to produce documents—e.g., because they discuss hiring plans—they will be produced in response to those other Requests.

- **Request No. 5**. Request No. 5 seeks all documents concerning the Remaining Challenged Statements over a two-and-a-half year time period. Defendants have agreed to produce responsive, reasonable available, non-privileged documents regarding the Remaining Challenged Statements from agreed-upon custodians for the time period March 1, 2020 to December 31, 2020 in response to this Request.

# SIDLEY

Jonathan D. Uslaner
July 27, 2022
Page 6

Your letter unreasonably and unclearly objects to Defendants not producing documents "from before March 1, 2020" in response to this Request. The first challenged statement was made on May 21, 2020, more than two-and-half months *after* March 1, 2020. Plaintiffs provide no explanation for how there could be responsive documents about the challenged statements from more than two-and-a-half months before the statements were even made. Nevertheless, to avoid a dispute, Defendants will produce responsive, reasonably available, non-privileged documents, if any, concerning the Remaining Challenged Statements for the agreed-upon time period (i.e., starting January 1, 2020).

- **Request No. 7.** Request No. 7 seeks all documents concerning "New Logos," which is defined in the Requests *not* to mean the New Logo Team but instead to include "all actual or potential sources of new business and pipeline generation" anywhere at the Company—which seemingly encompasses nearly all the Company's documents. As set forth in Defendants' objections and responses and as further explained in our meet-and-confers, this Request is vague and unintelligible, as well as substantially overbroad, unduly burdensome, not proportional to the needs of the case, and seeks irrelevant information that goes far beyond the subject matter of this case.

  Your letter states that Plaintiff would agree that Defendants may satisfy this Request by producing all documents concerning forecasts, expected sales and revenues, and actual sales and revenues for "New Logos." This proposal is no better. It still seeks irrelevant information and is vague, substantially overbroad, unduly burdensome, and not proportional to the needs of the case. Given the way "New Logos" is defined, it improperly seeks documents related to all of Splunk's actual and potential sales and actual and potential customers, going far beyond Plaintiff's claims in this case.

  Defendants have agreed to produce responsive documents regarding the New Logo Team in response to Request No. 6, as discussed above. This encompasses documents concerning any forecasts and expected and actual sales and revenues related to the New Logo Team. As such, it satisfies any reasonable request for documents related to the issues in the case.

- **Request No 10.** Request No. 10 seeks all documents concerning Splunk's "actual or contemplated hiring decisions." As further explained in Defendants' objections and responses and our meet-and-confers, this Request improperly seeks every document related to every hiring decision of every individual that Splunk ever made or considered making during a two-and-a-half year time period. This is plainly overbroad, unduly burdensome, and not proportional to the needs of the case. It seeks irrelevant information that goes far beyond the subject matter of the case and invades the privacy of thousands of Splunk employees and non-employees.

# SIDLEY

Jonathan D. Uslaner
July 27, 2022
Page 7

Your letter states that Plaintiff would agree that Defendants may satisfy these Requests by producing all documents concerning all of the Company's actual or contemplated hiring decisions concerning all sales and marketing personnel. This proposal still seeks irrelevant information and is substantially overbroad, unduly burdensome, not proportional to the needs of the case, and invades the privacy of thousands of individuals.

Your letter cites the Court's reference to allegations of a hiring freeze in its March 21, 2022 Order ("Order") as purported support for this Request. But Request No. 9 already covers documents about hiring plans, goals, patterns, and trends, which would encompass documents about a hiring freeze, and Defendants have already agreed to produce documents in response to that Request. Defendants consider general hiring decisions, such as an alleged hiring freeze, slowdown, increase, or resumption, to be encompassed within their response to Request No. 9 and will produce such documents. But Defendants will not produce all documents about "actual or contemplated" individualized hiring decisions, including consideration of thousands of people for individual sales and marketing positions.[8]

- **Request No. 12.** Request No. 12 seeks all documents concerning "any actual or perceived inadequacy, limitations, areas for improvement, shortcomings, or weaknesses of Splunk's sales personnel." As set forth in Defendants' objections and responses and as further explained in our meet-and-confers, this Request is overbroad, unduly burdensome, not proportional to the needs of the case, and seeks information that is irrelevant to Plaintiff's claims. The Complaint alleges that Defendants made misleading verbal statements on three occasions that hid the fact that there allegedly was an undisclosed hiring freeze that lasted the length of the class period. There are *no* alleged misstatements about the quality of Splunk's sales personnel, and the individual performance reviews, "weaknesses," or "areas for improvement" for thousands of individual sales personnel are completely irrelevant as well as invasive of the privacy of these individuals.

  Defendants have agreed to produce sales hiring data and documents about related topics in response to this and other Requests (e.g., Request Nos. 6, 8, 10, 11, and 12). Your letter cites the Complaint's allegations about requests for additional headcount as purported support for this Request, but that is a separate topic which is already addressed by Defendants' response to Request No. 11, discussed above. Your letter also cites the Order's reference to allegations concerning whether the Company's

---

[8] Your letter also refers to Plaintiff's allegations about the termination of members of the New Logo Team as purported support for this Request. However, terminations clearly are not hiring decisions. In any event, Defendants have already agreed to produce documents regarding any termination of members of the New Logo Team in response to Request No. 6.

# SIDLEY

Jonathan D. Uslaner
July 27, 2022
Page 8

sales personnel headcount was sufficient for the Company to build adequate pipeline to meet its growth and revenue targets. *See* Order at 19. Again, these allegations relate to the level of sales hiring, not the characteristics of individual employees, and are already covered by Defendants' responses to this and other Requests. Nevertheless, for the avoidance of doubt, Defendants will produce responsive, reasonably available, non-privileged documents, if any, that discuss whether Splunk had enough sales personnel to meet its growth and revenue targets from agreed-upon custodians for the agreed-upon time period.

- **Request Nos. 15 and 20.** Request No. 15 seeks all documents for a four-and-a-half year time period concerning "Splunk's potential market access, market share, or the total addressable market ('TAM') for Splunk's products." Request No. 20 seeks all documents for a four-and-a-half year time period concerning "any decline or change in Splunk's Financial Performance following its transition from a 'perpetual licensing' model to a 'term licensing' model." As set forth in Defendants' objections and responses and as further explained during our meet-and-confers, these Requests are extremely overbroad, unduly burdensome, vague, not reasonably particularized, not reasonably proportional to the needs of the case, and seek information that is irrelevant to Plaintiff's claims. Indeed, these Requests touch on nearly every aspect of Splunk's business over a four-and-a-half year time period. They seek irrelevant information that goes far beyond the subject matter of this case, namely Defendants' basis for and knowledge in connection with the Remaining Challenged Statements— i.e., verbal statements about *hiring, marketing investments, and layoffs* made on three occasions over a *six-month* time period.

  Your letter fails to address any of Defendants' objections and merely makes the conclusory and incorrect assertion that the documents are relevant. Defendants have agreed to produce documents in response to other Requests that satisfy any reasonable request for documents related to the issues in the case.

- **Request No. 19.** Request No. 19 seeks all documents for a three-and-a-half year time period concerning "Splunk's historical net revenues and losses," the "reasons" for those financial results, and the "impact" of those results on Splunk's "operations"— extremely vague and broad topics that could be deemed to encompass practically every Company document. As set forth in Defendants' objections and responses and as further explained in our meet-and-confer, this Request is plainly overbroad, unduly burdensome, not reasonably particularized, not proportional to the needs of the case, and seeks information that is entirely irrelevant to Plaintiff's claims.

  Your letter states that Plaintiff would agree that Defendants may satisfy this Request by producing documents for a two-year time period concerning "the reasons for

# SIDLEY

Jonathan D. Uslaner
July 27, 2022
Page 9

Splunk's historical net revenues and losses before the Class Period, and the reasons for changes in Splunk's historical net revenues and year-over-year losses." This proposal still seeks irrelevant information and is substantially overbroad, unduly burdensome, not reasonably particularized, and not proportional to the needs of the case. The case involves alleged verbal misstatements about *hiring, investments in marketing, and layoffs* on three occasions over a *six-month* time period that allegedly impacted Splunk's third-quarter results for FY 2021. "[T]he reasons for Splunk's historical net revenues and losses before the Class Period" are not relevant to Plaintiff's claims, and there is no basis to require Defendants to search for and produce any documents that relate in any way to this irrelevant topic.

Defendants have agreed to produce documents in response to other Requests which are more appropriately tailored to the issues and relevant time period for the case. For example, in response to Request No. 22, Defendants will produce documents concerning Splunk's sales forecasts, deals in the pipeline, and closed deals for Q3 FY 2021 and the reasons for the missed forecasts and deals that did not close in Q3. *See also* Defendants' responses to Request Nos. 5, 6, 8, 9, 16, 17, and 23. This satisfies any reasonable request for documents relevant to the issues in the case.

- **Request No. 24.** Request No. 24 seeks all documents concerning Mr. Child's post-Class Period "statement that Splunk was 'in the valley of death'" (citing Compl. ¶ 101). Paragraph 101 cites a March 22, 2021 article in Barron's Magazine that states, "When Splunk reported its full-year results on March 3[, 2021], revenue was down 5%, snapping a string of 30%-plus growth years going back to the company's initial public offering in 2012. 'Last year, we went through what transformation experts like to call the valley of death,' Child says. 'We had negative revenue, negative margin, negative cashflow . . . and now this year, you'll start to see things get better.'" This statement is irrelevant to Plaintiff's claims. It has nothing to do with the accuracy of the alleged misstatements or Mr. Child's scienter as to those statements. There is no dispute that Splunk had negative revenue, margin, and cashflow, and those items were disclosed to the market. In any event, this statement is publicly available, and there is no basis to require Defendants to search for and produce any documents that relate in any way to this irrelevant statement.

- **Request No. 28.** Request No. 28 seeks all documents concerning "any actual, contemplated, potential, or proposed Capital Raises"—defined to include all capital or money that Splunk obtained from investors, whether through debt financing, equity financing, or otherwise—over a two-and-a-half year time period. As set forth in Defendants' objections and responses and as further explained in our meet-and-confers, this Request is overbroad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to the subject matter of this

# SIDLEY

Jonathan D. Uslaner
July 27, 2022
Page 10

action: Defendants' basis for and knowledge in connection with the Remaining Challenged Statements.

Your letter contends that the desire to raise money provides a motive to commit securities fraud, but all companies have a desire to raise money, and such a generalized assertion does not make the multitude of underlying transaction-related documents relevant or proportional to the needs of the case. In any event, the only "Capital Raise" alleged in the Complaint is the Debt Offering, for which Defendants have already agreed to produce documents in response to Request No. 27.

Your letter does not address any of Defendants' objections, and your proposal to "narrow" the Request by saying that Defendants may satisfy the Request by producing all documents "concerning any actual or contemplated Capital Raises in fiscal years 2019 through 2021" except for the Debt Offering (which is already covered in Request No. 27) is no better. Indeed, it improperly seeks to *expand* the requested time frame to three years, and still seeks documents that are irrelevant, unduly burdensome, and not proportional to the needs of the case.

- **Request No. 30.** Request No. 30 seeks all documents concerning the departures of Susan St. Ledger, Tim Tully, Carrie Palin, and Mr. Merritt from Splunk, including compensation-related documents, departure agreements, and documents regarding any decisions to hire or promote personnel to replace any of those individuals or any aspect of the job functions they performed. As explained in Defendants' objections and responses and during our meet-and-confers, this Request is overbroad, unduly burdensome, not proportional to the needs of the case, and seeks information that is irrelevant to the subject matter of this action: Defendants' basis for and knowledge in connection with the Remaining Challenged Statements. Mr. Merritt left the Company more than a year after the end of the Class Period (long after this lawsuit was filed), and stayed at the Company in an advisory role after stepping down as CEO. Ms. St. Ledger, Mr. Tully, and Ms. Palin's departures are likewise irrelevant to Plaintiff's claims. Ms. St. Ledger left to become President of Worldwide Field Operations for Okta (staying on at Splunk for several months in a limited capacity to help with the transition of her role to the three persons taking over her responsibilities), Mr. Tully left to go into venture capital, and Ms. Palin left due to family health issues, among other things. There is nothing suspicious about their departures. In addition, the Request interferes with the individuals' privacy rights and is contrary to the strong protections afforded personnel records under applicable law.

# SIDLEY

Jonathan D. Uslaner
July 27, 2022
Page 11

- o **Privacy Concerns.** Your letter contends that the existence of a protective order resolves all privacy concerns with respect to Request Nos. 30 and 31.[9] This is incorrect. Agreeing to a protective order does not automatically give a party the right to inspect the private files and information of others. *See, e.g.*, *Loop AI Labs Inc. v. Gatti*, 2016 WL 1712131, at *2 (N.D. Cal. Apr. 29, 2016) (denying motion to compel on the basis of a privacy objection even though a protective order was in place). The existence of a protective order is only one factor that is part of a larger balancing test. *Stallworth v. Brollini*, 288 F.R.D. 439, 444 (N.D. Cal. 2012); *see also Loop AI Labs Inc.*, 2016 WL 1712131, at *2. Other factors include "the type of record requested, the information it does or might contain, . . . [and] the degree of need for access." *Stallworth*, 288 F.R.D. at 444. In this case, those factors uniformly militate against disclosure.

  Request Nos. 30 and 31 (as well as Request Nos. 10 and 12) impermissibly intrude on individuals' privacy by seeking personnel records, a type of document containing information that federal courts have regularly recognized as protected.[10] *Garedakis v. Brentwood Union Sch. Dist.*, 2016 WL 1133715, at *3 (N.D. Cal. Mar. 23, 2016) ("Personnel files are protected by the constitutional right to privacy."); *James v. US Bancorp*, 2021 WL 1890787, at *3 (C.D. Cal. May 11, 2021) ("Federal courts recognize an individual's privacy interest in his or her personnel files."); *Miller v. Fed. Express Corp.*, 186 F.R.D. 376, 384 (W.D. Tenn. 1999) ("Personnel records, because of the privacy interests involved, should not be ordered produced except upon a compelling showing of relevance."). Moreover, courts have required a heightened showing of need for personnel records and other private information—a showing that Plaintiff has not made here. *James*, 2021 WL 1890787, at *3 ("Discovery of personnel files should be limited to material that is '*clearly relevant*.'" (citation omitted, emphasis added)); *Miller*, 186 F.R.D. at 384 (requiring a "*compelling showing of relevance*" (emphasis added)); *Loop AI Labs Inc.*, 2016 WL 1712131, at *2 (requiring a "*compelling need*" that is "so strong as to outweigh the privacy right" (emphasis added)). Plaintiff's vague speculation that the personnel files of certain executives might relate to the issues in this litigation does not clear that high bar. Nor are the performance evaluations of individual sales and marketing personnel

---

[9] Your letter does not address Defendants' privacy objections as to Request Nos. 2, 10, and 12.

[10] In addition, Request No. 2 seeks individuals' personal diaries, journals, and calendar entries, which are plainly protected by the right to privacy. *See, e.g.*, *Stallworth*, 288 F.R.D. at 444 ("The United States Supreme Court has recognized a constitutional right to privacy, more specifically, a constitutional right to nondisclosure of one's personal information.").

# SIDLEY

Jonathan D. Uslaner
July 27, 2022
Page 12

germane to the issues in this litigation, which focus on Splunk's overarching hiring policy and the impact such company-wide policy had on Splunk's aggregate financial performance.

Plaintiff's cited authority is also inapposite to the circumstances of this case. *Bernstein v. Virgin America, Inc.*, 2018 WL 6199679 (N.D. Cal. Nov. 28, 2018), involved wage-and-hour claims for which granular, employee-level personnel records were essential. In contrast, there is no need for disclosure of personnel records in this securities case.

The California Constitution also protects privacy, Cal. Const. art. 1, § 1, and courts in this District have relied on the California right to privacy in their discovery rulings. *E.g.*, *McCowen v. Trimac Transp. Servs. (Western), Inc.*, 2015 WL 5184473, at *4 (N.D. Cal. Sept. 4, 2015) (acknowledging defendant's objection under California's right to privacy and relying on California authority); *see also Wiegele v. Fedex Ground Package Sys,*, 2007 WL 628041, at *2-4 (S.D. Cal. Feb. 8, 2007) (extensively relying on California's right to privacy when analyzing objections to discovery). Similar to the federal right to privacy, the California right protects personnel records. *Bd. of Trs. of Leland Stanford Jr. Univ. v. Superior Ct.*, 119 Cal. App. 3d 516, 526 (1981), *disapproved on other grounds by Williams v. Superior Ct.*, 3 Cal. 5th 531 (2017). So too does the California right require more than a showing of mere relevance to order production. *Williams*, 3 Cal. 5th at 556 ("[W]hen a discovery request seeks information implicating the [California] constitutional right of privacy, to order discovery simply upon a showing that the . . . test for relevance has been met is an abuse of discretion.").

For these reasons, Plaintiff is not entitled to the production of documents in response to this Request and the other Requests for which Defendants and non-parties rightfully assert privacy objections.

- **Request No. 31.** Request No. 31 seeks all documents for a five-and-a-half year time period concerning "any formal or informal performance reviews or evaluations of the Executive Defendants [Mr. Merritt and Mr. Child], Splunk's sales and marketing personnel, and any other Splunk employee identified in Defendant's Rule 26(a)(1) disclosures." As set forth in Defendants' objections and responses and as further explained in our meet-and-confers, this Request is exceptionally overbroad, unduly burdensome, not proportional to the needs of the case, and seeks information that is irrelevant to Plaintiff's claims. The performance reviews of thousands of Splunk employees are entirely irrelevant to the subject matter of this case: Defendants' basis for and knowledge in connection with the Remaining Challenged Statements—i.e.,

# SIDLEY

Jonathan D. Uslaner
July 27, 2022
Page 13

verbal statements about *hiring, marketing investments, and layoffs* made on three occasions over a *six-month* time period. In addition, the Request interferes with the individuals' privacy rights and is contrary to the strong protections afforded personnel records under applicable law, as discussed above. Plaintiff has not established any need at all for these materials, much less a compelling need that overcomes the individuals' privacy interests. *See, e.g.*, *In re Remec, Inc. Sec. Litig.*, 2008 WL 11338378, at *4 (S.D. Cal. July 28, 2008) (quashing subpoena seeking performance reviews of former employee who was relied upon in plaintiffs' complaint in a securities class action, finding the employee's performance reviews to be irrelevant and that, even if they were relevant, her privacy rights would prevail); *Guzman v. Chipotle Mexican Grill, Inc.*, 2018 WL 3769868, at *3 (N.D. Cal. Aug. 9, 2018) (holding, even in an employment discrimination case where plaintiffs initiated the lawsuit and thus had reduced privacy interests, that "discovery of [plaintiffs'] disciplinary records, performance reviews, and termination records is . . . overbroad and disproportionate to the needs of discovery" and that plaintiffs' privacy interests outweighed defendants' arguments).

**<u>Subpoenas</u>**

We disagree with your assessment of the non-party subpoenas propounded to Carrie Palin and Susan St. Ledger. Our position remains that both subpoenas are vastly overbroad, unduly burdensome, unreasonably intrusive and violative of Ms. Palin and Ms. St. Ledger's privacy rights, seek information that is not relevant to Plaintiff's claims or proportional to the needs of the case, and seek documents that are duplicative of those in Splunk's possession. The reasons the subpoenas are improper are discussed in detail in our June 9, 2022 and June 23, 2022 letters to you, Ms. Palin's June 9, 2022 Objections and Responses, and Ms. St. Ledger's June 23, 2022 Objections and Responses.

As you know, both subpoenas contain four identical, boilerplate, exceptionally broad requests (and the subpoena to Ms. Palin includes an additional fifth request) on a wide universe of topics such as "Splunk's Financial Performance," "the allegations in the Complaint," and "the COVID-19 pandemic," including information that is completely irrelevant to this case and which, importantly, has nothing to do with either Ms. Palin's or Ms. Ledger's roles and duties at Splunk. Non-party subpoenas that are not narrowly tailored to their recipients are plainly impermissible. *E.g.*, *Khan v. Rogers*, 2018 WL 5849010, at *4 (N.D. Cal. Nov. 6, 2018) (citing cases). Your letter fails to address this fundamental deficiency.

The timing of the subpoenas served on Ms. Palin and Ms. St. Ledger underscores their impropriety. It is well-established that non-parties are afforded "special protection against the time and expense of complying with subpoenas." *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994). Yet, Plaintiff chose to begin discovery with a slew of non-party

# SIDLEY

Jonathan D. Uslaner
July 27, 2022
Page 14

subpoenas, including those on Ms. Palin and Ms. St. Ledger, before the parties even served written discovery requests and responses, applied search terms, or began custodian productions. It is premature and inappropriate for Plaintiff to launch such sweeping and intrusive non-party discovery based on nothing more than a speculative claim that Ms. Palin and Ms. St. Ledger *might* have relevant documents in their personal possession and with no valid explanation as to what Plaintiff hopes to gain that cannot be obtained through ordinary custodial productions—especially since Ms. Palin and Ms. St. Ledger are two of the custodians whose documents the Company has agreed to search in response to Plaintiff's First Request for the Production of Documents. Plaintiff makes no showing that the non-party subpoenas are "likely to yield *unique* and *material* evidence from" Ms. Palin and Ms. St. Ledger that is unavailable from the Company, as is required. *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (emphasis added) (quashing subpoena and further noting that, even if there was one or more document possessed by the third party *not* in the defendants' possession, custody, or control, it was "likely to be of marginal value" and there was no reason to expect it would convey substantially different information than that conveyed in the defendants' documents).

Moreover, the non-party subpoenas to Ms. Palin and Ms. St. Ledger are unnecessary and unproductive in any event. Ms. Palin and Ms. St. Ledger both returned their Splunk laptops upon departing the Company and no longer have access to any of their former Splunk accounts, applications, or files. Ms. Palin has conducted a reasonable search of her personal accounts (including emails and cloud accounts) and hard copy files, and has not located anything that is responsive to the subpoena. Ms. St. Ledger has similarly conducted a reasonable search of her personal accounts (including emails and cloud accounts) and hard copy files, and has not located anything that is responsive to the subpoena. Setting aside the possibility of text messages on their personal devices, Ms. St. Ledger and Ms. Palin have no responsive documents to the best of their understanding—and anything they have would be duplicative of documents in the Company's possession in any event. Ms. Palin has done some searches of her personal texts and has not located anything responsive. However, given the extreme breadth of the subpoenas, it is impossible to rule out the possibility that she or Ms. St. Ledger has personal texts that could be deemed responsive to the subpoena (e.g., regarding their departures and compensation, which are irrelevant and protected by their right to privacy in any event). It is plainly disproportionate to the needs of the case, and unduly burdensome, to demand that Ms. Palin and Ms. St. Ledger sift through all their text messages for any mention of a wide range of broad general topics, particularly at this stage of the case before the Company has made its custodial productions, given that Ms. Palin and Ms. St. Ledger's personal devices contain a wealth of unrelated, private and personal information, and given that there is no reason to believe that their texts would convey substantially different information than that found in the documents being produced by the Company.

None of the cases cited in your letter compel a different result.

# SIDLEY

Jonathan D. Uslaner
July 27, 2022
Page 15

- *Staley v. Gilead Sciences, Inc.* does not address the production of individuals' personal documents. Rather, in *Staley*, the court allowed the plaintiff to depose a former Board member of the defendant company, following extensive discovery and the production of a relevant email involving the same Board member, which was sufficient to infer his "involvement in relevant decision making." 2022 WL 789125, at *1-2 (N.D. Cal. Mar. 14, 2022). By contrast, this case does not involve a request for depositions, there has been no extensive discovery or production of documents, and there is no basis to infer that productions from Ms. Palin's and Ms. St. Ledger's personal files are necessary.

- In *Zeleny v. Brown*, the court found that a non-party subpoena on a company was permissible where the non-party company possessed "superior ability to identify its relevant custodians" and there was "uncertainty that the [defendant] has retained all of the relevant communications" due to defendant's poor record-keeping and document retention practices over many years. 2019 WL 1084177, at *3 (N.D. Cal. Mar. 7, 2019). No such circumstances exist here, and *Zeleny* acknowledged in any event that "it is normally more convenient for a party to obtain documents from other parties before subpoenaing a non-party." *Id.* (citing *Nidec*, 249 F.R.D. at 577).

- Plaintiff also misreads *In re Pacific Gateway Exchange, Inc.*, 2001 WL 1334747 (N.D. Cal. Oct. 17, 2001). There, plaintiffs' motion to open discovery arose from forensic searches of *company* servers that uncovered irregularities which risked loss of relevant data on *company-issued* computers, including such computers that may have been retained by former employees. *Id.* at *1. Again, no such circumstances exist here, and neither Ms. Palin nor Ms. St. Ledger has their Splunk-issued computer or access to any other Splunk device or application in any event.

- In *Philips North America LLC v. KPI Healthcare, Inc.* (*Philips I*), the magistrate judge allowed plaintiffs to subpoena the law firm that previously represented the defendant company in the case. 2021 WL 4775639, at *10 (C.D. Cal. July 16, 2021), *vacated and modified in part*, (*Philips II*) 2021 WL 6103526 (C.D. Cal. Sept. 1, 2021). As the district judge later explained when modifying the magistrate judge's order, that law firm had collected large amounts of underlying relevant company data from the company's server, and the court wanted to ensure that the company's server data was available to be searched and produced to plaintiffs since the company had closed its operations and defaulted in the case. *Philips II*, 2021 WL 6103526, at *1-3; *Philips I*, 2021 WL 4775639, at *1. Even then, the court ordered fee-shifting, requiring plaintiffs to pay expenses incurred by the law firm in producing the documents. *Philips II*, 2021 WL 6103526, at *5-6. Again, no remotely similar circumstances exist here.

# SIDLEY

Jonathan D. Uslaner
July 27, 2022
Page 16

- In *Khosroabadi v. Mazgani Social Services, Inc.*, the court allowed a non-party subpoena on the Social Security Administration—a U.S. government agency with robust IT capability—where plaintiff had explained that it could not obtain the sought-after information from defendants through ordinary discovery. 2018 WL 1858153, at *9-10 (C.D. Cal. Mar. 1, 2018). Of course, neither Ms. Palin nor Ms. St. Ledger has the same resources at their disposal as a U.S. government agency; nor has Lead Plaintiff shown that the information it seeks is unobtainable from their Splunk accounts or computers.

- In *Adams v. Symetra Life Insurance Co.*, the court allowed production of a "limited category of documents" from a non-party company that facilitated medical reviews by independent physicians for the defendant insurer concerning notes and files specifically related to plaintiff's physical injuries that were not in the possession of the defendant insurer. 2020 WL 6469949, at *5 (D. Ariz. Nov. 3, 2020) (denying plaintiff's motion to compel in part). Here, unlike in *Adams*, Plaintiff is not seeking a "limited category" of specific, relevant documents from Ms. Palin and Ms. St. Ledger that are not in the Company's possession but, rather, seek anything and everything that could touch upon Splunk's business. Notably, the result in *Adams* echoes the same principle in *Khan*—that non-party discovery must be narrowly tailored to the recipient; the subpoenas served on Ms. Palin and Ms. St. Ledger are anything but.

- Finally, in *William v. Morrison & Foerster LLP*, the court noted that requests that implicate parties or non-parties' privacy interests require "a specific showing of relevance." 2020 WL 1643977, at *1 (N.D. Cal. Apr. 2, 2020); *see also* cases cited *supra* pp. 11-12. Contrary to your letter's assertion, the court did not find that the existence of a protective order obviated the individuals' privacy interests. In fact, the *William* court quashed portions of the subpoena on privacy grounds despite the existence of a protective order. Here, too, the subpoenas improperly seek information that invades Ms. Palin's and Ms. St. Ledger's privacy interests—including information about their departures and compensation—and is irrelevant to the case.

Tellingly, Plaintiff cites no securities class action—or indeed, any case—where a court has upheld a broad subpoena, like the ones here, to a non-party former employee requiring them to search and produce texts and other documents from their personal files.

# SIDLEY

Jonathan D. Uslaner
July 27, 2022
Page 17

For these reasons, Ms. Palin and Ms. St. Ledger maintain their objections to Plaintiff's subpoenas.

Very truly yours,

*/s/ Nicole M. Ryan*

Nicole M. Ryan