# Exhibit C

# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

### ATTORNEYS AT LAW

NEW YORK ● CALIFORNIA ● ILLINOIS ● LOUISIANA ● DELAWARE

JONATHAN D. USLANER
jonathanu@blbglaw.com
(310) 819-3472

August 5, 2022

**Via Email**

Nicole Ryan, Esq.
SIDLEY AUSTIN LLP
555 California Street
Suite 2000
San Francisco, CA 94104

Re: *In re Splunk Inc. Securities Litigation*, 4:20-cv-08600-JST

Dear Nicole:

We write in response to your July 27, 2022, letter concerning Lead Plaintiff's First Request for the Production of Documents (the "Request(s)") and Lead Plaintiff's subpoenas to Carrie Palin and Susan St. Ledgers (the "Subpoenas"), and Defendants' responses and objections to the Requests and Subpoenas.

**Requests for Production**

Relevant Time Period

Defendants have agreed to a proposed time period of January 1, 2020, to March 2, 2021 as the generally applicable relevant time period for which Defendants will collect and produce documents, "subject to agreement on the time period for Plaintiff's responses and production in response to Defendants' requests for production (the 'agreed-upon time period')."

In the spirit of compromise, we would be agreeable to the period of January 1, 2020 to March 2, 2021 for the parties' searches, including for Lead Plaintiffs' responses to Defendants' First Set of Requests for Production of Documents ("Defendants' Requests"). The suggestion in your July 28, 2022 letter that there should be an "exception" for Lead Plaintiff's searches for documents concerning its transactions is inconsistent with the parties' compromise, and baseless. *See, e.g.*, *McGuire v. Dendreon Corp.*, 2008 WL 418122, at \*2 (W.D. Wash. Feb. 13, 2008) ("Courts have repeatedly rejected the argument that a plaintiff's post-class period transaction in a defendant company's securities are inconsistent with a claim of fraud or raise questions as to the plaintiff's adequacy and typicality."); *In re Providian Fin. Corp. Sec. Litig.*, 2004 WL 5684494,

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
August 5, 2022
Page 2

at *4-5 (N.D. Cal. Jan. 15, 2004) (finding typicality and crediting argument "that purchases subsequent to a partial or full disclosure of the alleged fraud do not render a proposed class representative atypical because once accurate disclosures are made, the true value of the stock is reflected in the market price"); *Hufnagle v. Rino Int'l Corp.*, 2011 WL 710704, at *7-8 (C.D. Cal. Feb. 14, 2011) ("Courts have ruled that purchases of stock by the class representatives after negative announcements during the class period or even after the close of the class period do not destroy typicality." (quotation marks and brackets omitted)).

We intend to address your unsupported demand for documents and information concerning Splunk transactions from 2012 through the present in more detail in a forthcoming response to your July 28 letter.

Requests on which the Parties Appear to Agree

The parties appear to have resolved disputes with respect to the following Requests:

- **Request No. 1** (organization charts). Defendants have proposed to "provide snapshots of the reporting structure for a limited number of current employees."  Lead Plaintiff will agree to Defendants' proposal and requests such snapshots for (i) each of Defendants' proposed custodians, and (ii) each Splunk employee listed in Lead Plaintiff's Initial Disclosures.  Lead Plaintiff reserves the right to request reporting line snapshots for additional individuals.

- **Request No. 5** (regarding the Challenged Statements). Defendants have proposed to produce the documents responsive to this request for the time period from January 1, 2020, to March 2, 2021. Lead Plaintiff agrees to Defendants' proposal.

- **Request No. 6** (regarding the New Logo Team). Defendants have agreed to produce the documents responsive to this Request.

- **Request No. 8** (regarding investments in marketing and sales). Defendants have proposed to produce responsive documents from the agreed-upon custodians for the agreed-upon time period. Lead Plaintiff will agree to Defendants' proposal, subject to Defendants' confirmation that they will produce (i) all responsive documents dated within the agreed-upon time period, even if those documents relate to budgets or expenditures that are outside of the agreed-upon time period, and (ii) documents that are responsive to each category set forth in Lead Plaintiff's narrowed requests, including "documents and communications concerning Splunk's investments in marketing and sales that Splunk revised, delayed, suspended, eliminated, or considered but did not complete."

- **Request No. 11** (regarding headcount and budgetary requests). Defendants have agreed to produce the documents responsive to this Request.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
August 5, 2022
Page 3

- **Request No. 12** (regarding adequacy of sales personnel). Defendants anticipate that Request Nos. 11 and 12 will be coextensive, but "for the avoidance of doubt," also have proposed to produce responsive documents "that discuss whether Splunk had enough sales personnel to meet its growth and revenue targets from agreed-upon custodians for the agreed-upon time period." Lead Plaintiff agrees to Defendants' proposal.

- **Request No. 14** (regarding all-hands meetings). Defendants have proposed to produce responsive documents concerning the all-hands meetings discussed in the Amended Complaint. Lead Plaintiff agrees to Defendants' proposal.

- **Request No. 18** (regarding the impact of COVID-19). Defendants have proposed to produce responsive documents to the extent that they relate to "the Company's financial performance, sales, marketing, hiring, or layoffs." Lead Plaintiff will agree to Defendants' proposal, subject to Defendants' confirmation that documents responsive to this Request also include those that relate to hiring freezes, the New Logo Team, and the timing and/or closing of deals in the pipeline.

- **Request No. 22** (regarding Splunk's financial performance in Q3FY21). Defendants have agreed to produce the documents responsive to this Request.

- **Request No. 27** (regarding Splunk's June 2020 debt offering). Defendants have agreed to produce the documents responsive to this Request.

Requests on which Defendants' Proposals Are Insufficient

For certain Requests, Defendants' existing proposals are insufficient, although we believe that the parties may reach compromise with certain modifications.

- **Request No. 9** (regarding Splunk's hiring plans). Defendants have proposed to produce the responsive documents for the time period from March 1, 2020, to December 31, 2020, whereas Lead Plaintiff's narrowed request proposed that Defendants produce the responsive documents for the time period beginning January 1, 2019. In the interest of compromise, Lead Plaintiff proposes a time period from August 1, 2019, to December 31, 2020.

- **Request No. 25** (regarding Splunk's stock price). Defendants have agreed to produce the responsive documents concerning Splunk's stock price and any changes thereto on May 21-22, 2020; June 8-9, 2020; September 14-15, 2020; and December 2-3, 2020 – i.e., the dates of the challenged statements and corrective disclosures. Although Lead Plaintiff's Request was proper as served, Lead Plaintiff would agree that Defendants may satisfy this Request by producing the responsive documents concerning Splunk's stock price and changes thereto on those dates as well as the dates of earnings

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
August 5, 2022
Page 4

announcements and reports during the agreed-upon time period – i.e., March 4-5, 2020; March 26-27, 2020; May 21-22, 2020; June 1-2, 2020; August 26-27, 2020; December 2-3, 2020; and March 3-4, 2021. Such documents are likely to include internal communications about actual and anticipated analyst and investor reactions to the Company's representations and disclosures made in connection with earnings announcements, including the substantive topics at issue in this case. They are thus plainly relevant to the amended complaint's allegations, including the elements of scienter, falsity, materiality, and loss causation. Please let us know whether Defendants agree to this compromise in order to resolve this Request.

- **Request No. 26** (regarding communications with analysts and investors). Defendants have agreed to produce all responsive communications with analysts from March 1, 2020, to December 31, 2020. Analysts' and investors' concerns and communications about relevant issues, Splunk's responses, and investors and analysts' understandings of Defendants' public representations, are highly relevant. Given the relevance of these communications, it is not clear why Defendants have proposed to narrow the agreed-upon time period for this Request. Nor is it clear why Defendants have limited their agreement to produce communications "regarding Splunk or its financial performance" to communications with analysts – particularly in light of the fact that Defendants agreed to produce communications with analysts **and investors** regarding the challenged statements and corrective disclosures. Lead Plaintiff would agree to accept communications with both analysts and investors for the entirety of the agreed-upon time period in order to satisfy Request No. 26. Please let us know whether Defendants agree to this compromise.

Requests on which the Parties May Be at an Impasse

Defendants have offered no meaningful compromise with respect to the following Requests, which seek relevant documents to which Lead Plaintiff is entitled. For each of these Requests, Lead Plaintiff will consider a counterproposal, but Defendants' current position as to these Requests – which, for many of them, is refusing to produce *any* responsive documents – is not reasonable. If Defendants remain unwilling to offer counterproposals on these Requests, Lead Plaintiff will have no choice but to ask the Court to intervene.

- **Request No. 2** (calendar, diary, and journal entries). Lead Plaintiff has properly requested production of calendar, diary, and journal entries for the two Executive Defendants, as well as the 14 other current and former employees identified in Defendants' Initial Disclosures. This is not a "broad swath" of individuals as you contend, but rather a limited number of highly relevant individuals (the vast majority of which Defendants themselves identified). Further, these documents are relevant to identifying relevant discussions and meetings, including those alleged in the Complaint. But Defendants have proposed to produce calendar notices only "for those

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
August 5, 2022
Page 5

topics on which Defendants agree to produce responsive documents in response to other Requests." Applying restrictive search terms and topics to collect and produce calendar entries will inevitably miss relevant information, and Defendants have made no proposal of how such determinations would be made. Please let us know any counterproposal, or confirm that we are at an impasse with regard to Request No. 2.

- **Requests Nos. 3 & 4** (regarding calls, presentations, and SEC filings). In an effort to compromise, Lead Plaintiff previously narrowed Request No. 3 and 4, both as to the time period for which Lead Plaintiff would accept documents as well as the categories of documents sought. Rather than making a counterproposal, Defendants reiterated their purported overbreadth and relevance objections that appeared in Defendants' Responses and Objections to Lead Plaintiff's Requests. Lead Plaintiff would consider a counterproposal, but will not agree to forgo discovery of these documents, as they are plainly relevant to the amended complaint's allegations that Defendants' misstatements artificially inflated the Company's stock price. Please let us know any counterproposal, or confirm that we are at an impasse with regard to Request Nos. 3-4.

- **Request No. 7** (regarding New Logos). Defendants have refused to produce documents responsive to this Request on the purported basis that "it improperly seeks documents related to all of Splunk's actual and potential sales and actual and potential customers." Even if that were the case, Request No. 7 is nevertheless proportional to the needs of this case, which concerns the Company's sales and marketing practices (and Defendants' statements about those practices) throughout the Class Period, including statements about the Company's sales and pipeline of potential sales and customers. Further, Lead Plaintiff's narrowed articulation of Request No. 7, which limits the requests to documents and communications concerning sales and revenue forecasts for New Logos, addresses Defendants' stated concern about breadth and burden. The mere fact that a Request requires Defendants to produce a high volume of documents does not mean that its burden is undue, particularly when it concerns such highly relevant issues as Request No. 7. Please let us know any counterproposal, or confirm that we are at an impasse with regard to Request No. 7.

- **Request No. 10** (regarding hiring decisions). Defendants have refused to produce documents responsive to this Request – even as narrowed in Lead Plaintiff's July 6 letter – on the purported basis that it is overbroad and unduly burdensome. As narrowed, this Request seeks "documents and communications concerning Splunk's actual or contemplated hiring decisions concerning sales and marketing personnel," including the New Logo Team. Splunk's actual and contemplated hiring decisions lie at the very heart of Lead Plaintiff's claims – Defendants falsely told their investors that they were hiring sales and marketing personnel, when in fact they had frozen hiring and were terminating sales and marketing personnel. The Court's motion-to-dismiss Order expressly discusses these allegations. Order at 19, 20 & n.5, 24. Documents

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
August 5, 2022
Page 6

concerning Defendants' actual or contemplated hiring decisions for its sales and marketing departments are thus highly relevant to the falsity of the challenged statements – all of which relate to Defendants' hiring decisions. Defendants' refusal to produce documents responsive to this Request is patently unreasonable. Please let us know any counterproposal, or confirm that we are at an impasse with regard to Request No. 10.

- **Request Nos. 15 & 20** (regarding market access and licensing model transition). Defendants have refused to produce documents responsive to these requests on the purported basis that they are irrelevant and overbroad. Defendants incorrectly contend that Lead Plaintiff's July 6 letter "merely makes the conclusory and incorrect assertion that the documents are relevant." Not so. Lead Plaintiff's July 6 letter cites to and quotes specific allegations in the amended complaint, as well as language from the Court's order on Defendants' motion to dismiss, to which these documents are relevant. *See* Compl. at ¶¶26-29; Order at 2.  Please let us know any counterproposal, or confirm that we are at an impasse with regard to Request Nos. 15 and 20.

- **Request No. 19** (regarding historical net revenues). Defendants have refused to produce documents responsive to this Request, which – as narrowed – seeks documents for a two-year time period concerning "the reasons for Splunk's historical net revenues and losses before the Class Period, and the reasons for changes in Splunk's historical net revenues and year-over-year losses." Key allegations in this litigation include Splunk's historical "cash-flow challenges" and its plans to "become cash-flow positive through revenue growth—not by a suspension of marketing investments or a freeze in hiring." ¶35; *see also* ¶¶25-38, 59-62; Order at 2. Accordingly, Defendants' relevancy objection is baseless, and Defendants should produce responsive documents.  Please let us know any counterproposal, or confirm that we are at an impasse with regard to Request No. 19.

- **Request No. 24** (regarding the "valley of death"). Defendants have refused to produce documents responsive to this Request, contending that Defendant Child's statement about the Company experiencing "the valley of death" throughout the Class Period is irrelevant. As noted above, Defendants falsely told investors that Splunk would become cash-flow positive through revenue growth, rather than by suspending marketing investments or freezing hiring. Defendant Child's statement is highly relevant to, among other elements, scienter, falsity, materiality, and materiality, including because it bears on Child's knowledge of Splunk's cash-flow issues and plans to address those cash-flow issues, as well as Child's knowledge of the veracity of Defendants' statements about those topics.  Please let us know any counterproposal, or confirm that we are at an impasse with regard to Request No. 24.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
August 5, 2022
Page 7

- **Request No. 28** (regarding capital raises). Defendants have refused to produce documents responsive to this Request – as narrowed – on the purported bases that (i) Splunk did not complete any capital raises other than the June 2020 debt offering and (ii) the Request is otherwise overbroad and irrelevant. The amended complaint alleges, among other things, that Splunk's severe cash-flow issues motivated Defendants' misstatements. Splunk's internal understanding of these cash-flow issues, their implications, and actions taken by Splunk to abate them – including capital raises – are thus plainly relevant to Lead Plaintiff's claims.  It is not clear whether, based on the language in your July 27 letter, you are representing that Splunk did not conduct or consider any other capital raises in fiscal years 2019 through 2021.  Please confirm whether you are representing that there were no other actual, potential or contemplated capital raises other than the Debt Offering, which information may facilitate resolution of Request No. 28.

- **Request No. 30** (regarding St. Ledger's, Tully's, Palin's, and Merritt's departures). Defendants have refused to produce documents responsive to this Request on the purported bases of relevance and privacy concerns. Each of these individuals (i) held senior executive roles, (ii) was involved in Splunk's sales and marketing decisions during the Class Period, and (iii) suddenly and unexpectedly departed from Splunk either during or shortly after the Class Period. Lead Plaintiff is entitled to discovery into the relationship between these individuals' unexpected departures and the events at issue in this litigation. Defendants' privacy concerns can be fully addressed through the agreed-upon protective order that the Court has entered.

- **Request No. 31** (regarding personnel files). Defendants have refused to produce documents responsive to this Request, asserting that privacy concerns supersede Lead Plaintiff's entitlement to *any* discovery into Splunk's personnel files. Lead Plaintiff already has agreed to allow redaction of sensitive personal information, which would address Defendants' purported privacy concerns. Defendants have not offered any reason why the extensive redactions to which Lead Plaintiff has agreed, and other applicable protections set forth in the agreed-upon protective order, will not address Defendants' purported privacy concerns.[1]

---

[1] The cases that Defendants cite are inapposite. In *Garedakis v. Brentwood Union School District*, the court ordered production of relevant personnel records, notwithstanding applicable privacy protections.  2016 WL 1133715, at \*3 (N.D. Cal. Mar. 23, 2016).  Similarly, in *Loop AI Labs Inc. v. Gatti*, the court rejected a party's motion to compel unredacted versions of documents, after a third party produced documents with redactions of "names and contact information of individuals unrelated to this litigation." 2016 WL 1712131, at \*2 (N.D. Cal. Apr. 29, 2016). Here, Lead Plaintiff *already has agreed* that Defendants may redact such irrelevant private information. Defendants' other cited cases fare no better.  *See James v. US Bancorp*, 2021 WL 1890787, at \*3 (C.D. Cal. May 11, 2021) (denying plaintiffs' request for "*complete* personnel records" after defendants had already agreed to produce all relevant portions); *Miller v. Fed. Express Corp.*, 186 F.R.D. 376, 384 (W.D. Tenn. 1999) (ordering defendants "to produce specific portions of their personnel files" relevant to the litigation.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Nicole Ryan
August 5, 2022
Page 8

### Third-Party Subpoenas

Defendants have represented that St. Ledger and Palin do not have any responsive documents, with the possible exception of text messages. Lead Plaintiff requests that Defendants collect these individuals' text messages and confirm whether any text messages are responsive to the respective subpoenas.

\* \* \*

Please provide your final positions on the items detailed above by August 10, 2022, so that we can promptly bring to the Court's attention any disputes that the parties are unable to resolve.

Sincerely,

*Jonathan D. Uslaner*

Jonathan D. Uslaner