# Exhibit E

**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

*Lead Counsel for Lead Plaintiff Louisiana
Sheriffs' Pension & Relief Fund and the Class*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE SPLUNK INC. SECURITIES LITIGATION | Case No. 4:20-cv-08600-JST |
| | **LEAD PLAINTIFF'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS** |
| | Judge: Hon. Jon S. Tigar<br>Courtroom: 6 |

Lead Plaintiff Louisiana Sheriffs' Pension & Relief Fund ("Lead Plaintiff"), by and through its undersigned counsel, hereby propounds Lead Plaintiff's First Request for the Production of Documents ("Request(s)") directed to Defendants Splunk Inc., Douglas Merritt, and Jason Child (collectively, "Defendants") in accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of this Court. Lead Plaintiff requests that Defendants produce the Documents described below for inspection and copying at the offices of Bernstein Litowitz Berger & Grossmann LLP, 2121 Avenue of the Stars, Suite 2575, Los Angeles, CA 90067 within the time period mandated by the Rules or at such other time and place as the parties mutually agree.

## DEFINITIONS

The following definitions apply to each Request set forth herein and are deemed to be incorporated in each Request.

1.    "Company" or "Splunk" means Splunk Inc. and all of its predecessors, successors, subsidiaries, departments, divisions, operating segments, partnerships, joint ventures and/or affiliates, jointly and independently. This term shall include all present and former directors, officers, trustees, employees, attorneys, agents, managers, representatives, or any Person(s) acting or purporting to act on behalf of the Company or any organization or entity the Company manages or controls.

2.    "Action" means the above-captioned class action pending in the U.S. District Court for the Northern District of California styled: *In re Splunk Inc. Securities Litigation*, No. 4:20-cv-08600-JST.

3.    "All-Hands Meetings" means all internal company-wide Splunk meetings, including those meetings described, whether formally or informally, as "all-hands" that occurred between March 2020 and December 2, 2020.

4.    "Answer" means Defendants' answer to the Complaint (defined below), which is due to be filed no later than May 13, 2022. *See* ECF No. 80.

5.    "Capital Raise(s)" means any capital or money that Splunk obtained from investors, whether through debt financing, equity financing, or any other issuance or transfer of a stake or interest in the Company in exchange for funds.

6.      "Challenged Statements" means the statements that Lead Plaintiff challenges as including false or misleading misrepresentations or omissions, which are identified in paragraphs 110-118 of the Complaint (defined below).

7.      "Class Period" means May 21, 2020, through December 2, 2020, inclusive.

8.      "Communication(s)" is used in a comprehensive sense, and means and includes any conceivable manner or means of disclosure, transfer, transmittal, or exchange of oral, written, electronic, or other information, in the form of facts, ideas, inquiries, or otherwise, between or among one or more persons or entities, and include all documents, writings, correspondence, memoranda, messages, meetings, conversations, discussions, conferences, agreements, e-mails, notes, or other transmittal of information, whether face-to-face, by telephone, by mail, by facsimile, by computer, or otherwise, and further include all forms of electronic communications, including text messages and any form of instant messages.

9.      "Compensation" means any payment made by the Company to any employee, officer, director, contractor, or agent of the Company, whether in the form of cash; incentives; equity, options, or other securities or financial instruments; profit sharing; bonuses; commissions; benefits in kind; or in any other form that is taxable as income under the Internal Revenue Code or that reasonably could be expected to have pecuniary value to the recipient.

10.      "Complaint" means the Consolidated Class Action Complaint for Violations of Federal Securities Laws filed in the Action on June 7, 2021.  ECF No. 65.

11.      "Concerning" means relating to, referring to, regarding, in connection with, pertaining to, describing, reflecting, discussing, analyzing, summarizing, evidencing, embodying, or constituting.

12.      "Debt Offering" means the offering of convertible debt that Splunk announced on or about June 1, 2020.

13.      "Defendant(s)" refers to Splunk, Douglas Merritt, and Jason Child.

14.      "Document(s)" shall have the same meaning and be equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A).  For the avoidance of any doubt, Documents includes Communications.  A draft or non-

identical copy is a separate Document within the meaning of this term.  The term "Document" includes any and all forms of recorded information, whether handwritten, printed, typed, or otherwise visually reproduced, electronically recorded or orally recorded, including all originals, revisions, and markups of drafts, and all files, documents, databases, e-mails, ESI, and other data maintained in computer-readable form.  The term "Document" specifically includes working papers; minutes and records of meetings; letters; facsimile transmissions; telegrams; telephone bills and records; cables; records; books; summaries or records of personal conversations or interviews; legal pleadings; affidavits; deposition transcripts; trial transcripts; forecasts; statistical statements; accountants' work papers; brochures; pamphlets; circulars; press releases; agreements; contracts; telephone messages, slips, and logs; diary entries; journal entries; electronic mail and messages of any kind; calendars; reports; evaluations; assessments; analyses; test results; correspondence; memoranda; notes; video recordings of any kind; audio recordings of any kind; electronic recordings of any kind; drawings; graphics; graphs; maps; diagrams; charts; photographs; tables; indices; recordings; tapes; microfilms; reports of investigations; opinions or reports of consultants; data processing and computer printouts, tapes, disks, and data and information stored in computers or data processing equipment, together with programs and program documentation necessary to utilize or retrieve such data or information; all other mechanical or electronic means of storing or recording data or information; and any other data compilation from which information can be obtained and translated through detection devices into a reasonably usable form.

15.    "Electronically stored information" or "ESI" has the same meaning and is equal in scope to the usage of the term in the Sedona Conference Definitions, and includes the following:

(a)    All items covered by Federal Rule of Civil Procedure 34(a)(1)(A);

(b)    Information or data that is generated, received, processed, and recorded by computers or other electronic devices, including metadata;

(c)    Internal or external websites;

(d)   Output resulting from the use of any software program, including any word-processing documents, spreadsheets, database files, charts, graphs, outlines, electronic mail, AOL or Bloomberg Instant Messenger (or similar programs), bulletin-boards programs, operating systems, source codes, PDF files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, deleted file, or file fragment; and

(e)   All items stored on Electronic Media.

16.   "Electronic Media" means any magnetic or other storage media device used to record ESI.

17.   "Executive Defendant(s)" means Douglas Merritt and Jason Child.

18.   "Financial Performance" means performance metrics or indicators used to assess, evaluate, or review the financial health or performance of the Company, including Splunk's sales, customer retention, revenues (including annual recurring revenue), cash flow, direct and indirect operating cash flow, gross and net profit margins, leverage, working capital, return on equity, return on assets, liquidity (e.g., current ratio, quick ratio), and solvency (e.g., debt-to-equity ratio).

19.   "New Logos" means all actual or potential sources of new business and pipeline generation.

20.   "New Logos Team" means any formal or informal groups, teams, or divisions of Splunk employees or contractors responsible for identifying, attracting, or generating actual or potential sources of new business and pipeline.

21.   "Organizational Structure" means the Company's leadership structure; reporting lines; and officers, directors, and senior management.

22.   "Person(s)" means any natural person(s), corporation, partnership, or other association of individuals.

23.   "Q&As" means any actual, anticipated, contemplated, or expected question(s) and any actual, anticipated, contemplated, drafted, or planned response(s) to such question(s).

24.    "Rule 26(a)(1) Disclosures" means the Initial Disclosures made (or due to be made) pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.

25.    "Say-on-Pay" means any disclosure or shareholder vote Concerning executive compensation mandated by Section 951 of the Dodd-Frank Wall Street Reform and Consumer Protection Act and any SEC rules or regulations promulgated thereunder. *See* 15 U.S.C. § 78n-1; 17 C.F.R. pts. 229, 240 & 249.

26.    "SEC" means the United States Securities and Exchange Commission.

27.    "Sedona Conference Definitions" means *The Sedona Conference Glossary: eDiscovery & Digital Information Management, Fifth Edition*, 21 SEDONA CONF. J. 263 (2020).

28.    "Third Quarter" means the third quarter of a given fiscal year as determined by Splunk's fiscal calendar.

29.    "Withdrawn Guidance" means the financial guidance that Splunk issued publicly during its Third Quarter 2020 Earnings Call on November 21, 2019, including the guidance that Splunk would become cash-flow positive from operations by fiscal year 2022 (i.e., the year ending January 31, 2022), and would approach $1 billion in positive operating cash flow in fiscal year 2023 (i.e., the year ending January 31, 2023).

30.    "You" and "Your" mean Defendants and Defendants', respectively.

**INSTRUCTIONS**

1.    You are requested to produce all Documents and Communications responsive to these Requests that are in Your custody, possession, or control.  This duty is not limited or affected in any way by the fact that the same Document or Communication is available through another source.

2.    If any Document or Communication is known to exist but cannot be produced, You are instructed to identify such Document or Communication as precisely and thoroughly as possible, and to state the reasons for Your inability to produce it.

3.    For any Document or Communication You withhold on a claim of privilege, You are requested to provide a statement signed by Your attorney setting forth as to each such Document or Communication the following information:

(a)    The name(s) of its author(s), if different from the sender (for example, a forwarded Document or Communication);

(b)    The name(s) of its sender(s);

(c)    The name(s) of its recipient(s), including on the To, CC, and BCC line;

(d)    Identification of whether each individual identified in (a), (b), and (c) above is a lawyer; whether they are a Splunk employee, officer, or director; and if applicable, the individual's title within the Company;

(e)    The Document's or Communication's date;

(f)    A brief description of the nature and subject matter of the Document or Communication, including the subject line of an email; and

(g)    The claimed privilege's nature or authority supporting the claimed privilege, including, if applicable, the state privilege rule being invoked.

4.    Whenever a Document or Communication is not produced in full or is produced in redacted form, so indicate on the Document or Communication and state with particularity the reason or reasons it is not being produced in full, and describe to the best of Your knowledge, information, and belief, and with as much particularity as possible, those portions of the Document or Communication that are not being produced.

5.    If a Document or Communication responsive to these Requests was at any time in Your possession, custody, or control but is no longer available for production, as to each such Document or Communication state the following information:

(a)    Whether it is missing or lost;

(b)    Whether it has been destroyed;

(c)    Whether it has been transferred or delivered to another Person(s) and if so, to whom and at whose request;

(d)  Whether it has been otherwise disposed of; and

(e)  A precise, detailed statement of the circumstances surrounding the disposition of the Document or Communication and the date of its disposition.

6.  The fact that a Document or Communication is produced by another party does not relieve You of the obligation to produce Your copy of the same Document or Communication, even if it is identical in all respects.

7.  All Requests include a request for any and all drafts of the Documents and Communications requested (whether or not such drafts are in redlined, handwritten, or any other form or format, and regardless of whether or not the draft ever reached a final form).

8.  All Requests include a request for any and all responsive Documents and Communications on Your shared drives or databases, including shared drives or databases to which any Defendant had or has access.

9.  Unless otherwise stated herein, responses to these Requests, including ESI, shall be produced in accordance with the ESI Protocol to be agreed upon by the Parties.  To the extent possible, the metadata values that are to be extracted and produced in the database load files (.DAT file using concordance standard delimiters) shall include the following: ProdBeg; ProdEnd; BegAttach; EndAttach; Custodian; All Custodians; DocumentType; FileName; DocExt; File Size; NativeFilePath; TextFilePath; EmailSubject; To; From; CC; BCC; Attachment Count; Date/Time Sent; Date/Time Rcvd; ParentDate; Date/Time Created; Title; Subject; Author; Date/Time Last Mod; File Last Saved By; File Last Edited By; MD5Hash; PgCount; Hidden Data; Email Importance; Email Conversation Index / Thread Text; Timezone Processed; Date/Time Appointment Start; Date/Time Appointment End; File Application; and Confidentiality Designation.

10.  Documents or Communications not otherwise responsive to these Requests must be produced if they mention, discuss, refer to, or explain the Documents or Communications that are called for by these Requests, or if  they are attached to or were sent with Documents or Communications called for by these Requests (including routing slips, transmittal memoranda, letters, comments, evaluations or attached electronic or hardcopy materials).

11. In interpreting and responding to the Requests, including the Instructions and Definitions sections, and in searching for and producing Documents and Communications, the following rules of construction apply:

(a) the use of a verb in any tense is construed as the use of the verb in all other tenses, so as to bring within the scope of the Request all responses that might otherwise be construed to be outside its scope;

(b) the use of the word in its singular form is deemed to include within its use the plural form as well, and vice versa, so as to bring within the scope of the Request all responses that might otherwise be construed to be outside its scope;

(c) the use of the words "each" or "all" includes "any," "some," "each," or "all," so as to bring within the scope of the Request all responses that might otherwise be construed to be outside its scope;

(d) the connectives "and" and "or" are to be construed broadly, whether conjunctively or disjunctively, so as to bring within the scope of the Request all responses that might otherwise be construed to be outside its scope; and

(e) the terms "including," "include," and "includes" mean including without limitation, so as to bring within the scope of the Request all responses that might otherwise be construed to be outside its scope.

12. The Requests are continual and require supplemental responses if You or any Person(s) acting on Your behalf obtain(s) additional information called for by the Requests between the time of the original response and the time set for trial. Each supplemental response shall be served on Lead Plaintiff immediately after the discovery of such information.

**RELEVANT TIME PERIOD**

Unless otherwise stated in a Request, all Documents and Communications requested below are for the period from November 1, 2019, through the present (the "Relevant Time Period"), and shall include all Documents and Communications Concerning, in whole or in part, such period, even if created, dated, prepared, received, or sent before or after such period.  If a Document or Communication is not dated and the date of its preparation cannot be determined, it shall be produced if it is otherwise responsive to these Requests.

**SPECIFIC REQUESTS**

**DOCUMENT REQUEST NO. 1:**

Documents sufficient to show Splunk's Organizational Structure and any changes thereto, including organizational charts showing reporting lines to the Executive Defendants and for all personnel with job responsibilities or roles Concerning Splunk's (i) marketing; (ii) sales; (iii) New Logo Team; and (iv) human resources.

**DOCUMENT REQUEST NO. 2:**

The calendar, diary, and journal entries for each of the Executive Defendants and all other current or former Splunk employees, officers, and directors identified in Defendants' Rule 26(a)(1) Disclosures.

**DOCUMENT REQUEST NO. 3:**

All Documents and Communications Concerning Splunk's quarterly and annual investor earnings calls, investor presentations, periodic SEC filings, Forms 8-K, and press releases.

**DOCUMENT REQUEST NO. 4:**

All Documents and Communications Concerning the Executive Defendants' preparation for or participation in Splunk's quarterly and annual investor earnings calls, including the preparation, drafting, review, discussion, or approval of scripts, talking points, and Q&As.

**DOCUMENT REQUEST NO. 5:**

All Documents and Communications Concerning the Challenged Statements, including (i) any scripts, talking points, Q&As, and Communications with analysts, investors, the media, the

public, or the SEC Concerning the Challenged Statements; and (ii) any information supporting, underlying, undermining, or contradicting the Challenged Statements.

**DOCUMENT REQUEST NO. 6:**

All Documents and Communications Concerning the New Logo Team, including (i) the purpose, plans, expectations, objectives, and goals for the New Logo Team or its members; (ii) the members of the New Logo Team; (iii) the sales quotas or any other performance metrics for the New Logo Team or its members; (iv) the results or accomplishments of the New Logo Team or its members; and (vi) the actual or potential termination or elimination of the New Logo Team or any of its members and any actual, contemplated, or stated reasons for such termination or elimination.

**DOCUMENT REQUEST NO. 7:**

All Documents and Communications Concerning New Logos, including Splunk's actual, contemplated, expected, forecasted, or projected sales or revenues directly or indirectly attributed to any actual or potential New Logos.

**DOCUMENT REQUEST NO. 8:**

All Documents and Communications Concerning Splunk's actual or potential investments in and budgets for marketing and sales for fiscal years 2019 forward, including (i) any investments in marketing or sales that Splunk completed, did not complete, revised, planned, considered, or contemplated; (ii) any changes to, reductions in, delay of, suspension of, or elimination of such investments or budgets; (iii) agendas, minutes, notes, or talking points for any meetings at which Splunk employees, officers, or directors discussed such actual or potential investments or budgets; (iv) the Executive Defendants' knowledge of, role in, or participation in any aspect of such actual or potential investments or budgets; and (v) any factors, forecasts, or other analyses Concerning the impact of such actual or potential investments or changes in such investments or budgets on the Company's Financial Performance.

**DOCUMENT REQUEST NO. 9:**

All Documents and Communications from January 1, 2017, through the present Concerning Splunk's hiring plans, goals, forecasts, patterns, or trends, including any changes thereto.

**DOCUMENT REQUEST NO. 10:**

All Documents and Communications Concerning Splunk's actual or contemplated hiring decisions, including (i) Splunk's actual or contemplated hiring of new or additional personnel; (ii) Splunk's actual or contemplated freezing of, suspension of, reduction in, cessation of, delay in, or decision not to conduct any or all hiring of new or additional personnel; (iii) Splunk's actual or contemplated layoffs, terminations, workforce reductions, or departures of Splunk employees or personnel; (iv) any positions that Splunk created or considered creating and did not fill or delayed filling; and (v) any offers of employment that Splunk formally or informally extended and then rescinded, postponed, suspended, or withdrew.

**DOCUMENT REQUEST NO. 11:**

All Documents and Communications Concerning any headcount or budgetary requests made by any Splunk sales or marketing personnel or by any member of the New Logo Team, including (i) any response or action taken by the Company in response to such requests; or (ii) the actual, expected, forecasted, or projected impact on the Company's Financial Performance of granting or denying such requests.

**DOCUMENT REQUEST NO. 12:**

All Documents and Communications Concerning any actual or perceived inadequacy, limitations, areas for improvement, shortcomings, or weaknesses of Splunk's sales personnel, including (i) any need, requests, or proposals for new or additional sales personnel; (ii) any territories, regions, states, or other geographic area that needed or would benefit from additional sales personnel; and (iii) any actual or stated impact of such sales coverage on Splunk's Financial Performance.

**DOCUMENT REQUEST NO. 13:**

All Documents and Communications Concerning the December 3, 2020, KeyBanc Capital Markets investor conference and Defendant Child's statements during the conference, including Defendant Child's statements that Splunk (i) "suspended investments in marketing"; (ii) "froze hiring"; and (iii) had "a tighter pipeline going into Q3 [Third Quarter]" because of "the fact it usually takes a quarter or two to build your pipeline, especially for a company of [Splunk's] size."

**DOCUMENT REQUEST NO. 14:**

All Documents and Communications Concerning the All-Hands Meetings or any other internal Splunk meetings or calls during which Splunk's sales, marketing, New Logo Team, or New Logos were discussed, including (i) lists of the attendees and invitees for such meetings; (ii) any audio or video recordings of such meetings; (iii) any agendas, notes, talking points, or scripts Concerning such meetings; and (iv) any questions or other Communications from any Splunk employee Concerning the All-Hands Meetings, whether received before, during, or after such meeting.

**DOCUMENT REQUEST NO. 15:**

All Documents and Communications from January 1, 2018, through the present Concerning Splunk's potential market access, market share, or the total addressable market ("TAM") for Splunk's products, including any analyses, commentary, discussions, forecasts, information, or projections Concerning (i) the importance of marketing, branding, sales personnel, and New Logos to Splunk's ability to grow its market share; (ii) whether, how, and to what extent any such investment in sales and marketing could increase Splunk's access to and share of the market; and (iii) Splunk's market visibility or brand recognition, including Splunk's statements and findings that "the world doesn't know about [Splunk] yet," "doesn't know what Splunk does," and that Splunk's brand recognition was "low for a company [of its] size."

**DOCUMENT REQUEST NO. 16:**

All Documents and Communications Concerning sales and the pipeline for Splunk's products, including the quality, certainty, significance, size, and details of any actual, expected, forecasted, or projected deals, sales, or customer accounts.

**DOCUMENT REQUEST NO. 17:**

All Documents and Communications Concerning the deals or sales that You anticipated would be completed during the Third Quarter of 2020 that were not completed in the Third Quarter of 2020, including the actual or potential reasons why such deals were not completed in the Third Quarter of 2020.

**DOCUMENT REQUEST NO. 18:**

All Documents and Communications Concerning any actual, expected, potential, projected, or modeled impact on Splunk's Financial Performance and operations, whether positive or negative, caused by, associated with, or attributed to the COVID-19 pandemic, including (i) any delays in, cancellations of, or changes to any actual or contemplated deals with new or existing customers; (ii) any actual or contemplated employment decisions Concerning Splunk's personnel, including hiring, firing, reductions in workforce, layoffs, or hiring freezes; (iii) any actual or contemplated cutbacks or reductions in expenditures; (iv) actions contemplated or taken in response to the COVID-19 pandemic; (v) any actual or perceived increase in demand for Splunk's software; and (vi) the impact of the COVID-19 pandemic, or any action contemplated or taken in response thereto, on Splunk's Financial Performance and operations.

**DOCUMENT REQUEST NO. 19:**

All Documents and Communications from January 1, 2019, through the present Concerning Splunk's historical net revenues and losses, including the reasons for those historical financial results and their impact on Splunk's Financial Performance and operations.

**DOCUMENT REQUEST NO. 20:**

All Documents and Communications from January 1, 2018, through the present Concerning any decline or change in Splunk's Financial Performance following its transition from a "perpetual licensing" model to a "term licensing" model, including any actual, contemplated, or stated relationship between such change and the Company's ability to become cash-flow positive.

**DOCUMENT REQUEST NO. 21:**

All Documents and Communications Concerning the Withdrawn Guidance, including (i) assumptions, goals, plans, models, or projections Concerning, supporting, underlying, or undermining the Withdrawn Guidance; (ii) the decision to withdraw the Withdrawn Guidance, as announced on December 2, 2020; (iii) the actual or stated reasons for the decision to withdraw the Withdrawn Guidance; (iv) any changes in the information or assumptions that preceded or contributed to the decision to withdraw the Withdrawn Guidance; and (v) the actual, perceived,

contemplated, or potential importance to Splunk's investors of the Withdrawn Guidance and the decision to withdraw the Withdrawn Guidance.

**DOCUMENT REQUEST NO. 22:**

All Documents and Communications Concerning Splunk's Financial Performance for the Third Quarter of 2020, including the actual, potential, contemplated, or stated reasons for such Financial Performance.

**DOCUMENT REQUEST NO. 23:**

All Documents and Communications Concerning Splunk's statements that the "tougher budgetary environment" and "election" impacted the Company's pipeline going into the Third Quarter of 2020, including any information or assumptions supporting, undermining, or underlying such statements.

**DOCUMENT REQUEST NO. 24:**

All Documents and Communications Concerning Defendant Child's statement that Splunk was in "the valley of death" (*see* ¶¶ 12, 101 of the Complaint), including any scripts; talking points; Q&As; internal Communications (i.e., with Splunk employees, officers, or directors); and Communications with analysts, investors, the media, the public, or the SEC Concerning such statement.

**DOCUMENT REQUEST NO. 25:**

All Documents and Communications Concerning Splunk's stock price and changes to its stock price during the Class Period and on December 3, 2020, including any actual, contemplated, perceived, or stated reasons for the changes in Splunk's stock price.

**DOCUMENT REQUEST NO. 26:**

All Documents and Communications Concerning Splunk's Communications with securities analysts and investors, including all analyst and investor calls and conferences, and all analyst reports or analyst commentary about the Company or its Financial Performance.

**DOCUMENT REQUEST NO. 27:**

All Documents and Communications Concerning the Debt Offering, including (i) any actual, contemplated, or stated reasons or need for the Debt Offering; (ii) the upsizing of the Debt Offering;

(iii) Communications with any underwriters or investors who participated or considered participating in the Debt Offering; (iv) any actual, contemplated, or stated financial benchmarks, targets, or criteria required for Splunk to complete the Debt Offering; and (v) actual, potential, or contemplated uses for the proceeds of the Debt Offering.

**DOCUMENT REQUEST NO. 28:**

All Documents and Communications Concerning any actual, contemplated, potential, or proposed Capital Raises, including (i) any actual, contemplated, or stated reasons or need for any such Capital Raise; (ii) the actual, contemplated, potential, or proposed details of any such Capital Raise, including the amount of such Capital Raise; (iii) the actual, contemplated, potential, or proposed use(s) of proceeds from any such Capital Raise; and (iv) the actual, contemplated, or stated reasons for deciding to conduct, or against conducting, any such Capital Raise.

**DOCUMENT REQUEST NO. 29:**

All Documents and Communications Concerning actual or potential Compensation for the Executive Defendants, Christian Smith, Carrie Palin, Susan St. Ledger, and John Sabino, including (i) the structure of such Compensation; (ii) the process by which Splunk or its board of directors determined such Compensation; (iii) any factor considered in determining such Compensation; (iv) any relationship between such Compensation and Splunk's Financial Performance or stock price; (v) any actual, contemplated, or proposed change to such Compensation; and (vi) any conditional or unconditional provision for the payment of such Compensation upon or after their departure from the Company.

**DOCUMENT REQUEST NO. 30:**

All Documents and Communications Concerning Defendant Merritt's, Susan St. Ledger's, Tim Tully's, and Carrie Palin's departures from Splunk, including (i) the actual, contemplated, or stated reasons for their departure; (ii) the terms of their departure; (iii) all Compensation paid, to be paid, forgone, or reduced in connection with their departure; (iv) whether their departure was voluntary; (v) all Communications Concerning their departure or any reasons for their departure; (vi) all contracts or agreements entered into Concerning their departure; and (vii) all decisions by

Splunk to hire or promote personnel to replace any of those individuals or any aspect of the job functions they performed.

**DOCUMENT REQUEST NO. 31:**

All Documents and Communications from January 1, 2017, through the present Concerning any formal or informal performance reviews or evaluations of the Executive Defendants, Splunk's sales and marketing personnel, and any other Splunk employee identified in Defendant's Rule 26(a)(1) Disclosures, including any Documents or Communications Concerning those individuals' credibility or lack thereof; work performance; productivity; or violations of any Splunk policy, procedure, or code of conduct.

**DOCUMENT REQUEST NO. 32:**

All Documents and Communications Concerning any stockholder Say-on-Pay proposal or vote, including any draft or finalized (i) proxy materials and any other informational materials provided to Splunk stockholders in connection with any such proposal or vote; (ii) transcripts or recordings of any meeting(s) held in connection with any such proposal or vote; (iii) notes or minutes in any form from any meeting(s) held in connection with any such proposal or vote; (iv) board-level documents Concerning any such proposal or vote; and (v) Communication received by the Company from any Splunk stockholder, the press, or any other member of the public in response to any Documents and Communications that are responsive to this Request.

**DOCUMENT REQUEST NO. 33:**

All Documents and Communications Concerning the Executive Defendants' transactions in Splunk stock, Splunk stock options, or other Splunk securities.

**DOCUMENT REQUEST NO. 34:**

All Documents and Communications Concerning any affirmative defense set forth in Your Answer.

**DOCUMENT REQUEST NO. 35:**

All Documents and Communications You have relied on or intend to rely on in this Action, including all Documents You plan to use as deposition or trial exhibits.

**DOCUMENT REQUEST NO. 36:**

Documents sufficient to show Your polices Concerning the retention, preservation, and destruction of Documents.

**DOCUMENT REQUEST NO. 37:**

All insurance policies under which any insurance business may be liable to satisfy all or part of a possible judgment in this Action or to indemnify or reimburse for payments made to satisfy any such judgment.

DATED:  April 25, 2022

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ *Jonathan D. Uslaner*
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
Caitlin Bozman (*pro hac vice* forthcoming)
caitlin.bozman@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, California  90067
Tel: (310) 819-3470
-*and*-
John Rizio-Hamilton (admitted *pro hac vice*)
johnr@blbglaw.com
Adam D. Hollander (*pro hac vice* forthcoming)
adam.hollander@blbglaw.com
1251 Avenue of the Americas
New York, New York  10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*Attorneys for Lead Plaintiff Louisiana Sheriffs' Pension & Relief Fund and Lead Counsel for the Class*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
Robert D. Klausner (*pro hac vice* forthcoming)
bob@robertdklausner.com
7080 NW 4th Street
Plantation, Florida 33317
(954) 916-1202

(954) 916-1232 (fax)

*Additional Counsel for Louisiana Sheriffs'*
*Pension & Relief Fund*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2022, the foregoing document was served on counsel for Defendants in the above-captioned action.

Executed on April 25, 2022, at Los Angeles, California.


*/s/ Jonathan D. Uslaner*
JONATHAN D. USLANER