UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE SPLUNK INC. SECURITIES LITIGATION

Case No. 20-cv-08600-JST (AGT)

**DISCOVERY ORDER**

Re: Dkt. No. 99

This order addresses a dispute over six of plaintiff's RFPs and over the scope of two non-party subpoenas. For context, plaintiff's allegations are briefly reviewed first.

\* \* \*

Plaintiff alleges that Splunk's CEO (Douglas Merritt) and CFO (Jason Child) made misleading statements about the company's sales and marketing efforts, in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Plaintiff seeks to represent a class of all persons who purchased Splunk common stock between March 26, 2020, and December 2, 2020.

Judge Tigar granted in part defendants' motion to dismiss. *See* Dkt. 77. After that order, only statements made by Merritt and Child on three occasions in 2020 are at issue. On those occasions, Merritt and Child indicated that Splunk was continuing to invest in sales and marketing, to hit growth targets. *See* Compl. ¶¶ 110–18. Splunk, however, had actually suspended marketing investments, stopped hiring sales staff, and terminated its "new logo" unit. *Id.* ¶ 102.

Investors believed that Splunk needed to regularly invest in sales and marketing to be successful. *See id.* ¶ 1. So, when investors learned about Splunk's cutbacks, on December 3, 2020, some of them sold their stock, and Splunk's stock price fell by 23 percent. *See id.* ¶ 136.

## I. DISPUTED REQUESTS FOR PRODUCTION

Six of plaintiff's RFPs are in dispute. Each is considered in turn.

> **Request No. 15.** All Documents and Communications from January 1, 2018, through the present Concerning Splunk's potential market access, market share, or the total addressable market ("TAM") for Splunk's products, including any analyses, commentary, discussions, forecasts, information, or projections Concerning (i) the importance of marketing, branding, sales personnel, and New Logos to Splunk's ability to grow its market share; (ii) whether, how, and to what extent any such investment in sales and marketing could increase Splunk's access to and share of the market; and (iii) Splunk's market visibility or brand recognition, including Splunk's statements and findings that "the world doesn't know about [Splunk] yet," "doesn't know what Splunk does," and that Splunk's brand recognition was "low for a company [of its] size."

Dkt. 99-5 at 14 (alterations in original).

Defendants argue that RFP 15 is overbroad, and the Court agrees. The class period extends only from March 26, 2020, to December 2, 2020, yet RFP 15 seeks documents dating back to January 1, 2018, and through the present. Some documents outside the class period could be relevant, but plaintiff hasn't explained why a nearly five-year range is appropriate for this request.

The request is also overbroad because it seeks all documents concerning "Splunk's potential market access, market share, or the total addressable market ("TAM") for Splunk's products." Plaintiff's claims center on statements that Splunk's CEO and CFO made about Splunk's sales and marketing investments, not about Splunk's potential market access, market share, or TAM. Plaintiff hasn't explained how documents addressing the latter subjects but not the former are relevant.

With these exceptions, RFP 15 seeks relevant information. The remainder of the request seeks:

> any analyses, commentary, discussions, forecasts, information, or projections Concerning (i) the importance of marketing, branding, sales personnel, and New Logos to Splunk's ability to grow its market share; (ii) whether, how, and to what extent any such investment in sales and marketing could increase Splunk's access to and share of the market; and (iii) Splunk's market visibility or brand recognition, including Splunk's statements and findings that "the world doesn't know about [Splunk] yet," "doesn't know what Splunk does," and that Splunk's brand recognition was "low for a company [of its] size."

Dkt. 99-5 at 14 (alterations in original).

The three enumerated topics focus on Splunk's sales and marketing efforts, which are relevant. Defendants haven't suggested otherwise, nor have defendants established that responding to these topics would be too burdensome. Defendants must respond to the above portion of RFP 15, but need only produce documents and communications generated during the class period.

> **Request No. 19.** All Documents and Communications from January 1, 2019, through the present Concerning Splunk's historical net revenues and losses, including the reasons for those historical financial results and their impact on Splunk's Financial Performance and operations.

Dkt. 99-5 at 15.

This request is overbroad, as defendants argue. Some of Splunk's "historical financial results" may be relevant: Splunk's historical results may provide context for understanding why sales and marketing investments were critical to the company's success. But RFP 19 goes too far. The request is worded too broadly, such that almost any document touching on Splunk's historical revenues or losses (e.g., an individual purchase order or an expense report) would be responsive. Plaintiff may attempt to reformulate this request, but as written defendants need not respond.

> **Request No. 20.** All Documents and Communications from January 1, 2018, through the present Concerning any decline or change in Splunk's Financial Performance following its transition from a "perpetual licensing" model to a "term licensing" model, including any actual, contemplated, or stated relationship between such change and the Company's ability to become cash-flow positive.

Dkt. 99-5 at 15.

Plaintiff hasn't explained how this request is relevant. The case is about Splunk's sales and marketing investments and Splunk's statements about those investments. Splunk's transition from a "perpetual licensing" model to a "term licensing" model isn't at issue. To the extent that there's a connection between Splunk's licensing-model transition and its sales and marketing investments, plaintiff hasn't clearly identified it. Defendants need not respond to RFP 20.

> **Request No. 24.** All Documents and Communications Concerning Defendant Child's statement that Splunk was in "the valley of death" (*see* ¶¶ 12, 101 of the Complaint), including any scripts; talking points; Q&As; internal Communications (i.e., with Splunk employees, officers, or directors); and Communications with

analysts, investors, the media, the public, or the SEC Concerning such statement.

Dkt. 99-5 at 16.

After the class period, defendant Child admitted that during the class period, Splunk was in "the valley of death," with "negative revenue, negative margin, negative cash flow." Compl. ¶¶ 12, 101 (emphasis omitted). Plaintiff reasonably asserts that Child's "valley of death" statement is relevant to "Splunk's Class Period financial condition, Child's scienter concerning what he knew or should have known during the Class Period, and his motive to artificially inflate Splunk's stock price." Dkt. 99-2.

Defendants suggest that RFP 24 is unnecessary because "there is no dispute that Splunk had negative revenue, negative margin, and negative cash flow in 2020." Dkt. 99 at 4. But even if there's no dispute about Splunk's class-period financial results, what Child knew about those results, and by when, is relevant to scienter. Defendants haven't established that it would be too burdensome for them to respond to RFP 24. They must do so.

> **Request No. 30.** All Documents and Communications Concerning Defendant Merritt's, Susan St. Ledger's, Tim Tully's, and Carrie Palin's departures from Splunk, including (i) the actual, contemplated, or stated reasons for their departure; (ii) the terms of their departure; (iii) all Compensation paid, to be paid, forgone, or reduced in connection with their departure; (iv) whether their departure was voluntary; (v) all Communications Concerning their departure or any reasons for their departure; (vi) all contracts or agreements entered into Concerning their departure; and (vii) all decisions by Splunk to hire or promote personnel to replace any of those individuals or any aspect of the job functions they performed.

Dkt. 99-5 at 17–18.

Defendant Merritt was Splunk's CEO. Susan St. Ledger was Splunk's President of Worldwide Field Operations, a position plaintiff equates with the "head of sales." Dkt. 99 at 2. Tim Tully was Splunk's CTO. Carrie Palin was Splunk's Chief Marketing Officer.

As alleged, St. Ledger, Tully, and Palin "abruptly resigned without replacement" during or within six months after the class period, Compl. ¶ 100, and Merritt resigned eleven months after the class period, in November 2021, *see* Dkt. 99 at 3.

St. Ledger's and Palin's resignations are relevant. St. Ledger and Palin oversaw Splunk's sales and marketing efforts, and it's conceivable, given the timing of their departures, that they left

4

because of the company's sales and marketing cutbacks. Plaintiff reasonably seeks to learn more about why St. Ledger and Palin left Splunk, and on what terms. The parties' stipulated protective order (dkt. 96) will properly balance St. Ledger's and Palin's privacy interests against plaintiff's need for this discovery.

As for Merritt and Tully, plaintiff hasn't persuasively explained why their resignations are relevant. Tully was Splunk's CTO; he wasn't responsible for sales and marketing. And Merritt, although a defendant, didn't resign until eleven months after the class period. Plaintiff hasn't explained how Tully's and Merritt's resignations bear on the claims and defenses in this case.

Defendants must respond to RFP 30 in part, producing all responsive documents related to St. Ledger and Palin.

> **Request No. 31.** All Documents and Communications from January 1, 2017, through the present Concerning any formal or informal performance reviews or evaluations of the Executive Defendants, Splunk's sales and marketing personnel, and any other Splunk employee identified in Defendant's Rule 26(a)(1) Disclosures, including any Documents or Communications Concerning those individuals' credibility or lack thereof; work performance; productivity; or violations of any Splunk policy, procedure, or code of conduct.

Dkt. 99-5 at 18.

Plaintiff hasn't persuaded the Court that RFP 31 seeks relevant documents. Plaintiff suggests that "performance reviews or evaluations" of the Executive Defendants, i.e., of Merritt and Child, would be relevant to Merritt's and Child's scienter. *See* Dkt. 99 at 2. But plaintiff doesn't explain the connection in any detail, and the Court doesn't see it. This isn't an employment case; it's a securities fraud case. Defendants' performance reviews would be a distraction.

Plaintiff also hasn't explained how performance reviews, over nearly six years, for *all* of Splunk's sales and marketing personnel, would be relevant. Nor has plaintiff demonstrated that this discovery, which defendants declare would cover "thousands of people," dkt. 99 at 5, would be proportional to the needs of the case. Defendants need not respond to RFP 31.

## II.  DISPUTED SUBPOENA TOPICS

Plaintiff served third-party subpoenas on St. Ledger and Palin. As noted above, St. Ledger was Splunk's President of Worldwide Field Operations, and Palin was Splunk's Chief Marketing

5

Officer. Defendants, St. Ledger, and Palin share the same counsel.

In dispute is Subpoena Request No. 1. The request is identical in both subpoenas and asks St. Ledger and Palin to produce the following documents.

> **Subpoena Request No. 1.** All text messages and other forms of instant messages You sent or received Concerning (i) the allegations in the Complaint; (ii) the New Logo Team, including its purpose, plans, goals, performance metrics, and actual or potential hiring or firing of its members; (iii) Splunk's actual or contemplated investments in and budgets for marketing and sales for fiscal years 2019 forward, including any changes thereto and the purported reasons for any changes; (iv) Splunk's actual or contemplated hiring of, firing of, or hiring freeze for sales personnel, and the purported reasons therefor; (v) any All-Hands Meeting or other meeting(s) or calls You attended or discussed during which Splunk's sales, marketing, or New Logo Team was discussed; (vi) the COVID-19 pandemic and its actual or expected impact on Splunk's Financial Performance and operations; (vii) Splunk's Withdrawn Guidance, including the actual or stated reasons for the decision to withdraw the Withdrawn Guidance; or (viii) Splunk's Financial Performance, including the actual, contemplated, or stated reasons for the need for the Debt Offering or proposed Capital Raise(s).

Dkt. 99-6 at 13–14 (Palin subpoena); Dkt. 99-7 at 13–14 (St. Ledger subpoena).

The request is lengthy but tailored to relevant issues. Every issue identified relates to Splunk's sales and marketing efforts or to Splunk's financial performance in or around 2020.

St. Ledger and Palin argue that the request is disproportionate to the needs of the case because defendants have "agreed to produce" St. Ledger's and Palin's "custodial documents." Dkt. 99 at 5. But those custodial documents won't include St. Ledger's and Palin's text messages, and it's conceivable that St. Ledger and Palin discussed relevant topics via text message.

St. Ledger and Palin also suggest that text-message discovery would be overly invasive. Not here. St. Ledger and Palin need not produce *all* of their text messages, only text messages on the topics plaintiff has identified. The identified topics relate to Splunk's business, not to St. Ledger's and Palin's personal lives. Also, the stipulated protective order will help ensure that St. Ledger's and Palin's text messages aren't publicly disclosed without court approval.

St. Ledger and Palin emphasize that they are third parties, not defendants. Even so, they were key players in Splunk's sales and marketing departments during the class period, and Splunk's sales and marketing efforts are at the center of the case. Relevant information is discoverable, even from nonparties. *See Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993).

Finally, St. Ledger and Palin object to the responsive time period for the subpoenas, which extends "from November 1, 2019, through the present." Dkt. 99-6 at 13; Dkt. 99-7 at 13. For two reasons, the time period isn't problematic. First, the enumerated topics in Subpoena Request No. 1 bear on Splunk's operations during or within close proximity to the class period. To the extent that St. Ledger and Palin sent or received text messages on these topics, their messages would be relevant even if their messages were sent or received today. Second, St. Ledger and Palin respectively resigned from Splunk in September 2020 and May 2021, and there's no reason to believe that they sent a considerable number of text messages on the enumerated topics after they left the company. The burden of searching for text messages "through the present" shouldn't be too great.

St. Ledger and Palin haven't suggested that they can't produce their text messages and other instant messages, nor have they demonstrated that producing these messages would be unduly burdensome. They must comply with Subpoena Request No. 1.

\* \* \*

Absent leave of the Court, defendants, St. Ledger, and Palin must produce the documents the Court has ordered them to produce by December 16, 2022.

**IT IS SO ORDERED.**

Dated: November 29, 2022

Alex G. Tse
United States Magistrate Judge