**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
Caitlin C. Bozman (Bar No. 343721)
caitlin.bozman@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

*Lead Counsel for Lead Plaintiff Louisiana
Sheriffs' Pension & Relief Fund and the Settlement
Class*

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE SPLUNK INC. SECURITIES LITIGATION | Case No. 4:20-cv-08600-JST |
| | **LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |
| | Judge: Hon. Jon S. Tigar |
| | Courtroom: 6 |
| | Date: April 6, 2023 |
| | Time: 2:00 p.m. |

MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT

4:20-cv-08600-JST

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ iv

NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
    SETTLEMENT ....................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 2

I.     PRELIMINARY STATEMENT .............................................................................. 2

II.    FACTUAL BACKGROUND ................................................................................... 3

III.   THE PROPOSED SETTLEMENT ......................................................................... 5

IV.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................. 7

    A.    Standards Governing Approval of a Class Action Settlement ............................ 7

    B.    The Court "Will Likely Be Able to" Approve the Proposed
         Settlement Under Rule 23(e)(2) ..................................................................... 8

        1.    The Settlement Was Reached Through Arm's-Length
            Negotiations Between Experienced Counsel and with the
            Assistance of an Experienced Mediator ..................................................... 8

        2.    The Settlement Is Within the Range of Possible Approval ........................... 9

        3.    The Settlement Treats All Settlement Class Members Fairly .................. 12

        4.    Lead Plaintiff Has Identified All Agreements Made in
            Connection With the Settlement ............................................................. 13

V.    THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 ................................ 13

    A.    The Settlement Class Meets the Requirements of Rule 23(a) ........................... 14

        1.    Numerosity .............................................................................................. 14

        2.    Commonality ........................................................................................... 15

        3.    Typicality ................................................................................................ 15

        4.    Adequacy ................................................................................................ 16

    B.    The Settlement Class Meets the Requirements of Rule 23(b)(3) ........................ 16

VI.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ................................... 17

VII.  THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE
      AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS ............... 19

A.      Retention of A.B. Data...................................................................... 19

B.      Proposed Form of Notice .................................................................. 19

C.      Proposed Notice Dissemination Procedures ........................................ 21

D.      Claims Processing........................................................................... 22

E.      Estimated Notice and Administrative Costs ......................................... 23

VIII.   ATTORNEYS' FEES AND LITIGATION EXPENSES .................................. 23

IX.     PROPOSED SCHEDULE OF EVENTS...................................................... 24

X.      CONCLUSION..................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re Adobe Sys., Inc. Sec. Litig.*,
    139 F.R.D. 150 (N.D. Cal. 1991) ............................................................................... 14

*In re Aqua Metals, Inc. Sec. Litig.*,
    2022 WL 612804 (N.D. Cal. Mar. 2, 2022) ............................................................... 12

*In re Biolase, Inc. Sec. Litig.*,
    2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .......................................................... 12

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ..................................................................................... 15

*Chavez v. Converse, Inc.*,
    2020 WL 4047863 (N.D. Cal. July 8, 2020) ............................................................... 9

*Churchill Village, L.L.C. v. General Electric*,
    361 F.3d 566 (9th Cir. 2004) ....................................................................................... 8

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ............................................................................. 7, 17

*In re Cooper Cos. Inc. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009) ............................................................................... 16

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ............................................................................ 21

*Elliott v. Rolling Frito-Lay Sales, LP*,
    2014 WL 2761316 (C.D. Cal. June 12, 2014) ............................................................. 7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) ................................................................................................... 16

*Fleming v. Impax Lab'ys Inc.*,
    2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) .......................................................... 21

*Gonzales v. Arrow Fin. Servs. LLC*,
    489 F. Supp. 2d 1140 (S.D. Cal. 2007), *aff'd*, 660 F.3d 1055 (9th Cir. 2011) .......... 15

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................ 13, 16

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964) ..................................................................................... 14

*Hatamian v. Advanced Micro Devices, Inc.*,
  2016 WL 1042502 (N.D. Cal. Mar. 16, 2016)..................................................................... 14

*Hatamian v. Advanced Micro Devices, Inc.*,
  No. 4:14-cv-00226-YGR, slip op. (N.D. Cal. Mar. 2, 2018), ECF No. 364.............................. 24

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .................................................................. 13, 20

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .................................................................. 6, 18

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ....................................................................... 7

*Hodges v. Akeena Solar Inc.*,
  274 F.R.D. 259 (N.D. Cal. 2011)............................................................................... 14, 16

*IBEW Local 697 v. Int'l Game Tech.*,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012) ....................................................................... 12

*Kendall v. Odonate Therapeutics, Inc.*,
  2022 WL 188364 (S.D. Cal. Jan. 18, 2022)........................................................................ 14

*Kendall v. Odonate Therapeutics, Inc.*,
  2022 WL 1997530 (S.D. Cal. June 6, 2022)....................................................................... 12

*In re LDK Solar Sec. Litig.*,
  255 F.R.D. 519 (N.D. Cal. 2009) .................................................................................... 16

*In re LendingClub Sec. Litig.*,
  2018 WL 1367336 (N.D. Cal. Mar. 16, 2018)...................................................................... 6

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) ......................................................................................... 16

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ......................................................................................... 7

*Louie v. Kaiser Found. Health Plan, Inc.*,
  2008 WL 4473183 (S.D. Cal. Oct. 6, 2008) ...................................................................... 10

*Luz Bautista-Perez v. Juul Labs, Inc.*,
  2022 WL 307942 (N.D. Cal. Feb. 2, 2022) ........................................................................ 8

*In re Lyft, Inc. Sec. Litig.*,
  No. 2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) ............................................................. 12

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ..................................................................... 8

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................... 9

*In re Oracle Corp. Sec. Litig.*,
  Case No. 18-cv-04844-BLF, slip op. at 6-7 (N.D. Cal. Sept. 15, 2022), ECF No.
  134.......................................................................................................... 21

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ...................................................................... 24

*In re Portal Software, Inc.*,
  2007 WL 1991529 (N.D. Cal. June 30, 2007) ............................................ 22

*In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*,
  2018 WL 5777503 (W.D. Tenn. Nov. 2, 2018) ........................................... 21

*In re Restoration Robotics, Inc. Sec. Litig.*,
  Case No. 5:18-cv-03712-EJD, slip op. (N.D. Cal. May 27, 2021), ECF No. 113 .................... 21

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006) ...................................................................... 7

*Reynolds v. Direct Flow Med., Inc.*,
  2019 WL 1084179 (N.D. Cal. Mar. 7, 2019) .............................................. 9

*In re RH, Inc. Sec. Litig.*,
  2019 WL 5538215 (N.D. Cal. Oct. 25, 2019)............................................. 22

*In re RH, Inc. Sec. Litig.*,
  Case No. 4:17-00554-YGR, slip op. (N.D. Cal. June 21, 2019), ECF No. 142 ...................... 21

*Satchell v. Fed. Express Corp.*,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ............................................. 9

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) ...................................................................... 17

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) .............................................. 13

*In re Skilled Healthcare Grp., Inc. Sec. Litig.*,
  2011 WL 280991 (C.D. Cal. Jan. 26, 2011) ............................................... 21

*Stewart v. Applied Materials, Inc.*,
  2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ............................................ 9

*In re Twitter Inc. Sec. Litig.*,
  326 F.R.D. 619 (N.D. Cal. 2018)................................................................ 15

*In re UTStarcom, Inc. Sec. Litig.*,
  2010 WL 1945737 (N.D. Cal. May 12, 2010) ....................................... 14, 15

*Vizcaino v. Microsoft Corp.,*
290 F.3d 1043 (9th Cir. 2002) ........................................................................................ 24

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,*
2018 WL 6198311 (N.D. Cal. Nov. 28, 2018) ........................................................ 18, 19

*In re Volkswagen "Clean Diesel" Mktg, Sales Practices, and Prods. Liab. Litig.,*
2019 WL 2077847 (N.D. Cal. May 10, 2019) ............................................................... 24

STATUTES

Class Action Fairness Act of 2004,
28 U.S.C. § 1715 (2005) ............................................................................................... 22

Private Securities Litigation Reform Act of 1995 ("PSLRA")
15 U.S.C. § 78u-4 ..................................................................................... 3, 18, 20, 24

Securities Exchange Act of 1934, Section 10(b)
15 U.S.C. § 78j(b) ........................................................................................................... 4

Securities Exchange Act of 1934, Section 20(a)
15 U.S.C. § 78t(a) ........................................................................................................... 4

OTHER AUTHORITIES

Fed. R. Civ. P. 23 .................................................................................................... *passim*

Rule 10b-5 ........................................................................................................................ 4

1

2

### NOTICE OF UNOPPOSED MOTION
### FOR PRELIMINARY APPROVAL OF SETTLEMENT

3

PLEASE TAKE NOTICE that Lead Plaintiff Louisiana Sheriffs' Pension & Relief Fund

4

("Lead Plaintiff" or "Louisiana Sheriffs") hereby moves for an order pursuant to Federal Rule

5

23(e)(1) that will: (1) preliminarily approve the proposed Settlement of this Action;

6

(2) provisionally certify a class for purposes of the Settlement only; (3) approve the form and

7

manner of giving notice of the proposed Settlement to the Settlement Class; and (4) schedule a final

8

settlement hearing before the Court to determine whether the proposed Settlement, proposed Plan

9

of Allocation, and Lead Counsel's motion for attorneys' fees and Litigation Expenses should be

10

approved.[1] Pursuant to Civil Local Rule 7-2 and Your Honor's Standing Order for Civil Cases, the

11

motion is noticed for a hearing on April 6, 2023, at 2:00 p.m. However, because the motion is

12

unopposed, the Parties agree that it is appropriate for decision on the papers at this time and without

13

a hearing—should the Court so desire. This motion is supported by the following memorandum of

14

points and authorities in support thereof, and the Stipulation and the exhibits thereto, which embody

15

the terms of the proposed Settlement between the Parties, the previous filings and orders in this

16

case, and any further representations as may be made by counsel at any hearing on this matter.

### STATEMENT OF ISSUES TO BE DECIDED

17

18

1.     Whether the proposed $30 million cash settlement of this Action is within the range

19

of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the

dissemination of notice of its terms to members of the proposed Settlement Class.

20

2.     Whether a Settlement Class will likely be able to be certified for purposes of the

21

Settlement.

22

3.     Whether the proposed form of settlement notice and claim form and the manner for

23

dissemination to the Settlement Class should be approved.

24

25

26

27

28

---

[1] Unless otherwise indicated, capitalized terms shall have their meaning as defined in the Stipulation and Agreement of Settlement, dated January 30, 2023 (the "Stipulation"), attached as Exhibit 1.

4.      Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's motion for attorneys' fees and Litigation Expenses.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      PRELIMINARY STATEMENT**

Lead Plaintiff is pleased to report that, after two years of hard-fought litigation, it has negotiated an agreement to settle this class action in exchange for a payment of $30 million in cash for the benefit of the Settlement Class, subject to the Court's approval. Lead Plaintiff respectfully submits this memorandum of points and authorities in support of its motion, pursuant to Federal Rule 23(e)(1), for preliminary approval of the proposed settlement (the "Settlement"). The motion is unopposed, and all Parties agree that it is appropriate for decision on the papers at this time, subject to the Court's approval.

The Settlement, which is set forth in the Stipulation attached hereto as Exhibit 1, was reached only after more than two years of vigorous litigation and after a formal mediation session before Jed Melnick of JAMS, an experienced mediator of securities class actions and other complex disputes. The mediation included the submission and exchange of detailed mediation briefs. The proposed Settlement is based on a mediator's recommendation made by Mr. Melnick, which the Parties accepted.

Lead Plaintiff and Lead Counsel had a very well-developed understanding of the strengths and weaknesses of the claims when the Settlement was reached. Prior to reaching the Settlement, Lead Plaintiff and Lead Counsel had conducted an extensive investigation of the claims at issue, including a detailed review of publicly available information, interviews with dozens of former Splunk employees, and consultation with experts in issues of damages and loss causation. Lead Counsel drafted and filed a detailed Consolidated Class Action Complaint (the "Complaint") in June 2021. Lead Plaintiff and Lead Counsel litigated Defendants' Motion to Dismiss the Complaint through extensive briefing. After the Court sustained certain claims in the Complaint in its March 2022 Order, the Parties conducted substantial document discovery. In addition, Lead Plaintiff and

Lead Counsel prepared and filed a class certification motion, which included submitting an expert report from Lead Plaintiff's expert witness.

Lead Plaintiff submits that the Settlement represents a favorable result for the Settlement Class and ultimately should be approved by this Court, given the substantial risks, costs, and delays of continued litigation, including the significant risk that there might be no recovery for the Settlement Class following Defendants' anticipated motion for summary judgment, or after trial, or after the appeals that would be taken from any verdict for the Settlement Class at trial. Lead Plaintiff would have faced serious risks at summary judgment and trial in prevailing on these claims.

Lead Plaintiff respectfully requests that this Court enter the proposed Preliminary Approval Order attached as Exhibit A to the Stipulation and as Exhibit 2 hereto.  The Preliminary Approval Order, among other things: (i) schedules a final hearing to consider the proposed Settlement, the proposed Plan of Allocation of the Net Settlement Fund, and Lead Counsel's motion for attorneys' fees and expenses (the "Settlement Hearing"); (ii) preliminarily approves the Settlement as fair, reasonable and adequate to the Settlement Class, pending the Settlement Hearing; (iii) finds that the Court "will be likely be able" to certify the Settlement Class for settlement purposes only; (iv) approves the form and method of disseminating notice to the Settlement Class; (v) appoints the claims administrator recommended by Lead Counsel to disseminate notice and administer the Settlement; and (vi) establishes procedures and deadlines for Settlement Class Members to submit Claim Forms for payments from the Net Settlement Fund, request exclusion from the Settlement Class, or object to the terms of the Settlement, Plan of Allocation, and/or requested fees and expenses.

## II.   FACTUAL BACKGROUND

On December 4, 2020, a class action complaint, styled *Pavlova-Coleman v. Splunk Inc.*, Case No. 20-cv-08600-JST, was filed in the Court asserting violations of federal securities laws against Splunk and the Individual Defendants. ECF No. 1. In accordance with the PSLRA, notice to the public was issued stating the deadline by which putative class members could move the Court for appointment as lead plaintiff.

On February 2, 2021, Louisiana Sheriffs moved for appointment as Lead Plaintiff. ECF No. 28. The Court appointed Louisiana Sheriffs as Lead Plaintiff and approved Bernstein Litowitz

Berger & Grossmann LLP ("BLB&G") as Lead Counsel. ECF No. 59.

On June 7, 2021, Lead Plaintiff filed and served its Consolidated Class Action Complaint for Violations of Federal Securities Laws (ECF No. 65) (the "Complaint"), asserting claims against Defendants Splunk Inc. ("Splunk"), Splunk's Chief Executive Officer Douglas Merritt, and Splunk's Chief Financial Officer Jason Child under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Defendants Merritt and Child under Section 20(a) of the Exchange Act. Lead Plaintiff alleged that Defendants made material misrepresentations and omissions about whether Splunk was continuing to invest in marketing and continuing to hire and retain sales professionals. Lead Plaintiff further alleged that the price of Splunk's common stock was artificially inflated as a result of Defendants' allegedly false and misleading misstatements and omissions, and declined when the truth was revealed.

On July 27, 2021, Defendants filed and served a motion to dismiss the Complaint, which was accompanied by a request that the Court consider documents incorporated by reference in the Complaint and take judicial notice of other documents submitted to the Court. ECF Nos. 67, 68. On September 15, 2021, Lead Plaintiff filed and served memoranda of law in opposition to Defendants' motion to dismiss and request for judicial notice. ECF Nos. 70, 71. On October 20, 2021, Defendants filed and served reply papers in support of their motion. ECF Nos. 74, 75. On March 21, 2022, the Court issued an Order denying, in part, and granting, in part, Defendants' motion to dismiss the Complaint. ECF No. 77. On May 13, 2022, Defendants filed their Answer to the Complaint. ECF No. 86. Defendants' Answer denied Lead Plaintiff's allegations of wrongdoing and asserted various defenses. *Id.*

Discovery in the Action commenced in April 2022. The Parties exchanged initial disclosures, served requests for production of documents, and exchanged letters concerning discovery issues. Lead Plaintiff also served document subpoenas on nine third parties. Defendants and third parties produced a total of over 39,000 pages of documents to Lead Plaintiff.

On July 22, 2022, Lead Plaintiff filed its motion for class certification, which was accompanied by a report from Lead Plaintiff's expert, Dr. Steven Feinstein, who opined that

Splunk's common stock traded in an efficient market during the Class Period and that per-share damages could be measured for all class members using a common methodology. ECF Nos. 97-98.

While discovery was ongoing, the Parties held a private mediation before JAMS Mediator Jed Melnick. On December 7, 2022, the Parties exchanged detailed mediation statements addressing both liability and damages issues accompanied by numerous exhibits. The mediation statements were also submitted to Mr. Melnick. A full-day mediation session with Mr. Melnick was held on December 15, 2022. At the mediation session, the Parties engaged in vigorous settlement negotiations with the assistance of Mr. Melnick

At the conclusion of the mediation session, Mr. Melnick issued a mediator's recommendation that the Parties settle the Action for $30 million. The Parties accepted Mr. Melnick's recommendation. Following additional negotiations, the Parties entered into the Stipulation on January 30, 2023, which sets forth the terms and conditions of the Settlement. On the same day, Lead Plaintiff and Splunk also entered into a confidential Supplemental Agreement, which gives Splunk the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Settlement Class in an amount that exceeds an amount agreed to by Lead Plaintiff and Splunk.

## III.    THE PROPOSED SETTLEMENT

The Settlement provides that Splunk will cause to be paid $30 million in cash into an interest-bearing escrow account. The Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and Litigation Expenses awarded by the Court, Notice and Administration Costs, and Taxes and related expenses (the "Net Settlement Fund"), will be distributed among Settlement Class Members who submit valid Claim Forms, in accordance with a plan of allocation to be approved by the Court. The Settlement is not a claims-made settlement: if the Settlement is approved, Defendants and their insurers will have no right to the return of any portion of the Settlement Fund based on the number or value of Claims submitted. *See* Stipulation ¶ 13.

The Settlement Class. The Parties have agreed to the certification of the Settlement Class, consisting of all persons who purchased or otherwise acquired the common stock of Splunk from May 21, 2020 to December 2, 2020, inclusive (the "Class Period"), and continued to hold any Splunk

common stock after December 2, 2020, which is the date of the alleged corrective disclosure. *See* Stipulation ¶ 1(pp). Excluded from the Settlement Class are: (i) Defendants; (ii) any current or former Officers and directors of Splunk; (iii) the Immediate Family Members of the foregoing excluded persons; (iv) any entity that any Defendant or any of Defendants' Immediate Family Members owns or controls, or owned or controlled during the Class Period; (v) the legal representatives, heirs, agents, affiliates, successors or assigns of any excluded persons; and (vi) any persons or entities that exclude themselves by submitting a request for exclusion that is accepted by the Court. *Id*.[2]

The Release Is Appropriate.   In exchange for the payment of the Settlement Amount, Settlement Class Members will release the "Released Plaintiff's Claims." Stipulation ¶ 1(kk). The Settlement's release provision is tailored to the Settlement Class's claims. Specifically, the release is limited to (1) the actual claims asserted in the Complaint; or (2) unasserted claims that could have been brought but only if they arise out, are based upon, or relate to "the allegations, transactions, facts, matters or occurrences, representations, or omissions involved, set forth, alleged, or referred to in the Action, or which could have been alleged in the Action" and "relate to the purchase or acquisition of Splunk common stock during the Class Period." Stipulation ¶ 1(kk). In addition, the Settlement's release provision does not release the claims asserted in the pending derivative actions purportedly on behalf of Splunk against certain current and former Splunk officers and directors arising out the same factual predicate. *Id*. The Parties are not aware of any other pending cases that will be affected by the Settlement or the proposed release.

The proposed release is, therefore, tailored to the conduct at issue in this Action and is consistent with release provisions approved by courts in this District. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *3 (N.D. Cal. Dec. 18, 2018) (approving similar release); *In re*

---

[2] The Settlement Class is largely identical to the class proposed in Lead Plaintiff's Complaint (ECF No. 65, ¶ 153) and motion for class certification (ECF No. 97). For clarity, the phrase "and were damaged thereby" was replaced by the requirement that class members hold their shares of Splunk common stock through December 2, 2020, the date on which the alleged corrective disclosure occurred. Minor refinements were also made to the list of persons and entities excluded from the class as a result of their affiliation with Defendants.

1   *LendingClub Sec. Litig.*, 2018 WL 1367336, at *4 (N.D. Cal. Mar. 16, 2018) (approving release in

2   securities class action that was "anchored to 'the purchase, acquisition, holding, sale, or disposition

3   of LendingClub common stock by Class Members during the [class] period'"); *see generally Reyn's*

4   *Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (a class release may release

5   claims not asserted in the action as long as they arise from the same set of factual allegations).

6   **IV.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL**

7            **A.       Standards Governing Approval of a Class Action Settlement**

8            In the Ninth Circuit, there is a strong judicial policy in favor of voluntary settlement of

9   litigation, and particularly so in class actions.  *See, e.g.*, *Linney v. Cellular Alaska P'ship*, 151 F.3d

10  1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992);

11  *In re Heritage Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) ("There is an

12  overriding public interest in settling and quieting litigation, and this is particularly true in class

13  action suits.").  Settlements of complex cases greatly contribute to the efficient utilization of scarce

14  judicial resources and achieve the speedy resolution of justice. *See Elliott v. Rolling Frito-Lay Sales,*

15  *LP,* 2014 WL 2761316, at *3 (C.D. Cal. June 12, 2014) ("judicial policy favors settlement in class

16  actions and other complex litigation where substantial resources can be conserved by avoiding the

17  time, cost, and rigors of formal litigation").

18           Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements.

19  A district court's review of a proposed class action settlement is a two-step process. First, the court

20  performs a preliminary review of the terms of the proposed settlement to determine whether to send

21  notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice and

22  a hearing, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ.

23  P. 23(e)(2).

24           A court grants preliminary approval to authorize notice to the class upon a finding that it

25  "will likely be able" to approve the Settlement as fair, reasonable, and adequate at the final hearing.

26  Fed. R. Civ. P. 23(e)(1)(B). This standard effectively codifies prior case law, which provided that

27  courts should grant preliminary approval after considering whether the settlement: (1) appears to be

28  the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies;

(3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *See, e.g.*, *Luz Bautista-Perez v. Juul Labs, Inc.*, 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022).

At final approval, the Court will have to determine whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In considering whether a settlement is fair, reasonable, and adequate at final approval, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court also considers the factors identified by the Ninth Circuit in *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004), many of which overlap with the Rule 23(e) factors. Each of these factors supports approval of the Settlement and, thus, preliminary approval is appropriate here.

### B. The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2)

#### 1. The Settlement Was Reached Through Arm's-Length Negotiations Between Experienced Counsel and with the Assistance of an Experienced Mediator

The fact that the Parties reached the Settlement after arm's-length negotiations between experienced counsel and with the assistance of an experienced mediator creates a presumption of its fairness. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel.").

Here, counsel engaged in a mediation process with an experienced mediator, Jed D. Melnick, which included the exchange of detailed mediation statements and a full-day mediation session. Mr.

Melnick issued a mediator's settlement recommendation at the conclusion of the mediation session, which the Parties accepted on a double-blind basis. As courts in this District and elsewhere have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Chavez v. Converse, Inc.*, 2020 WL 4047863, at *2 (N.D. Cal. July 8, 2020).

Courts have also given considerable weight to the opinion of experienced and informed counsel who support settlement. In deciding whether to approve a proposed settlement of a class action, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017); *accord In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Here, Lead Counsel has a thorough understanding of the merits and risks of the Action and extensive experience in securities litigation.

In addition, Lead Plaintiff reached the agreement to settle only after conducting extensive litigation, which included a thorough investigation of the claims and preparation of a detailed Complaint, full briefing of Defendants' motion to dismiss, and substantial discovery. Lead Plaintiff and Lead Counsel had ample information to ascertain the strengths and risks of the claims asserted in the Action and for their conclusion that the $30 million Settlement is fair and reasonable.

In sum, the extent of the litigation, the arm's-length nature of the negotiations, and the participation of a mediator all support a finding that the proposed Settlement is fair, reasonable, and adequate to justify notice to the Settlement Class and a hearing on final approval.

## 2. The Settlement Is Within the Range of Possible Approval

At the preliminary approval stage, the Court need only determine whether it "will likely be able" to approve the Settlement, *see* Fed. R. Civ. P. 23(e)(1)(B), or, in other words, whether the Settlement "falls within the range of possible approval." *Reynolds v. Direct Flow Med., Inc.*, 2019 WL 1084179, at *4 (N.D. Cal. Mar. 7, 2019). Because the $30 million Settlement represents a favorable recovery for the Settlement Class in light of the risks of the litigation and the potential outcomes at trial, the Settlement is well within the range of possible approval.

Lead Counsel agreed to settle this Action on these terms based on its careful investigation and evaluation of the facts and law relating to the allegations in the Complaint remaining after the Court's decision on Defendants' motion to dismiss and careful consideration of the evidence developed in discovery. *See Louie v. Kaiser Found. Health Plan, Inc.*, 2008 WL 4473183, at *6 (S.D. Cal. Oct. 6, 2008) ("Class counsels' extensive investigation, discovery, and research weighs in favor of preliminary settlement approval.").

The $30 million Settlement is a favorable result for the Settlement Class in light of the substantial risks that Lead Plaintiff and the Settlement Class would face in proving all of the elements of the asserted claims. To defeat summary judgment and prevail at trial, Lead Plaintiff would have been required to prove not only that Defendants' statements were materially false, but that Defendants knew that their statements were false when made or were deliberately reckless in making the statements, and that the disclosures concerning Defendants' false and misleading statements caused declines in the price of Splunk's stock. In addition, Lead Plaintiff would have had to establish the amount of per share damages.

Defendants would have had substantial arguments to make concerning each of these issues. For example, Defendants would have argued that they made no false or misleading statements, because, among other things, Splunk did, in fact, continue to invest in marketing and hire new personnel throughout the entire Class Period and its layoffs were both minimal and disclosed. Defendants also would argue that the challenged statements were immaterial and too generalized to be actionable. In addition, Defendants would have argued that Lead Plaintiff could not prove intent to defraud, or scienter, because Defendants did not know or have any reason to believe their statements were misleading when made.

Lead Plaintiff also faced substantial challenges in proving that the revelation of the truth about Defendants' allegedly false and misleading statements caused the declines in the price of Splunk's stock, and in establishing the amount of class-wide damages. Defendants would have argued that the decline in Splunk's stock price was not caused by revelation of the truth about the alleged misstatements, but by various other factors such as lower than expected revenue for the quarter and the withdrawal of long-term guidance. Defendants would have also argued that, even if

some portion of the price decline were caused by revelation of the truth about the alleged misstatements, it was small compared to the decline resulting from other factors, and any purported damages to Lead Plaintiff and the Settlement Class were minimal. Lead Plaintiff would have faced challenges in proving what portion of the Splunk's price decline on December 3, 2020 resulted from the revelation of the alleged misstatements, rather than confounding non-fraud information. Had any of these arguments been accepted in whole or in part, it could have eliminated or, at a minimum, drastically limited any potential recovery.

Moreover, in order to obtain recovery, Lead Plaintiff would have to prevail at several stages—at summary judgment, trial, and on appeal. Thus, there were significant risks attendant to the continued prosecution of the Action, and there was no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

In light of these risks, the amount of the Settlement and the immediacy of recovery to the Settlement Class, Lead Plaintiff and Lead Counsel believe that the proposed $30,000,000 Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

Through the Settlement, investors will recover a meaningful amount, and greater than in many securities class actions. To assess damages in this case, Lead Plaintiff first estimated the theoretical maximum damages if investors were to prevail over all liability challenges noted above but before necessary considerations of issues of loss causation (*i.e.*, determining what portion of Splunk's stock price decline was attributable to the alleged hiring freeze and marketing cutbacks, as opposed to other factors), which amounted to approximately $886 million. Lead Plaintiff then estimated the maximum potential realistic damages in this case if investors were to prevail over all liability challenges noted above and realistically accounting for issues of loss causation, which amounted to a range of approximately $146 million to approximately $586 million.[3] The top of this range, which corresponds to the $25 per share artificial inflation included in the Plan of Allocation, assumes that all of the "execution risk" identified by stock analysts following the December 2, 2020

---

[3] Defendants, of course, dispute that Lead Plaintiff or investors were damaged, contest Lead Plaintiff's class-wide damage estimates, and believe Lead Plaintiff and investors are not entitled to recover through this Action.

corrective disclosures (*i.e.*, the risk that the Company would no longer be able to execute effectively on its operational plans to achieve its future financial targets) was the result of Splunk's alleged hiring freeze and marketing cutbacks. The lower end of the range, $146 million, accounts for the substantial risk in proving what portion of Splunk's price decline attributable to "execution risk" was the result of the alleged hiring freeze and marketing cutbacks—as opposed to other factors.

Accordingly, the $30 million Settlement Amount represents approximately 5% to 20.5% of Lead Plaintiff's estimated maximum potential realistic class-wide damages, aggressively assuming that investors prevailed on all of the alleged misstatements during the entire Class Period and realistically accounting for various issues of loss causation. This represents an excellent recovery for Settlement Class Members, especially when considered in light of the real risk of no-or-lesser recovery and the typical level of recovery in securities class actions. *See, e.g.*, *In re Lyft, Inc. Sec. Litig.*, No. 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022) (finding the settlement equal to 3.2% to 4.7% of estimated maximum damages was "well within the range of possible approval"); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *5 (S.D. Cal. June 6, 2022) (approving settlement of "approximately 3.49% of the maximum estimate damages"); *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *6 (N.D. Cal. Mar. 2, 2022) ("Class Counsel contends that this settlement offer constitutes 7.3% of the most likely recoverable damages, assuming Plaintiffs were to prevail on all claims against the Defendants. . . . The Court agrees that this recovery is in line with comparable class action settlements."); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (settlement representing "approximately 8% of the maximum recoverable damages . . . equals or surpasses the recovery in many other securities class actions"); *IBEW Local 697 v. Int'l Game Tech.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement representing "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered" and finding it "within the median recovery in securities class actions settled in the last few years").

### 3.    The Settlement Treats All Settlement Class Members Fairly

The Settlement does not improperly grant preferential treatment to Lead Plaintiff or any segment of the Settlement Class. All Settlement Class Members will be eligible to receive a

1   distribution from the Net Settlement Fund in accordance with a plan of allocation to be approved

2   by the Court. At the final Settlement Hearing, Lead Plaintiff will ask the Court to approve the

3   proposed Plan of Allocation, which provides a formula for the distribution of the Net Settlement

4   Fund to Settlement Class Members demonstrating a loss on their transactions in Splunk common

5   stock related to the alleged fraud. As discussed further below, the Plan of Allocation was developed

6   by Lead Counsel based on a damages analysis prepared by Lead Plaintiff's damages expert, and

7   Lead Counsel believes it provides a fair and equitable method for allocating the Net Settlement

8   Fund among injured Settlement Class Members.

### 4.      Lead Plaintiff Has Identified All Agreements Made in Connection With the Settlement

In addition to the Stipulation, Lead Plaintiff and Splunk entered into a confidential

Supplemental Agreement that establishes the conditions under which Splunk may terminate the

Settlement if requests for exclusion ("opt-outs") exceed an agreed-upon threshold. *See* Stipulation

¶ 38. Lead Plaintiff has submitted a copy of the Supplemental Agreement to the Court for its review

with this motion (together with a motion to file under seal). *See, e.g.*, *Hefler v. Wells Fargo & Co.*,

2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) (granting preliminary approval of class action

settlement and motion to seal similar confidential supplemental agreement). "This type of agreement

is a standard provision in securities class actions and has no negative impact on the fairness of the

Settlement." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21,

2020).

## V.      THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

The Ninth Circuit has long recognized that courts may certify class actions for settlement

purposes only. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In connection

with final approval, the Court will be asked to certify the Settlement Class, for settlement purposes

only, under Rules 23(a) and 23(b)(3). At the preliminary approval stage, the Court need only

determine whether it "will likely be able to" grant certification at final approval. Fed. R. Civ. P.

23(e)(1)(B)(ii).

Courts routinely endorse the use of the class action device to resolve claims brought under the federal securities laws. *See, e.g.*, *Hodges v. Akeena Solar Inc.*, 274 F.R.D. 259, 266 (N.D. Cal. 2011). "[C]lass actions commonly arise in securities fraud cases as the claims of separate investors are often too small to justify individual lawsuits, making class actions the only efficient deterrent against securities fraud. Accordingly, the Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991). This Action is no exception, and the proposed Settlement Class readily satisfies the requirements of Rules 23(a) and 23(b)(3).

### A.      The Settlement Class Meets the Requirements of Rule 23(a)

#### 1.      Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. The Ninth Circuit has stated that "'impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). "While no specific minimum number of potential class members exists, a 'proposed class of at least forty members presumptively satisfies the numerosity requirement.'" *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *4 (N.D. Cal. Mar. 16, 2016). "Numerosity 'is generally assumed to have been met in class action suits involving nationally traded securities.'" *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 188364, at *3 (S.D. Cal. Jan. 18, 2022).

Here, Splunk common stock was publicly traded on the NASDAQ with approximately 159.64 million shares of common stock outstanding during the Class Period and an average weekly trading volume during the Class Period of over 8.82 million shares. *See* ECF No. 98-2, at ¶¶ 52, 86. The proposed Settlement Class consists of thousands of investors. *See Akeena Solar*, 274 F.R.D. at 266. A class of this size is sufficiently numerous to make individual joinder impracticable, and satisfy the numerosity element. *In re UTStarcom, Inc. Sec. Litig.*, 2010 WL 1945737, at *4 (N.D. Cal. May 12, 2010).

### 2.      Commonality

The commonality requirement of Rule 23(a)(2) is satisfied where the proposed class representatives share at least one question of fact or law with the claims of the prospective class. Commonality exists even if there are varying fact situations among class members so long as the claims of the plaintiffs and other class members are based on the same liability theory. *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

The common questions of fact and law in this Action are numerous and include: (i) whether Defendants made false or misleading statements or omissions; (ii) whether Defendants acted with scienter; (iii) whether Defendants' misrepresentations and omissions caused the Settlement Class Members losses; and (iv) whether the members of the Settlement Class sustained damages, and the proper amount of their damages.

Courts routinely hold that securities actions containing such common questions are prime candidates for class certification. *See, e.g.*, *UTStarcom*, 2010 WL 1945737, at *4 (finding common questions of law and fact as to whether "Defendants engaged in a fraudulent scheme and omitted or misrepresented material facts," the "publicly traded securities were artificially inflated," and "Defendants' . . . omissions caused class members to suffer economic losses").

### 3.      Typicality

The typicality requirement of Rule 23(a)(3) is satisfied when the claims or defenses of the party or parties representing the class are typical of the claims or defenses of the other class members. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 629 (N.D. Cal. 2018). Typicality exists "even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1155 (S.D. Cal. 2007), *aff'd*, 660 F.3d 1055 (9th Cir. 2011).

Here, Lead Plaintiff's claims arise from the same events or course of conduct that give rise to claims of other Settlement Class Members, and the claims asserted are based on the same legal theory. The claims of all Settlement Class Members derive from the same legal theories and allege

the same set of operative facts. Lead Plaintiff alleges that the price of the Splunk common stock it purchased during the Class Period was artificially inflated as a result of Defendants' alleged misstatements and that it suffered damages when the truth was disclosed to the market, causing Splunk's stock price to decline. Lead Plaintiff's claims thus meet the typicality requirement. *See Akeena Solar*, 274 F.R.D. at 266-67.

### 4.   Adequacy

Rule 23(a)'s adequacy requirement is met when lead plaintiff and lead counsel will fairly and adequately protect the interests of the Settlement Class. The proposed class representative must be free of interests antagonistic to the other members of the class, and counsel representing the class must be qualified, experienced and capable of conducting the litigation. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiff has claims that are coextensive with those of the Settlement Class. In addition, Lead Plaintiff has retained counsel highly experienced in securities class action litigation who have successfully prosecuted many securities and other complex class actions.[4] Thus, Lead Plaintiff is an adequate representative of the Settlement Class, and its counsel is qualified, experienced and capable of prosecuting this Action, in satisfaction of Rule 23(a)(4).

### B.   The Settlement Class Meets the Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods of adjudication. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 525 (N.D. Cal. 2009).

Here, common questions of law and fact predominate over any individualized ones. As courts have repeatedly recognized, "[t]he common questions of whether misrepresentations were made and whether defendants had the requisite scienter predominate[] over any individual questions of reliance and damages." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 632 642 (C.D. Cal. 2009). Issues of falsity, materiality, scienter, and loss causation "affect investors alike," and their proof "can be

---

[4] *See* Uslaner Decl. ¶¶ 7-12.

made on a class-wide basis" because they "affect[] investors in common." *Schleicher v. Wendt*, 618 F.3d 679, 682, 685, 687 (7th Cir. 2010).

A class action is "superior" to individual actions here because individual class member's claims are too small to maintain a separate action. Indeed, Lead Plaintiff is unaware of any individual actions brought on behalf of Splunk common stock investors based on the same allegations. Moreover, the broad geographical dispersion of Settlement Class Members makes it desirable to concentrate the claims in one forum.

In sum, the requirements of Rules 23(a) and 23(b) are satisfied, and there are no issues that would prevent the Court from certifying this Settlement Class, appointing Lead Plaintiff as class representative, and appointing Lead Counsel as counsel for the Settlement Class.

## VI.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Plaintiff also seeks preliminary approval of the proposed Plan of Allocation of the settlement proceeds, which is set forth in the Notice to be mailed to Settlement Class Members. The Court's review of the proposed Plan of Allocation is governed by the same standards of review applicable to the settlement itself—the plan must be fair and reasonable. *See Class Plaintiffs*, 955 F.2d at 1284. The Plan of Allocation, which Lead Counsel developed based on the damages analysis prepared by Lead Plaintiff's expert, provides a fair, reasonable, and equitable basis to allocate the Net Settlement Fund among Settlement Class Members who submit acceptable Claim Forms.

In developing the Plan of Allocation, Lead Plaintiff's damages expert calculated the estimated amount of alleged artificial inflation in the per-share price of Splunk common stock during the Class Period that was allegedly proximately caused by Defendants' alleged materially false and misleading statements and omissions. In calculating the alleged artificial inflation, Lead Plaintiff's damages expert considered the price change in Splunk common stock in reaction to the public disclosure that allegedly corrected the alleged misrepresentations, adjusting for factors that were attributable to market or industry forces, and for non-fraud related information. *See* Notice ¶ 74.

The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of Splunk common stock during the Class Period that is listed in the Claim Form and for which adequate supporting documentation is provided. Notice ¶¶ 76-77. Under the Plan, Claimants who purchased

shares during the Class Period but did not hold those shares through the alleged corrective disclosure at the end of the Class Period will have no Recognized Loss Amount as to those transactions because any loss they suffered would not have been caused by revelation of the alleged fraud. *Id*. ¶ 77A.  For shares sold in the 90-day period after the end of the Class Period, the Recognized Loss Amount is the least of: (i) the estimated artificial inflation on the date of purchase, (ii) the purchase price *minus* the sales price; or (iii) the purchase price *minus* the average closing price of the stock from December 3, 2020 through the date of sale, consistent with the PSLRA. *Id*. ¶ 77B. For shares sold still held as of the close of trading on March 2, 2021 (the end of the 90-day period following the end of the Class Period), Recognized Loss Amounts will be the lesser of (i) the estimated artificial inflation on the date of purchase or (ii) the purchase price *minus* $166.17, the average closing price for Splunk common stock during the 90-day period. *See Id*. ¶ 77C.

The sum of a claimant's Recognized Loss Amounts for all of his, her, or its Class Period purchases is the Claimant's "Recognized Claim." Notice ¶ 78. The Plan of Allocation also limits Claimants' Recognized Claim based on whether they had an overall market loss in their transactions in Splunk common stock during the Class Period. *Id*. ¶¶ 85-86. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id*. ¶¶ 87-88.

One hundred percent of the Net Settlement Fund will be distributed to eligible Claimants. Moreover, if any funds remain after an initial distribution to eligible Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will also be conducted as long as they are cost effective. Notice ¶ 90. The Plan of Allocation also identifies the Investor Protection Trust as the proposed *cy pres* recipient for any residual funds that may remain after all cost-effective distributions of the Net Settlement Fund to all eligible Claimants have been completed. *Id*. The Investor Protection Trust, a 501(c)(3) nonprofit organization devoted to investor education, is an appropriate *cy pres* recipient because of the nature of the securities fraud claims at issue, and courts in this District have approved it as a *cy pres* recipient in other similar actions. *See Hefler*, 2018 WL 6619983, at *11 ("the Court concludes that the Investor Protection Trust's mission of educating investors makes it an appropriate *cy pres* beneficiary"); *In re Volkswagen "Clean Diesel"*

*Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2018 WL 6198311, at *5 (N.D. Cal. Nov. 28, 2018) ("The proposed *cy pres* recipient, the Investor Protection Trust, is a nonprofit organization focused on investor education. A savvy, educated investor is hopefully more likely to identify signs of securities fraud, which furthers the Exchange Act's purpose of maintaining 'fair and honest markets.'").

## VII.   THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

### A.   Retention of A.B. Data

Lead Plaintiff proposes that the notice and claims process be administered by A.B. Data, Ltd. ("A.B. Data"), an independent settlement and claims administrator with extensive experience handling the administration of securities class actions. *See* Declaration of Jack Ewashko ("Ewashko Decl."), attached hereto as Exhibit 3, at ¶ 2. A copy of A.B. Data's firm resume is attached to the Ewashko Decl. as Exhibit A and a discussion of its data security procedures is attached thereto as Exhibit B. Lead Counsel selected A.B. Data after a competitive bidding process in which four firms submitted proposals and A.B. Data had the lowest cost bid. *See* Declaration of Jonathan D. Uslaner ("Uslaner Decl."), attached hereto as Exhibit 4, at ¶¶ 2-4. All of the proposals received involved comparable methods of providing notice and claims processing, including use of first-class mail and identifying potential Settlement Class Members through brokers and nominee owners. *Id*. ¶ 4. Lead Counsel has engaged A.B. Data to serve as notice or settlement administrator in 15 cases other than *Splunk* in the past two years (as compared to a total of 33 such new engagements during the same period, or roughly one half of such cases). *Id*. ¶ 5. Lead Counsel has found A.B. Data to be a very reliable administrator for these types of cases, with competitive pricing compared to similar claims administrator firms. *Id.* ¶ 6.

### B.   Proposed Form of Notice

Lead Plaintiff respectfully submits that the Court should approve the form and content of the proposed Notice and Summary Notice. *See* Stipulation, Exs. A-1 and A-3. The Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Settlement Class Members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice apprises all Settlement Class Members of (among many other disclosures) the nature of the Action,

the definition of the Settlement Class, the claims and issues, that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion, and the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3)(B).

The Notice also satisfies the separate disclosure requirements imposed by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). It states the amount of the Settlement on an absolute and per-share basis; provides a statement concerning the issues about which the Parties disagree; states the amount of attorneys' fees and Litigation Expenses that Lead Counsel will seek; provides the name, address, telephone number, and email of Lead Counsel, who will be available to answer questions from Settlement Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement.

The Notice also meets the Northern District of California Procedural Guidance for Class Action Settlements ("N.D. Cal. Guid.") in that it includes, among other things, (1) "contact information for class counsel to answer questions"; (2) the web address for the settlement website; and (3) "instructions on how to access the case docket." N.D. Cal. Guid. ¶ 3. The Notice also sets out the procedures and deadlines for the submission of Claim Forms; for submission of objections to any aspect of the Settlement, the Plan of Allocation, or attorneys' fees and expenses; and for requests for exclusion from the Settlement Class. The procedures and requirements for objections (Notice ¶¶ 62-63) parallel those set out in the N.D. Cal. Procedural Guidance and those previously approved by the Court. *See* N.D. Cal. Guid. ¶ 5; *Hefler*, 2018 WL 4207245, at *12.

With respect to requests for exclusion from the Settlement Class, the Notice does not require all putative opt-outs to provide any information beyond their names and a statement that they wish to be excluded and sign their request for exclusion. *See* Notice ¶ 55. Only opt-outs who purchased more than 500 shares of Splunk common stock during the Class Period are required to submit information on their trading during the Class Period. *Id*. The proposed approach here—imposing an information requirement only on investors with substantial holdings—strikes an appropriate balance because it will not create an unnecessary burden on any ordinary small shareholders that wish to be excluded from the class, and thus addresses the concerns the Court has raised in prior cases where it eliminated a blanket requirement for such information. For a large investor, the burden of providing

1   the requested information on their Class Period trades is extremely minimal and this information

2   will assist the Parties in implementing the Supplemental Agreement, which provides Splunk with

3   the right to terminate the Settlement if opt-outs purchased shares during the Class Period that exceed

4   a specified threshold.

5          Numerous courts in this District have imposed such an information requirement for opt-outs.

6   *See, e.g., In re Oracle Corp. Sec. Litig.*, Case No. 18-cv-04844-BLF, slip op. at 6-7 (N.D. Cal. Sept.

7   15, 2022), ECF No. 134 (Freeman, J.) *Fleming v. Impax Lab'ys Inc.*, 2021 WL 5447008, at \*4 (N.D.

8   Cal. Nov. 22, 2021) (Gilliam, J.); *In re Restoration Robotics, Inc. Sec. Litig.*, Case No. 5:18-cv-

9   03712-EJD, slip op. at 6-7 (N.D. Cal. May 27, 2021), ECF No. 113 (Davila, J.); *In re RH, Inc. Sec.*

10  *Litig.*, Case No. 4:17-00554-YGR, slip op. at 6-7 (N.D. Cal. June 21, 2019), ECF No. 142 (Rogers,

11  J.). Likewise, courts have repeatedly rejected objections to the requirement that opt-outs provide this

12  information. *See In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, 2018 WL 5777503,

13  at \*6 (W.D. Tenn. Nov. 2, 2018); *In re Skilled Healthcare Grp., Inc. Sec. Litig.*, 2011 WL 280991,

14  at \*6-7 (C.D. Cal. Jan. 26, 2011); *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D.

15  483, 499 (E.D. Mich. 2008).

16          **C.      Proposed Notice Dissemination Procedures**

17          The proposed method for disseminating the notice, which is set forth in the Preliminary

18  Approval Order submitted herewith, also readily meets the standards under the Federal Rules and

19  due process. Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the

20  best notice that is practicable under the circumstances, including individual notice to all members

21  who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule

22  23(e)(1)(B) requires the court to direct notice of a class action settlement "in a reasonable manner to

23  all class members who would be bound" by a proposed settlement. Fed. R. Civ. P. 23(e)(1)(B).

24          If the Court preliminarily approves the Settlement, Splunk will provide names and addresses

25  of the record purchasers of Splunk common stock during the Class Period, for the purpose of

26  identifying and giving notice to the Settlement Class. A.B. Data will mail the Notice and Claim Form

27  (the "Notice Packet") to all such identified potential Settlement Class Members. A.B. Data will also

28  send notice to nominees who purchased Splunk common stock during the Class Period on behalf of

---

other beneficial owners. These nominee purchasers will be required to either forward the Notice Packet to their customers or provide the names and addresses of the beneficial owners to A.B. Data, which will then promptly send the Notice Packet by first-class mail to such identified beneficial owners (or by email if provided). A.B. Data will also cause the Summary Notice, which provides an abbreviated description of the Action and the proposed Settlement and explains how to obtain the more detailed Notice, to be published once in *The Wall Street Journal* and transmitted over the *PR Newswire,* a national business-oriented wire service, and will publish the Notice and Claim Form and other materials on a website to be developed for the Settlement.

In addition, the Parties have agreed that, no later than ten calendar days following the filing of the Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 (2005) *et seq.* ("CAFA"). *See* Stipulation ¶ 22. The Parties are not aware of any other such required notices to government entities or others. *See* N.D. Cal. Guid. ¶ 10.

The proposed plan for providing notice is the same method that has been used in numerous other securities class actions. Courts routinely find that comparable notice programs, combining individual notice by first-class mail to all class members who can reasonably identified, supplemented with publication notice, meet all the requirements of Rule 23 and due process. *See In re RH, Inc. Sec. Litig.*, 2019 WL 5538215, at *2 (N.D. Cal. Oct. 25, 2019) (approving similar notice plan in securities class action); *In re Portal Software, Inc.*, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (holding that "notice by mail and publication is the 'best notice practicable under the circumstances'").

### D.   Claims Processing

The net proceeds of the Settlement will be distributed to Settlement Class Members who submit eligible Claim Forms with required documentation to A.B. Data. A.B. Data will review and process the claims under the supervision of Lead Counsel, will provide claimants with an opportunity to cure any deficiencies in their claim(s) or request review of the denial of their claim(s) by the Court, and will then mail or wire claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court.

A.B. Data estimates that a total of 100,000 Notice Packets will be mailed based on A.B.

Data's analysis of the trading volume of Splunk common stock during the Class Period, and that approximately 25,000 claims will be received, based on an estimated 25% response rate, which A.B. Data finds reasonable and typical. *See* Ewashko Decl. ¶ 13. Summary information for three recent cases in which BLB&G acted as lead counsel is attached to the Uslaner Decl. as Exhibit A. These cases were selected because they were all securities class actions with roughly comparable settlements and class sizes.

### E.     Estimated Notice and Administrative Costs

A.B. Data's fees for administration of the Settlement are charged on a per-claim basis and expenses will be billed separately (including expenses for printing and mailing the Notice Packet, publishing the Summary Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone helpline). Because the costs are highly dependent on how many Notice Packets are ultimately mailed and how many Claims are ultimately received and processed, at this time only an estimate of the total Notice and Administration Costs can be provided. Based on the estimates of the number of Notice Packets expected to be mailed and claims expected to be received discussed above, A.B. Data estimates that the total Notice and Administration Costs for the Action, including broker and nominee fulfillment costs, will be approximately $350,250. *See* Ewashko Decl. ¶ 15. The Notice and Administration Costs are necessary to effectuate the Settlement and are reasonable in relation to the value of the Settlement (the estimated total administrative costs represent approximately 1% of the total Settlement Amount). The Notice and Administration Costs will be paid from the Settlement Fund. *See* Stipulation ¶¶ 14-15.

## VIII.   ATTORNEYS' FEES AND LITIGATION EXPENSES

As explained in the Notice (¶¶ 5, 54), Lead Counsel intends to seek an award of attorneys' fees of up to 25% of the Settlement Fund (*i.e.*, 25% of the Settlement Amount, plus interest earned thereon), and payment of Litigation Expenses not to exceed $325,000. Lead Counsel will provide detailed information in support of its application in its motion for attorneys' fees and expenses, to be filed with the Court 35 days before the Settlement Hearing.

1    For purposes of the Court's preliminary review in connection with this motion for

2  preliminary approval of the Settlement, Lead Counsel notes that the maximum fee that Lead Counsel

3  will request, 25%, is the benchmark percentage for attorneys' fees in the Ninth Circuit, *see Paul,*

4  *Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989), and is well within the range

5  of percentage fees awarded in comparable class securities class actions with significant contingency

6  fee risks, *see, e.g.*, *In re Volkswagen "Clean Diesel" Mktg, Sales Practices, and Prods. Liab. Litig.*,

7  2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement);

8  *Hatamian v. Advanced Micro Devices, Inc.*, No. 4:14-cv-00226-YGR, slip op. at 3 (N.D. Cal. Mar.

9  2, 2018), ECF No. 364 (awarding 25% of $29.5 million settlement).

10    Moreover, Lead Counsel has devoted over 6,000 hours to this Action, with a lodestar of

11  approximately $3.2 million, and anticipates that the lodestar multiplier for the fee requested will be

12  less than 2.5. Such a multiplier is within the range commonly awarded. *See Vizcaino v. Microsoft*

13  *Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (affirming 28% fee award representing 3.65

14  multiplier). If preliminary approval is granted, Lead Counsel will present detailed information on

15  Plaintiff's Counsel's total lodestar in connection with its fee application at final approval.

16    Lead Counsel also intends to seek payment for Litigation Expenses in an amount not to

17  exceed $325,000, which includes costs of retaining experts (of over $152,000), mediation fees,

18  online legal and factual research, and document management, among other costs. Lead Plaintiff does

19  not intend to seek an award for reimbursement for its costs under the PSLRA in this Action.

20  **IX.    PROPOSED SCHEDULE OF EVENTS**

21    In connection with preliminary approval of the Settlement, the Court must set a final approval

22  hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for

23  submitting claims or for objecting to the Settlement.[5] The Parties respectfully propose the schedule

24  set forth in Appendix A, as agreed to by the Parties and set forth in the proposed Preliminary

25  Approval Order. Lead Plaintiff requests that the Court schedule the Settlement Hearing for a date

26

27  ───────────────────

28  [5] The blanks for certain deadlines currently contained in the agreed-upon form of Notice will be filled in once the Court sets those dates and prior to mailing to Settlement Class Members.

───────────────────

MOTION FOR PRELIMINARY APPROVAL          24                    4:20-cv-08600-JST
OF SETTLEMENT

105 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.  As this motion is unopposed, the Parties request the Court consider this motion for preliminary approval on the papers at this time.

## X.      CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that this Court grant the unopposed motion for preliminary approval of the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order. Attached as Exhibit 5 is a checklist demonstrating the Parties' compliance with the Northern District of California Procedural Guidance for Class Action Settlements.

Dated:  February 7, 2023

Respectfully Submitted,

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
Caitlin C. Bozman (Bar No. 343721)
caitlin.bozman@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, California 90067
Tel: (310) 819-3470

-and-

John Rizio-Hamilton (admitted *pro hac vice*)
johnr@blbglaw.com
Adam D. Hollander (admitted *pro hac vice*)
adam.hollander@blbglaw.com
Brandon Slotkin (admitted *pro hac vice*)
brandon.slotkin@blbglaw.com
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*Counsel for Lead Plaintiff Louisiana Sheriffs'*
*Pension & Relief Fund and Lead Counsel for the*
*Settlement Class*

1

2 **KLAUSNER, KAUFMAN, JENSEN**
  **& LEVINSON**

3 Robert D. Klausner (admitted *pro hac vice*)
 bob@robertdklausner.com

4 7080 NW 4th Street
 Plantation, Florida 33317

5 Tel: (954) 916-1202
 Fax: (954) 916-1232

6

7 *Additional Counsel for Lead Plaintiff Louisiana*
 *Sheriffs' Pension & Relief Fund*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Appendix A**

**Proposed Schedule of Settlement Events**

| Event | Time for Compliance | Example Dates[6] |
|---|---|---|
| Deadline to mail Notice and Claim Form to the potential Settlement Class Members identified by Splunk and to Nominees ("Notice Date") | 15 business days after entry of Preliminary Approval Order (Preliminary Approval Order ¶ 8(b)) | April 27, 2023 |
| Deadline for publishing Summary Notice | 10 business days after Notice Date (*Id.* ¶ 8(d)). | May 11, 2023 |
| Deadline for filing final approval papers | 35 calendar days prior to Settlement Hearing (*Id.* ¶ 29) | June 15, 2023 |
| Deadline for exclusion requests and objections | 21 calendar days prior to Settlement Hearing (*Id.* ¶¶ 15, 18, 19) | June 29, 2023 |
| Deadline for filing reply papers | 7 calendar days prior to Settlement Hearing (*Id.* ¶ 29) | July 13, 2023 |
| Settlement Hearing | 105 days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter (*Id.* ¶ 5) | July 20, 2023 |
| Deadline for submitting Claim Forms | 120 calendar days after Notice Date (*Id.* ¶ 12) | August 25, 2023 |

---

[6] The "Example Dates" are representative dates that would apply if the Court entered the Preliminary Approval Order on April 6, 2023 and set the Settlement Hearing for July 20, 2023.