**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
Caitlin C. Bozman (Bar No. 343721)
caitlin.bozman@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

*Lead Counsel for Lead Plaintiff Louisiana*
*Sheriffs' Pension & Relief Fund and the Settlement*
*Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE SPLUNK INC. SECURITIES LITIGATION | Case No. 4:20-cv-08600-JST<br><br>**LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:  Hon. Jon S. Tigar<br>Courtroom: 6<br>Date:  February 22, 2024<br>Time:  2:00 p.m. |

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ............................................................................................................. ii

STATEMENT OF ISSUES TO BE DECIDED ............................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 2

PRELIMINARY STATEMENT ...................................................................................................... 2

ARGUMENT ................................................................................................................................... 5

      I.      Lead Counsel's Request for Attorneys' Fees of 25% of the Settlement Fund Is Consistent with the "Benchmark Percentage" In this Circuit .............................. 5

      II.     Additional Factors Considered By Courts Support Approval of the Requested Fee .......................................................................................................................... 7

           A.     The Quality of the Result Achieved Supports the Fee Request ................... 7

           B.     The Substantial Risks of the Litigation Support the Fee Request ............... 8

           C.     The Skill Required and the Quality of the Work Performed Support the Fee Request ........................................................................................... 10

           D.     The Contingent Nature of the Fee Supports the Fee Request .................... 12

           E.     The Reaction of the Settlement Class to Date and the Approval of Lead Plaintiff Support the Fee Request ............................................................. 13

           F.     Lodestar Cross-Check Supports the Fee Request ..................................... 14

      III.    Lead Counsel's Expenses Are Reasonable and Should Be Approved .................. 18

      IV.    Lead Counsel Requests that 100% of Its Expenses and 90% of the Attorneys' Fees Be Paid Upon Award .................................................................................. 20

CONCLUSION .............................................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Allergan, Inc. Proxy Violation Derivatives Litig.*,
2018 WL 4959014 (C.D. Cal. Aug. 13, 2018)................................................................................6

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014)..........................................................................14

*In re Amgen Inc. Secs. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)..........................................................................14

*In re Anthem, Inc. Data Breach Litig.*,
2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) .............................................................................5

*In re Apollo Inc. Secs. Litig.*,
2012 WL 1378677 (D. Ariz. Apr. 20, 2012) .............................................................................15

*Azar v. Blount Int'l, Inc.*,
2019 WL 7372658 (D. Or. Dec. 31, 2019) ...................................................................................8

*In re Banc of Cal. Sec. Litig.*,
2020 WL 1283486 (C.D. Cal. Mar. 16, 2020)..............................................................................6

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
*aff'd,* 688 F.3d 713 (11th Cir. 2012)........................................................................................12

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015)...............................................................................................12

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .......................................................................................................5

*Booth v. Strategic Realty Trust, Inc.*,
2015 WL 6002919 (N.D. Cal. Oct. 15, 2015)...............................................................................5

*Buccellato v. AT&T Operations, Inc.*,
2011 WL 3348055 (N.D. Cal. June 30, 2011).............................................................................15

*In re Capacitors Antitrust Litig.*,
2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ...........................................................................14

*In re Celera Corp. Sec. Litig.*,
2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ............................................................................17

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .................................................................6, 10, 19

*In re Equity Funding Corp. of Am. Sec. Litig.*,
  438 F. Supp. 1303 (C.D. Cal. 1977) ......................................................................................10

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019)...........................................................................8

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
  307 F.3d 997 (9th Cir. 2002) .................................................................................................5

*Fleming v. Impax Lab'ys Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022).....................................................................6, 15

*Glass v. UBS Fin. Servs., Inc.*,
  331 F. App'x 452 (9th Cir. 2009) ..........................................................................................14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...............................................................................................5

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
  2010 WL 4156342 (S.D. Cal. Oct. 15, 2010) ........................................................................14

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N. D. Cal. Dec. 17, 2018), *aff'd sub nom.*
  *Hefler v. Pekoc*, 802 Fed. App'x 285 (9th Cir. 2020)...........................................................16

*In re Heritage Bond Litig.*,
  2005 WL 1594389 (C.D. Cal. June 10, 2005) .........................................................................8

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................................................................10, 13

*Hessefort v. Super Micro Computer, Inc.*,
  2023 WL 7185778 (N.D. Cal. May 5, 2023)..........................................................................20

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................................................................17

*Hopkins v. Stryker Sales Corp.*,
  2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ...........................................................................15

*IBEW Local 697 v. Int'l Game Tech.*,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012) ............................................................................8

*Johnson v. US Auto Parts Network, Inc.*,
  2008 WL 11343481 (C.D. Cal. Oct. 9, 2008)..........................................................................9

*In re Lucent Techs., Inc. Sec. Litig.*,
  327 F. Supp. 2d 426 (D.N.J. 2004) .......................................................................................13

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND
LITIGATION EXPENSES

4:20-cv-08600-JST

*In re Lyft Inc. Sec. Litig.*,
  2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ................................................................6

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ..................................................................................................15

*In re Omnicom Grp., Inc. Sec. Litig.*,
  597 F.3d 501 (2d Cir. 2010) .....................................................................................12

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................6, 7, 10, 18

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ..................................................................................3, 5

*In re Oracle Corp. Sec. Litig.*,
  2009 WL 1709050 (N.D. Cal. June 19, 2009),
  *aff'd,* 627 F.3d 376 (9th Cir. 2010) .........................................................................12

*In re PETCO Corp. Sec. Litig.*,
  2008 WL 11508458 (S.D. Cal. Sept. 2, 2008) ..........................................................17

*Petersen v. CJ Am., Inc.*,
  2016 WL 11783674 (S.D. Cal. Oct. 18, 2016) ..........................................................15

*Phillips v. Triad Guar. Inc.*,
  2016 WL 2636289 (M.D.N.C. May 9, 2016) ............................................................17

*Pokorny v. Quixtar, Inc.*,
  2013 WL 3790896 (N.D. Cal. July 18, 2013) .............................................................6

*Rihn v. Acadia Pharm. Inc.*,
  2018 WL 513448 (S.D. Cal. Jan. 22, 2018) ...............................................................14

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ................................................................................12

*In re Silver Wheaton Corp. Sec. Litig.*,
  2020 WL 4581642 (C.D. Cal. Aug. 6, 2020) ...............................................................6

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ....................................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..................................................................................................12

*In re Tezos Sec. Litig.*,
  2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) ..........................................................6

LEAD COUNSEL'S MOTION FOR          iv                          4:20-cv-08600-JST
ATTORNEYS' FEES AND
LITIGATION EXPENSES

*In re Twitter Inc. Sec. Litig.*,
  2022 WL 17248115 (N.D. Cal. Nov. 21, 2022) ...................................................................20

*In re Tyco Int'l, Ltd. Multi-Dist. Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007).................................................................................14

*Vataj v. Johnson*,
  2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ...............................................................8, 15

*Vega v. Weatherford U.S., Ltd. P'ship*,
  2016 WL 7116731 (E.D. Cal. Dec. 7, 2016) ...................................................................19

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) ...............................................................15

*Vincent v. Reser*,
  2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ...................................................................18

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .............................................................................7, 14, 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)..................................................................16

*In re Volkswagen "Clean Diesel" Mktg, Sales Practices, and Prods. Liab. Litig.*,
  2019 WL 2077847 (N.D. Cal. May 10, 2019) ...................................................................6

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ........................................................................................8, 12

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
  2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)..................................................................17

**STATUTES & RULES**

Fed. R. Civ. P. 23........................................................................................................ *passim*

Private Securities Litigation Reform Act ("PSLRA"),
  15 U.S.C. § 78u-4 ...................................................................................................4, 6, 9, 10

**OTHER AUTHORITIES**

NERA ECONOMIC CONSULTING, RECENT TRENDS IN SECURITIES CLASS ACTION
  LITIGATION: 2022 FULL-YEAR REVIEW (2023) ..........................................................6

### NOTICE OF MOTION FOR AN AWARD OF
### ATTORNEYS' FEES AND LITIGATION EXPENSES

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and the Court's Corrected Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 134) (the "Preliminary Approval Order"), Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("Lead Counsel" or "BLB&G") will and hereby does move the Court, before the Honorable Jon S. Tigar, on February 22, 2024, at 2:00 p.m. in Courtroom 6 of the Ronald V. Dellums Federal Building and United States Courthouse, 1301 Clay Street, Oakland, CA, 94612 or at such other location and time as set by the Court, for an Order awarding attorneys' fees and litigation expenses incurred in the above-captioned securities class action (the "Action").

This motion is based on the following Memorandum of Points and Authorities, the accompanying Declaration of Jonathan D. Uslaner in Support of (I) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Uslaner Declaration" or "Uslaner Decl.") and its exhibits, all other prior pleadings and papers in this Action, arguments of counsel, and such additional information or argument as may be required by the Court.  A proposed Order will be submitted with Lead Counsel's reply submission, after time for any objections has passed.

### STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the Court should approve as fair and reasonable Lead Counsel's application for an attorneys' fee award for all Plaintiffs' Counsel in the amount of 25% of the Settlement Fund (i.e., the Settlement Amount, plus interest accrued thereon), net of Plaintiffs' Counsel's litigation expenses.

2.    Whether the Court should approve Lead Counsel's request for payment of $239,754.85 in litigation expenses incurred in this Action.

## MEMORANDUM OF POINTS AND AUTHORITIES

Court-appointed Lead Counsel for the Settlement Class and counsel for Lead Plaintiff Louisiana Sheriffs Pension & Relief Fund ("Lead Plaintiff") respectfully submits this memorandum of law in support of its application for (a) an award of attorneys' fees for Plaintiffs' Counsel in the amount of 25% of the Settlement Fund, net of counsel's Litigation Expenses awarded by the Court; and (b) payment of $239,754.85 in litigation expenses that were reasonably incurred by Lead Counsel in prosecuting and resolving the Action.[1]

## PRELIMINARY STATEMENT

Plaintiffs' Counsel have vigorously litigated this securities class action over the last three years on a fully contingent basis, without receiving any compensation. The litigation was hard fought, and Plaintiffs' Counsel faced risks from the outset that they would be unable to obtain a meaningful recovery for Lead Plaintiff and the class. As such, Plaintiffs' Counsel had to—and did—dedicate very substantial efforts to the Action from its outset. Lead Counsel conducted an extensive investigation, prepared a detailed consolidated complaint based on that investigation, opposed a heavily contested motion to dismiss, filed Lead Plaintiff's motion for class certification, and conducted substantial fact discovery.

Through Lead Counsel's sustained litigation efforts, it achieved the proposed $30 million Settlement for the benefit of Lead Plaintiff and the Settlement Class. The $30 million recovery represents a very favorable result for the Settlement Class and provides meaningful and certain compensation to Settlement Class Members while avoiding the significant risks and delay of continued litigation, including the risk that there might be no recovery at all. Having achieved this significant monetary recovery after three years of litigating this case without any payment, Lead Counsel now applies for attorneys' fees in the amount of 25% of the Settlement Fund net of

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated January 30, 2023 (ECF No. 117-1) (the "Stipulation"), or the Uslaner Declaration. Citations to "¶ __" in this memorandum refer to paragraphs in the Uslaner Declaration and citations to "Ex. __" refer to exhibits to the Uslaner Declaration. "Plaintiffs' Counsel" means Lead Counsel BLB&G and Klausner, Kaufman, Jensen & Levinson, additional counsel for Lead Plaintiff.

LEAD COUNSEL'S MOTION FOR        2        4:20-cv-08600-JST
ATTORNEYS' FEES AND
LITIGATION EXPENSES

litigation expenses, as well as payment for the litigation expenses that Lead Counsel incurred in prosecuting the Action.

The Ninth Circuit has long recognized that, in class actions resulting in a common fund like this one, a percentage award is appropriate and an award of 25% of the settlement amount is the "benchmark." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). The requested 25% fee is consistent with this "benchmark" and is well within the range of fees awarded in comparable class action cases. The requested fee percentage is also supported by factors often considered by courts in determining the reasonableness of the fee, including the significant risks presented by this contingent fee litigation, the quality of the result achieved, the extent and quality of Lead Counsel's efforts, and the lodestar cross-check.

Lead Counsel prosecuted the Action on a contingency-fee basis and bore the risk that counsel would receive no compensation. As discussed in the Declaration of Jonathan D. Uslaner (the "Uslaner Declaration"), there were multiple risks inherent in the Action. The riskiness of the Action is highlighted by, among other things, the fact that the Court dismissed all claims related to statements made in Splunk's SEC written statements at the motion to dismiss stage; the Company never restated any of its financials; and there was no parallel SEC or DOJ enforcement action ever brought related to the alleged fraud.

As discussed below and in the Uslaner Declaration, Defendants strenuously argued that their statements were not false when made, were not material to investors, and not made with the required scienter. ¶¶ 54-64. There were risks from the outset that a factfinder might support Defendants' view on one of these issues—in which case there would be no recovery at all. Plaintiffs' Counsel also faced notable risks in proving loss causation and damages in the Action. In particular, there were serious challenges in proving that Splunk's earning miss on December 2, 2020 and the resultant stock drop were caused by the alleged suspension of marketing spending, hiring freeze, and layoffs that were at issue in this case—and not by other non-fraud information that was revealed about Splunk's business the same day. And, even if Lead Plaintiff could establish a causal connection, quantifying the amount of damages resulting from the alleged fraud

(as opposed to other non-fraud-related news) would be challenging in this case. ¶¶ 65-73. Thus, Lead Plaintiff would have faced serious challenges at summary judgment, trial, and on appeal in prevailing on its claims, including damages. Plaintiffs' Counsel were able to overcome these hurdles and secure a meaningful recovery for the Settlement Class.

The requested attorneys' fees are also supported by the substantial efforts that Plaintiffs' Counsel dedicated to the Action to achieve the Settlement over the last three years. Among other things, Plaintiffs' Counsel (1) conducted an extensive investigation into the claims asserted, which included a detailed review of public documents, interviews with 240 former Splunk employees, and consultation with experts; (2) drafted a detailed consolidated complaint sufficient to satisfy the heightened pleading standards of the Private Securities Litigation Reform Act (the "PSLRA"); (3) researched and briefed Lead Plaintiff's opposition to Defendants' motion to dismiss; (4) researched and briefed Lead Plaintiff's motion for class certification; (5) conducted extensive fact discovery, including propounding detailed document requests to Defendants and subpoenas to third parties and obtaining and reviewing substantial document productions; (6) successfully moved to compel Defendants to produce additional documents; (7) worked with experts, including on thorny issues of loss causation and damages; and (8) engaged in extensive arm's-length settlement negotiations to achieve the Settlement, including a formal mediation process.

Plaintiffs' Counsel dedicated a total of over 6,360 hours of attorney and other professional staff time over the course of litigation to bring the Action to this resolution. ¶ 107. In class actions like this one, which are prosecuted on a contingent-fee basis, courts commonly award fees representing a positive "multiplier" of counsel's lodestar of up to four times the amount of their lodestar to compensate counsel for taking the risks of non-recovery and other factors. Here, the requested fee represents a multiplier of 2.1 of Plaintiffs' Counsel's lodestar, which is well within the range of multipliers typically awarded in comparable cases. *Id.*

Finally, Lead Counsel seeks to recover the litigation expenses that it incurred in prosecuting and resolving this litigation, which totaled $239,754.85. As discussed below, these

expenses were reasonable and necessary for the prosecution and resolution of the litigation and are of the type that are routinely charged to clients in non-contingent litigation.

For the reasons set forth herein, Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of 25% of the Settlement Fund, net of expenses, and payment of litigation expenses in the amount of $239,754.85.

## ARGUMENT

### I.    Lead Counsel's Request for Attorneys' Fees of 25% of the Settlement Fund Is Consistent with the "Benchmark Percentage" In this Circuit

The Ninth Circuit has established that, in common-fund cases such as this one, the "benchmark" percentage attorney fee award is 25% of the settlement fund. *See, e.g.*, *Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949 ("in this circuit, the benchmark percentage is 25%"); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure"); *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) ("We have established a 25 percent 'benchmark' in percentage-of-the-fund cases"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("we established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases").

Courts in this District have found fee awards in the amount of the 25% benchmark to be "presumptively reasonable." *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *4 (N.D. Cal. Aug. 17, 2018) ("[I]t is well established that 25% of a common fund is a presumptively reasonable amount of attorneys' fees."); *Booth v. Strategic Realty Trust, Inc.*, 2015 WL 6002919, at *7 (N.D. Cal. Oct. 15, 2015) ("[T]he 25% award requested by Class Counsel is equal to the 'benchmark' percentage for a reasonable fee award in the Ninth Circuit. Such a fee award is 'presumptively reasonable.'") (citations omitted).

LEAD COUNSEL'S MOTION FOR                5                4:20-cv-08600-JST
ATTORNEYS' FEES AND
LITIGATION EXPENSES

Indeed, courts have found that, "in most common fund cases, the award *exceeds* that benchmark" of 25%. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see also In re Allergan, Inc. Proxy Violation Derivatives Litig.*, 2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018) ("The Ninth Circuit uses a 25% benchmark in common fund class actions, and 'in most common fund cases, the award exceeds that benchmark,' with a 30% award the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage.'"); *Pokorny v. Quixtar, Inc.*, 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013) ("The Ninth Circuit uses a 25% baseline in common fund class actions, and 'in most common fund cases, the award exceeds that benchmark,' with a 30% award the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage.'"). Accordingly, the fact that the 25% fee request is consistent with the Ninth Circuit benchmark supports the reasonableness of the fee.

The 25% fee requested here is also well within the range of percentage fees typically awarded in securities class actions and other complex class actions in the Ninth Circuit with recoveries comparable to the $30 million achieved here. *See, e.g.*, *In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at *11 (N.D. Cal. Aug. 7, 2023) (awarding 25% of $25 million settlement); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (awarding 30% of $33 million settlement); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding 33.3% of $25 million settlement); *In re Silver Wheaton Corp. Sec. Litig.*, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *In re Banc of Cal. Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of $19.75 million settlement); *In re Volkswagen "Clean Diesel" Mktg, Sales Practices, and Prods. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *22 (N.D. Cal. Feb. 11, 2016) (awarding 25% of $23 million settlement).

Moreover, a statistical review of all PSLRA settlements from 2013 to 2022 reveals that the median fee award in settlements ranging from $25 million to $100 million was 25%. *See* NERA

ECONOMIC CONSULTING, RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2022 FULL-YEAR REVIEW, at 21 (2023) (Ex. 6A).

## II.    Additional Factors Considered By Courts Support Approval of the Requested Fee

The reasonableness of Lead Counsel's 25% fee request is further confirmed by additional factors considered by courts in this Circuit, including (1) the results achieved, (2) the risks of litigation, (3) the skill required and the quality of work, (4) the contingent nature of the fee and the financial burden carried by the plaintiffs, (5) awards made in similar cases, (6) the class's reaction, and (7) a lodestar cross-check. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *Omnivision*, 559 F. Supp. 2d at 1046-48.

### A.    The Quality of the Result Achieved Supports the Fee Request

Courts consider the results achieved in assessing a fee award request. *See Vizcaino*, 290 F.3d at 1048 ("results are a relevant" factor in awarding attorneys' fees). Lead Counsel respectfully submits that the $30 million cash settlement is a very favorable result for the Settlement Class in this case, especially when considering the risk of a significantly lower recovery—or no recovery at all—if the case proceeded through summary judgment, trial, and the inevitable appeals.

The $30 million Settlement is approximately four times as large as the median securities class action settlement in the Ninth Circuit. ¶ 74. The Settlement is also very favorable when considered against the risks of litigation and the range of potential damages that could be proved at trial.

As previously detailed (see ECF No. 131), Lead Plaintiff and its damages expert estimate the range of realistic maximum damages in this case, accounting for consideration of loss causation, is between $146 million and $586 million. Accordingly, the Settlement achieved here represents a favorable recovery of approximately 5% to 20.5% of the Settlement Class's realistic maximum damages, which assumed that Lead Plaintiff would have complete success on all issues of falsity, materiality, and scienter at summary judgment and trial for all alleged misstatements, which was far from certain. ¶¶ 75-82. Courts in this Circuit have approved settlements with

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND
LITIGATION EXPENSES
7
4:20-cv-08600-JST

comparable or lower percentage recoveries than obtained here as fair and reasonable. *See, e.g.*, *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement recovering "slightly more than 2% of [] estimated damages" and noting that it was "consistent with the 2-3% average recovery that the parties identified in other securities class action settlements"); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (approving settlement representing between 5% and 9.5% of maximum potential damages); *Azar v. Blount Int'l, Inc.*, 2019 WL 7372658, at *7 (D. Or. Dec. 31, 2019) (approving settlement recovering 4.63% to 7.65% of the class's total estimated damages); *IBEW Local 697 v. Int'l Game Tech.,* 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement representing "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered" and finding it "within the median recovery in securities class actions settled in the last few years").

Here, achieving a full recovery through trial was far from certain. Defendants advanced serious arguments regarding all elements of liability, loss causation, and damages that, if accepted, would have substantially lowered the realistic maximum damages or eliminated them entirely. ¶¶ 50-73. Additionally, proving damages at the high-end of the range at trial would require that Lead Plaintiff prove that the entire portion of the price drop that certain securities analysts had ascribed to Splunk's increased "execution risk" was attributable to the marketing suspension, hiring freeze, and layoffs that Lead Plaintiff alleged were not properly disclosed—which was likely to be challenging. ¶¶ 79-80.

Given the significant risks of establishing liability and loss causation here, Lead Counsel believes this level of recovery represents a very favorable result for the Settlement Class. Accordingly, Lead Counsel believes that the quality of the result achieved supports the fee requested.

## B.    The Substantial Risks of the Litigation Support the Fee Request

"The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award." *In re Heritage Bond Litig.*, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005); *see also, e.g.*, *In re Washington

*Pub. Power Supply Sys. Sec. Litig.* ("*WPPSS*"), 19 F.3d 1291, 1299-1301 (9th Cir. 1994); *Omnivision*, 559 F. Supp. 2d at 1047.

Lead Counsel faced significant risks in this Action.  This action was subject to the pleading requirements of the PSLRA.  *See Johnson v. US Auto Parts Network, Inc.*, 2008 WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008) (noting that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"). To satisfy the PSLRA's requirements, Lead Counsel was required to—and did—conduct a substantial investigation, which included (among other things) interviewing 240 former Splunk employees, with certain of their accounts featured in the complaint.  To satisfy the PSLRA's requirements, Lead Counsel also needed to consult extensively with experts on issues of loss causation and damages, as well as conduct a thorough review of Splunk's public statements and stock price movements.

Despite this significant effort, some of the many risks in the Action were realized at the motion to dismiss stage when Lead Plaintiff's claims arising out statements in Splunk's SEC filing were dismissed as protected by the PSLRA "safe harbor" provisions.  ¶¶ 21-22.

As discussed in greater detail in the Uslaner Declaration and the Settlement Memorandum, many substantial challenges remained.  This was not a case in which Splunk ever restated its financials, nor was there ever any parallel SEC or other government action brought against Splunk or any of the Defendants for the alleged fraud.  Lead Plaintiff would have none of those tailwinds in attempting to prove that Defendants' statements were materially false; that Defendants knew that their statements were false when made or were deliberately reckless in making the statements; and that the disclosures concerning Defendants' false and misleading statements caused declines in the price of Splunk's stock.  ¶ 60.

Defendants had substantial arguments concerning each of these issues.  For example, Defendants had argued and would have continue to argue that they made no false or misleading statements, because, among other things, Splunk did, in fact, continue to invest in marketing and hire new personnel throughout the entire Class Period and its layoffs were both minimal and disclosed.  ¶¶ 54-60.  Defendants would also argue that the challenged statements were immaterial

and too generalized to be actionable. ¶ 61.  In addition, Defendants would have argued that Lead Plaintiff could not prove intent to defraud, or scienter, because Defendants acted in good faith and did not have any reason to believe their statements were misleading when made.  ¶¶ 62-64.

Lead Plaintiff also faced substantial challenges in proving that the revelation of the truth about Defendants' allegedly false and misleading statements caused the declines in the price of Splunk's stock, and in establishing the amount of class-wide damages.  ¶¶ 65-73.  Defendants would have argued that the decline in Splunk's stock price was not caused by revelation of the truth about the alleged misstatements, but by various other factors—*e.g.*, lower-than-expected revenue for the quarter, which was in turn directly caused by the failure to close certain deals. ¶¶ 66-70.  Defendants would have also argued that, even if some portion of the price decline were caused by revelation of a suspension in marketing or hiring freeze, it was small compared to the decline resulting from other factors, and any purported damages to Lead Plaintiff and the Settlement Class were minimal.  ¶ 71.  These risks further support the requested fee request of the benchmark percentage.

### C.     The Skill Required and the Quality of the Work Performed Support the Fee Request

Courts have recognized that the "'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *Zynga, Inc.*, 2016 WL 537946, at \*17; *see also Vizcaino*, 290 F.3d at 1048. "'This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss.'"  *Zynga*, 2016 WL 537946, at \*17 (quoting *Omnivision*, 559 F. Supp. 2d at 1047).  In considering this factor, courts also consider the quality and vigor of opposing counsel. *See, e.g.*, *In re Heritage Bond Litig.*, 2005 WL 1594403, at \*20 (C.D. Cal. June 10, 2005) ("the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work"); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly").

Lead Counsel is among the most experienced and skilled practitioners in the securities-litigation field, and the firm has a long and successful track record in securities cases throughout the country, including within this Circuit.  ¶¶ 109-111.  Industry sources consistently rank Lead Counsel as one of the top plaintiffs' firms in the country.  ¶ 109.  Lead Counsel has served as lead or co-lead counsel in more "Top 100 U.S. Class Action Settlements of All Time" than any other law firm in history.  *Id.*  Lead Counsel's successes in this Circuit and elsewhere include, among others, *In re McKesson HBOC, Inc. Securities Litigation*, No. 99-cv-20743 (N.D. Cal.), in which BLB&G recovered $1.05 billion for investors, the largest recovery in a securities class action in the Ninth Circuit; *Hefler v. Wells Fargo & Co.*, No. 16-cv-5479 (N.D. Cal.), in which BLB&G recovered $480 million for investors; *In re Allergan, Inc. Proxy Violation Securities Litigation*, No. 14-cv-2004 (C.D. Cal.), in which BLB&G recovered $250 million for investors; and *In re Wells Fargo & Co. Securities Litigation*, 1:20-CV-04494 (GHW) (S.D.N.Y.), in which BLB&G recovered $1 billion for investors.

Lead Counsel's experience in complex securities cases facilitated Lead Counsel's ability to negotiate the Settlement, ultimately resulting in the $30 million recovery.  Lead Counsel achieved this recovery in this Action by litigating against highly skilled and well-respected lawyers from Sidley Austin LLP, who vigorously advocated for their clients.

Lead Counsel's efforts over the past three years of litigation included (1) an extensive investigation of the claims at issue; (2) research and preparation of the detailed amended complaint; (3) opposing Defendants' motion to dismiss through detailed briefing; (4) drafting a motion for class certification, including assisting in the preparation of a related expert report; (5) conducting substantial fact discovery, which included preparing and exchanging initial disclosures and document requests, serving subpoenas on multiple third-parties, and obtaining and reviewing Defendants' substantial document productions; (6) succeeding on a motion to compel production of additional documents from Defendants and third parties; (7) working with experts in loss causation and damages; and (8) engaging in extended settlement negotiations, including

preparing a detailed mediation statement and participating in a full-day mediation with Jed D. Melnick of JAMS.  ¶¶ 11-46.

### D.      The Contingent Nature of the Fee Supports the Fee Request

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."  *WPPSS*, 19 F.3d at 1299; *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) ("when counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award").  The Supreme Court has emphasized that private securities actions, like this one, "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318-19 (2007).

As courts recognize, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expending thousands of hours and millions of dollars, yet received no remuneration whatsoever despite their diligence and expertise.  *See, e.g.*, *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 504 (2d Cir. 2010) (affirming grant of summary judgment in favor of defendant on loss-causation grounds after years of litigation); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050, at *34 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation), *aff'd,* 627 F.3d 376 (9th Cir. 2010).

Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion.  *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict), *aff'd,* 688 F.3d 713 (11th Cir. 2012).

Here, Plaintiffs' Counsel committed significant resources, time, and money to prosecute this Action vigorously and successfully for the Settlement Class's benefit for three years—without

any payment or any guarantee of compensation. Lead Counsel's fee award and expense reimbursement in this Action has always been at risk in the case and contingent on this Court's discretion in awarding fees and expenses. If Lead Counsel had been unsuccessful at the motion to dismiss stage, or lost at summary judgment or at trial, Lead Counsel would have received nothing for its years of diligent prosecution of the claims for the benefit of the Settlement Class. This significant contingency-fee risk further supports the requested fee.

### E.    The Reaction of the Settlement Class to Date and the Approval of Lead Plaintiff Support the Fee Request

The reaction of the Settlement Class to the proposed Settlement and the fee motion also supports approval of the fee request. *See Heritage Bond*, 2005 WL 1594403, at *21 ("The existence or absence of objectors to the requested attorneys' fee is a factor i[n] determining the appropriate fee award."). A total of 291,713 copies of the Notice and Claim Form have been sent to potential Settlement Class Members and their nominees, and the Court-approved Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire* on October 31, 2023. *See* Ewashko Decl. (Ex. 4) at ¶¶ 9, 12. The Notice informed potential Settlement Class Members that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund. *See* Notice (Ewashko Decl. Ex. A) at ¶¶ 5, 54. The Notice further informed Settlement Class Members of their right to object to the request for attorneys' fees and expenses. *See id*. at p. 2 and ¶¶ 62-63. Although the deadline for filing any objections will not run until January 25, 2024, to date, no Settlement Class Member has filed an objection to the fees and expenses requested. Uslaner Decl. ¶¶ 118, 126.

In addition, Lead Plaintiff, which took an active role in the litigation and closely supervised the work of Lead Counsel, supports the approval of the requested fee based on the result obtained, the efforts of Lead Counsel and the risks in the Action. *See* McGee Decl. (Ex. 2) at ¶¶ 5, 7. Lead Plaintiff's endorsement of the fee request further supports its approval. *See, e.g.*, *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs,

LEAD COUNSEL'S MOTION FOR                13                4:20-cv-08600-JST
ATTORNEYS' FEES AND
LITIGATION EXPENSES

both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request.").

### F.   Lodestar Cross-Check Supports the Fee Request

"Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness." *In re Amgen Inc. Secs. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016); *see also HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, 2010 WL 4156342, at *2 (S.D. Cal. Oct. 15, 2010) ("Courts have found that a lodestar analysis is not necessary when the requested fee is within the accepted benchmark."). When the lodestar is used as a cross-check, the "focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multi-Dist. Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *see In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *23 (C.D. Cal. July 28, 2014) ("'In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours.'"); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009).

Fee awards in class actions with contingency risks, such as this one, routinely represent positive multipliers of counsel's lodestar to account for the possibility of non-payment. *See Rihn v. Acadia Pharm. Inc.*, 2018 WL 513448, at *6 (S.D. Cal. Jan. 22, 2018) ("Courts have 'routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases'" because, in doing so, it provides a "'financial incentive to accept contingent-fee cases which may produce nothing.'"). Courts award lodestar multipliers up to four times the counsel's lodestar, and sometimes even more. *See Vizcaino*, 290 F.3d at 1051-52 & n.6 (affirming 28% fee award representing 3.65 multiplier and finding that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases," and that, when the lodestar is used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing examples of higher multipliers); *see also In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("a

lodestar multiplier of around 4 times has frequently been awarded in common fund cases"); *Petersen v. CJ Am., Inc.*, 2016 WL 11783674, at *1 (S.D. Cal. Oct. 18, 2016) ("the majority of fee awards in the district courts in the Ninth Circuit are 1.5 to 3 times higher than lodestar"); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding fee representing 4.3 multiplier).

As detailed in the Uslaner Declaration, Plaintiffs' Counsel spent 6,360.8. hours of attorney and other professional time prosecuting the Action for the benefit of the Settlement Class through November 30, 2023.  ¶ 107.  Plaintiffs' Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney or other professional by his or her current hourly rate, is $3,506,218.75. *Id*.  It is well established that it is appropriate to calculate counsel's lodestar based on current, rather than historical rates, as a method of compensating for the delay in payment and the loss of interest on the funds.  *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *WPPSS*, 19 F.3d at 1305; *In re Apollo Inc. Secs. Litig.*, 2012 WL 1378677, at *7 n.2 (D. Ariz. Apr. 20, 2012).

The requested fee of 25% of the Settlement Fund, net of litigation expenses, is $7,440,061 (plus interest) and, therefore, represents a multiplier of 2.1 on Plaintiffs' Counsel's lodestar.  ¶ 107. This multiplier falls well within the range of multipliers awarded in cases like this with substantial contingency fee risks.  *See, e.g., Vizcaino*, 290 F.3d at 1051 (a 3.65 multiplier was "within the range of multipliers applied in common fund cases"); *Impax*, 2022 WL 2789496, at *9 (awarding 30% of $33 million settlement representing a 2.6 multiplier); *Vataj v. Johnson*, 2021 WL 5161927, at *9 (approving 2.5 multiplier); *In re VeriFone Holdings, Inc. Sec. Litig.*, 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014) (approving fee award 4.3 times lodestar).

Consistent with the Northern District of California Procedural Guidance for Class Action Settlements, the Uslaner Declaration includes a breakdown of the hours that each attorney and other professional devoted to the litigation into 13 distinct projects undertaken over the course of the litigation.  *See* ¶ 108.  In addition, for each attorney whose time is included in Lead Counsel's

lodestar, a summary of the principal tasks that he or she worked on in the litigation has been provided. *See* Ex. 5A-2. Moreover, Plaintiffs' Counsel have not included in the fee application *any* time expended preparing the motion for fees and expenses. ¶ 106. Lead Counsel also made other reductions to its time in the interest of billing judgment, including, for example, removing timekeepers with fewer than 10 hours dedicated to the Action as well as removing certain other time entries. Ex. 5A, at ¶ 4.

The hourly rates used to calculate Plaintiffs' Counsel's lodestar are also reasonable. The hourly rates for Lead Counsel range from $850 to $1,250 for partners, from $775 to $825 for senior counsel; $425 to $650 for associates, and from $325 to $400 for paralegals and case managers. *See* Ex. 5A-1. The blended hourly rate for all timekeepers in the application is $551. Lead Counsel believes these rates are within the range of reasonable fees for attorneys working on sophisticated class action litigation in this District. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 17, 2018) (approving Lead Counsel's then-applicable 2018 rates, ranging from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates, and $245 to $350 for paralegals, as reasonable for purposes of lodestar cross-check), *aff'd sub nom. Hefler v. Pekoc*, 802 Fed. App'x 285 (9th Cir. 2020); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following lodestar cross-check where blended average hourly rate was $529 per hour, with hourly rates ranging up to $1,600 for partners and up to $790 for associates).

Lead Counsel's staff attorneys are full-time employees of the firm (not "contract" employees) and were integrally involved in the prosecution of this case. *See* Ex. 5A at ¶ 7. These attorneys are highly experienced, as set forth in their attorney biographies. *See* Ex. 5A-3, at pp. 12-14. Their hourly rates ranged from $375 to $425 per hour, which is reasonable based on the market rates for staff attorneys working in similar contexts. *See, e.g.*, *In re Diamond Sports Grp., LLC*, Case No. 23-90116 (CML), Sixth Monthly Fee Statement of Paul, Weiss, Rifkind, Wharton & Garrison LLP (Bankr. S.D. Tex. Oct. 24, 2023), ECF No. 1310 (Ex. 6B) (staff attorneys at Paul Weiss in bankruptcy matter had rates ranging from $595 to $625); *In re RML, LLC*, Case No. 22-

10784 (SDJ), Third Interim & Final Fee Application of Paul, Weiss, Rifkind, Wharton & Garrison LLP (Bankr. S.D.N.Y. June 15, 2023), ECF No. 163 (Ex. 6C) (staff attorneys at Paul Weiss in 2023 bankruptcy matter had rates ranging from $595 to $625); *In re Twitter Inc. Sec. Litig.*, Case No. 4:16-cv-05314-JST (SK), slip op. at 2 (N.D. Cal. Nov. 21, 2022), ECF No. 670 (approving fee award in securities class action that included lodestar crosscheck that included Staff Attorneys' 2021 rates ranging from $335 to $425 per hour with a blended rate of $388 per hour).

Lead Counsel's lodestar does not include any of the significant time devoted to this Action by Lead Counsel's secretarial and administrative staff, document clerks, copy room clerks, and IT staff, who performed clerical, administrative, or support roles.

A small percentage of Plaintiffs' Counsel lodestar (14%) is comprised of time extended by Lead Counsel's in-house professionals other than attorneys and paralegals, such as investigators and financial analysts, who have been included in the lodestar on an hourly basis based on the meaningful work they dedicated to this case. *See* biographies at pages 14-16 of Ex. 5A-3. Courts have regularly approved the inclusion of investigators and financial analysts (and other similar professionals doing non-clerical work) in class counsel's lodestar in securities class actions and other similar cases. *See, e.g., Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *5 (S.D.N.Y. Aug. 18, 2017) (approving fee based on lodestar that included time for "financial and economic analysts, investigators, [and] paralegals"); *Phillips v. Triad Guar. Inc.*, 2016 WL 2636289, at *5 (M.D.N.C. May 9, 2016) (approving fee based on lodestar that included time for "economic analysts, a research analyst, [and] an investigator"); *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *10 (N.D. Cal. Nov. 20, 2015) (including hours from "Forensic Accountants" and "Economic Analysts" in lodestar analysis); *In re PETCO Corp. Sec. Litig.*, 2008 WL 11508458, at *4 (S.D. Cal. Sept. 2, 2008) (approving fee based on lodestar that included time for "investigators").

The reasonableness of Lead Counsel's rates is further underscored here by the significantly higher rates charged by defense counsel in this case. *See In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *14 (S.D.N.Y. Dec. 19, 2014) (approving as reasonable hourly rates in

| LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES | 17 | 4:20-cv-08600-JST |

securities action that were "comparable to . . . defense-side law firms litigating matters of similar magnitude"). According to two recent filings by Sidley Austin LLP, counsel for Defendants here, its partner rates range from $1,300 to $1,850; of counsel and senior counsel rates range from $1,300 to $1,725; associate rates range from $680 to $1,275; and paralegal rates range from $540 to $555. *See In re AppHarvest Prods. LLC*, Case No. 23-90745 (CM), First & Final Fee Application of Sidley Austin LLP (Bankr. S.D. Tex. Oct. 27, 2023), ECF No. 611 (Ex. 6D) (reporting blended hourly rate of $1,116.86); *In re Tricida, Inc.*, Case No. 23-10024 (JTD), Fifth Monthly & Final Fee Application of Sidley Austin LLP (Bankr. D. Del. June 21, 2023), ECF No. 560 (Ex. 6E) (blended hourly rate of $1,173.03). These rates are substantially higher—at all levels—than the rates used by Plaintiffs' Counsel to calculate their lodestar.

**III.    Lead Counsel's Expenses Are Reasonable and Should Be Approved**

"Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent v. Reser,* 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013). In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

The expenses sought are of the type that are charged to hourly paying clients and were required to prosecute the litigation. These expense items were incurred separately by Lead Counsel and are not duplicated in the firm's hourly rates. From the beginning of the case, Lead Counsel was aware that it might not recover any of its expenses and would not recover anything unless and until the Action was successfully resolved. Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate it for the lost use of the funds advanced to prosecute this Action. Thus, Lead Counsel was motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action. ¶ 120.

LEAD COUNSEL'S MOTION FOR              18                    4:20-cv-08600-JST
ATTORNEYS' FEES AND
LITIGATION EXPENSES

As discussed in detail in the Uslaner Declaration, Lead Counsel incurred a total of $239,754.85 in litigation expenses in litigating the Action over the past three years. ¶ 119. The expenses for which payment is sought were reasonable and necessary for the prosecution and resolution of the litigation and are of the types that are routinely charged to clients in non-contingent litigation. These include expert fees, document-management costs, online research, court fees, and telephone and postage expenses. ¶¶ 121-124.

Of the total expenses, Lead Counsel incurred $170,367, or approximately 71% of the total litigation expenses, on experts in the areas of financial economics (including damages, loss causation, and market efficiency)—Dr. Steven Feinstein and his team at Crowninshield Financial Research. ¶ 122. The combined costs for online legal and factual research amounted to $47,249.82, or approximately 20% of the total expenses. ¶ 123. The other expenses are also the types of expenses that are necessarily incurred in litigation and routinely charged to clients. These expenses included document management costs, court fees, long-distance telephone calls, and postage and express mail. A complete breakdown by category of the expenses incurred by Lead Counsel is set forth in Exhibit 5A-7 to the Uslaner Declaration.

Courts routinely approve litigation expenses such as these. *See, e.g.*, *Vega v. Weatherford U.S., Ltd. P'ship*, 2016 WL 7116731, at *17 (E.D. Cal. Dec. 7, 2016) ("legal research expenses, copying costs, mediation fees, postage, federal express charges, expert fees, . . . and travel expenses," among others, were all categories of expenses "routinely reimbursed" in class actions); *Zynga*, 2016 WL 537946, at *22 ("courts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation).

The Notice provided to potential Settlement Class Members informed them that Lead Counsel intended to apply for the payment of litigation expenses in an amount not to exceed $325,000. Notice ¶¶ 5, 54. The total amount of expenses sought, $239,754.85, is substantially less than the amount stated in the Notice. The deadline for objecting to the fee and expense

LEAD COUNSEL'S MOTION FOR      19      4:20-cv-08600-JST
ATTORNEYS' FEES AND
LITIGATION EXPENSES

application is January 25, 2024. To date, there have been no objections to the request for attorneys' fees or litigation expenses.

## IV.     Lead Counsel Requests that 100% of Its Expenses and 90% of the Attorneys' Fees Be Paid Upon Award

Consistent with Court's practices, Lead Counsel requests that 100% of the Litigation Expenses and 90% of the attorneys' fees awarded by the Court be paid upon approval of the Settlement and entry of the order approving the fee and expense award, with the remaining 10% of the attorneys' fees to be paid upon entry of the Post-Distribution Accounting (following distribution of the Net Settlement Fund to eligible claimants). *See Hessefort v. Super Micro Computer, Inc.,* 2023 WL 7185778, at *11 (N.D. Cal. May 5, 2023); *In re Twitter Inc. Sec. Litig.*, 2022 WL 17248115, at *1 (N.D. Cal. Nov. 21, 2022).

## CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees of 25% of the Settlement Fund net of expenses and award Litigation Expenses to Plaintiffs' Counsel in the amount of $239,754.85.

Dated: December 7, 2023

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ *Jonathan D. Uslaner*
JONATHAN D.  USLANER (Bar No. 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
Caitlin C. Bozman (Bar No. 343721)
caitlin.bozman@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

*-and-*

John Rizio-Hamilton (admitted *pro hac vice*)
johnr@blbglaw.com
Brandon Slotkin (admitted *pro hac vice*)
brandon.slotkin@blbglaw.com
1251 Avenue of the Americas

New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*Counsel for Lead Plaintiff Louisiana Sheriffs' Pension & Relief Fund and the Settlement Class*

**KLAUSNER, KAUFMAN, JENSEN
   & LEVINSON**
Robert D. Klausner (admitted *pro hac vice*)
bob@robertdklausner.com
7080 NW 4th Street
Plantation, FL 33317
Tel: (954) 916-1202
Fax: (954) 916-1232

*Additional Counsel for Lead Plaintiff Louisiana Sheriffs' Pension & Relief Fund*