UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SPLUNK INC. SECURITIES LITIGATION | Case No. 20-cv-08600-JST<br><br>**ORDER GRANTING LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>Re: ECF No. 136 |

Before the Court is Lead Plaintiff Louisiana Sheriffs' Pension & Relief Fund's ("Louisiana Sheriffs") unopposed motion for final approval of a class action settlement and plan of allocation. ECF No. 136. The Court previously granted a motion for preliminary approval of the settlement, ECF No. 134, and held a fairness hearing on February 22, 2024. The Court will grant the motion.

## I.     BACKGROUND

### A.     Factual Background

Lead Plaintiff brings this federal securities class action against Defendants Splunk Inc. ("Splunk"), Splunk's Chief Executive Officer Douglas Merritt, and Splunk's Chief Financial Officer Jason Child under Section 10(b) of the Securities Exchange Act of 1934. ECF No. 117 at 11. It brings these claims on behalf of all persons who purchased Splunk common stock between May 21, 2020, to December 2, 2020, inclusive ("Class Period"). ECF No. 117-1 ¶ 1(h).

The factual and procedural background to this putative class action is more fully described in the Court's previous orders approving Plaintiffs' motion for preliminary settlement approval. ECF No. 117. In short, the crux of the dispute is whether Splunk's common stock was artificially inflated because of Defendants' allegedly false and misleading misstatements and omissions about whether Splunk was continuing to invest in marketing and continuing to hire and retain sales

professionals, and whether a subsequent decline in the stock price resulted from the issuance of additional clarifying statements. *Id.*

### B. Procedural Background

Plaintiffs filed the original class action complaint on December 4, 2020. ECF No. 1. On February 2, 2021, Louisiana Sheriffs moved for appointment as Lead Plaintiff. ECF No. 28. The Court appointed Louisiana Sheriffs as Lead Plaintiff and approved Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") as Lead Counsel. ECF No. 59. On June 7, 2021, Lead Plaintiff filed and served its consolidated class action complaint for violations of federal securities laws. ECF No. 65. On July 27, 2021, Defendants filed and served a motion to dismiss the consolidated complaint. ECF No. 67. On March 21, 2022, the Court issued an Order granting in part and denying in part Defendants' motion to dismiss. ECF No. 77. Discovery began in April 2022.

While discovery was ongoing, the parties held a full-day private mediation before JAMS Mediator Jed Melnick on December 15, 2022. ECF No. 138-1 ¶ 6. At the conclusion of the mediation session, Mr. Melnick issued a mediator's recommendation that the Parties settle the action for $30 million. *Id.* ¶ 7. The Parties accepted Mr. Melnick's recommendation. *Id.* On February 7, 2023, Plaintiffs filed a motion for preliminary approval of the class and settlement agreement. ECF No. 117. On October 2, 2023, the Court granted preliminary approval. ECF No. 134. On December 7, 2023, Plaintiffs filed an unopposed motion for final approval of settlement and a motion for award of attorney's fees and litigation expenses. ECF Nos. 136, 137. The Court held a final approval hearing on February 22, 2024.

### C. Terms of Settlement

The proposed settlement agreement ("Settlement"), ECF No. 117-1, resolves the claims between Splunk and the class, which the Court certifies as follows:

> all persons or entities who purchased or otherwise acquired the common stock of Splunk during the Class Period, and continued to hold any Splunk common stock after December 2, 2020. The class excludes "(i) Defendants, (ii) any current or former Officers and directors of Splunk; (iii) the Immediate Family Members of the foregoing excluded persons; (iv) any entity that any Defendant or any of Defendants' Immediate Family Members owns or controls, or owned or controlled during the Class Period; and (v) the legal representatives, heirs, agents, affiliates, successors or assigns of any

2

> excluded persons . . . and any persons or entities that exclude themselves by submitting a request for exclusion that is accepted by the Court.

ECF No. 117-1 ¶ 1(pp). Under the settlement, Splunk agrees to pay $30 million ("Settlement Amount") into the Settlement Fund. *Id.* ¶ 1(oo).

The Settlement Fund shall be used to pay: (a) any taxes; (b) any notice and administration costs; (c) any litigation expenses awarded by the court; (d) any attorney's fees awarded by the court; and (e) any other costs and fees approved by the Court. *Id.* ¶ 9. The balance remaining in the Settlement Fund, that is, the "Net Settlement Fund," shall be distributed to claimants in accordance with the plan of allocation. *Id.*

Pursuant to the proposed plan of allocation, class members who submit timely claims will receive payments on a *pro rata* basis based on the date(s) class members purchased and sold Splunk common stock, as well as the total number and amount of claims filed. *Id.* ¶¶ 23, 27; ECF No. 117-1 at 65.

To calculate the amount that will be paid to each class member, the Claims Administrator will determine each claim's share of the Settlement Fund proceeds based upon the claimant's Recognized Loss. *Id.*

> For each share of Splunk common stock purchased or otherwise acquired during period from May 21, 2020 through December 2, 2020, inclusive, and: (a) sold prior to the close of trading on December 2, 2020, the Recognized Loss Amount per share is zero; (b) sold from December 3, 2020 through and including the close of trading on March 2, 2021, the Recognized Loss Amount will be the least of: (i) $25.00 per share inflation, (ii) the purchase price minus the sale price, or (iii) the purchase price minus the average closing price between December 3, 2020 and the date of sale as stated in Table A at the end of [the] Notice; and (c) held as of the close of trading on March 2, 2021, the Recognized Loss Amount will be the lesser of: (i) $25.00, or (ii) the purchase price minus $166.17, the average closing price for Splunk common stock between December 3, 2020 and March 2, 2021.

ECF No. 117-1 at 65. If any funds remain after the initial *pro rata* distribution, because of uncashed or returned checks, the Claims Administrator will make additional distributions to authorized claimants. ECF No. 138 ¶ 98. Any Settlement Funds not distributed to the class will be paid to a *cy pres* recipient, the Investor Protection Trust. *Id.*

In exchange, the class members will release the following claims against Splunk:

> all claims, demands, losses, rights, and causes of action of every nature . . . that Lead Plaintiff or any other member of the Settlement Class: (i) asserted in the Action, or (ii) could have asserted in the Action or any other forum that arise out of, are based upon, or relate to any of the allegations, transactions, facts, matters or occurrences, representations, or omissions involved . . . in the Action, or which could have been alleged in the Action, and that relate to the purchase or acquisition of Splunk common stock during the Class Period . . . Released Plaintiff's Claims do not cover, include, or release: (i) any claims relating to the enforcement of the Settlement; (ii) any claims asserted in any derivative action, including without limitation, the claims asserted in *Wolk v. Merritt*, No. 4:21-cv-01116 (N.D. Cal. Feb. 15, 2021); *In re Splunk Inc. S'holder Derivative Litig.*, No. CGC-21-589794 (Cal. Super. Ct. Mar. 1, 2021); *Mowery v. Merritt*, No. CGC-21-590673 (Cal. Super. Ct. Apr. 7, 2021); *Sudol v. Merritt*, No. CGC-21-590671 (Cal. Super. Ct. Apr. 7, 2021); *Blackburn v. Merritt*, No. 2022-0986 (Del. Ch. Oct. 31, 2022); and *Williams v. Merritt*, 2022-1117 (Del. Ch. Dec. 2, 2022), or any cases consolidated into those actions; or (iii) any claims of any persons or entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.

ECF No. 117-1 ¶ 1(kk).

Splunk reserves the right to withdraw from and terminate the Settlement if Settlement Class Members who request exclusion from the Settlement Class meet the conditions set forth in Splunk's confidential supplemental agreement with Lead Plaintiff. ECF No. 118-3 at 2.

## II. LEGAL STANDARD

"The claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. In making that determination, the district court must balance several factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction

of the class members to the proposed settlement.[1]
*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026).

Additionally, Rule 23 now requires district courts to consider a similar list of factors, including the adequacy of representation by class representatives and class counsel, whether the proposal was negotiated at arm's length, and the adequacy of the relief and equitable treatment of class members. Fed. R. Civ. P. 23(e)(2). These factors were "not designed 'to displace any factor [developed under existing circuits' precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (internal quotation marks and citations omitted).

A.   **CAFA Compliance**

This action is subject to the requirements of the Class Action Fairness Act of 2005 ("CAFA") which requires that, within ten days of the filing of a proposed settlement, each defendant serve a notice containing certain required information upon the appropriate state and federal officials. 28 U.S.C § 1715(b). CAFA also prohibits a court from granting final approval until 90 days have elapsed since notice was served under Section 1715(b). *Id.* § 1715(d). Defendants mailed the CAFA notices over 90 days ago. ECF No. 135.

---

[1] There is no governmental participant in this case, so the Court does not consider the seventh factor.

5

### III. DISCUSSION

For the reasons that follow, the Court will grant final approval of the settlement.

#### 1. Adequacy of Notice

A "court must direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The parties must provide class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).

The Court approved the parties' proposed notice plan when it granted preliminary approval. ECF No. 134 ¶¶ 8–9. Under the approved notice plan, Plaintiffs retained A.B. Data, Inc. as the claims administrator. *Id.* As of December 7, 2023, "291,713 copies of the Court-approved Notice and Claim Form was mailed to potential Settlement Class Members and nominees." ECF No. 138-4 ¶ 9. In addition, "A.B. Data [] re-mailed . . . 923 Notice Packets to persons whose original mailing was returned by the U.S. Postal Service and for whom updated addresses were obtained by A.B. Data. The U.S. Postal Service [] returned a total of 792 Notice Packets as undeliverable . . . [which] represents less than 0.3% of the total number of Notice Packets mailed." ECF No. 139-1 ¶ 3. In addition, the Court-approved Summary Notice was published in The Wall Street Journal and over the PR Newswire on October 31, 2023. ECF No. 138-4 ¶ 12. The deadline for class members to object to or opt out of the settlement was January 25, 2024. *Id.* at 3, 11. No class member has objected, and 11 individuals have opted out of the settlement. ECF No. 139-1 ¶ 6.

In light of the above procedures, which adhere to the previously approved notice plan, the Court finds that the parties have sufficiently provided notice to the settlement class members. *See Perkins v. LinkedIn Corp.*, No. 13-cv-04303-LHK, 2016 WL 613255, at *7 (N.D. Cal. Feb. 16, 2016) (finding class notice adequate where the approved notice was sent in accordance with the approved notice plan, which was "consistent with the requirements of Rule 23 and due process.").

### 2.  Fairness, Adequacy, and Reasonableness

#### a.  Adequate Representation of the Class

The Ninth Circuit has explained that "adequacy of representation . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego*, 213 F.3d at 462 (citing *Hanlon*, 150 F.3d at 1020).

During the preliminary approval stage, the Court found that "it will likely be able to certify Lead Plaintiff Louisiana Sheriffs' Pension & Relief Fund as Class Representative for the Settlement and Bernstein Litowitz Berger & Grossmann LLP as Lead Class Counsel." ECF No. 134 ¶ 3.  No issues have been raised by class members, and there appear to be no conflicts between named plaintiffs and their counsel.

For purposes of the Settlement, the Court hereby finally certifies Plaintiff Louisiana Sheriffs' Pension & Relief Fund ("Lead Plaintiff") as the representative of the above-described classes, and BLB&G as Class Counsel.  Similarly, the Court finds that Class Counsel are experienced in class action litigation and have vigorously prosecuted this action on behalf of the class.  The Court concludes that this factor weighs in favor of approval.

#### b.  Strength of Plaintiff's Case and Risks of Litigation

Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  Difficulties and risks in litigating weigh in favor of approving a class settlement.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

Plaintiffs here face significant obstacles if the case were to proceed toward trial, as they acknowledge. ECF No. 138 ¶¶ 50–73.  Defendants continue to dispute falsity, materiality, scienter, and loss causation and damages.  *Id.*  The Court finds that these acknowledged weaknesses weigh in favor of approving the settlement.  *See Moore v. Verizon Commc'ns Inc.*, 09-cv-1823-SBA, 2013 WL 4610764, at *6 (N.D. Cal. Aug. 28, 2013) (finding that the strength of plaintiff's case favored settlement because plaintiff admitted that it would face hurdles in

establishing class certification, liability, and damages). Additionally, "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years." *Rodriguez*, 563 F.3d at 966.

### c. Effectiveness of Distribution Method, Terms of Attorney's Fees, and Supplemental Agreements

The Court must consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). The Net Settlement Fund will be allocated to claimants on a *pro rata* basis based on the relative size of their claims. ECF No. 138 ¶ 97. The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of Splunk common stock during the Class Period. In the notice package, each class member received information regarding how the Recognized Loss Amounts are calculated. ECF No. 138 ¶ 92; ECF No. 134 at 32. One hundred percent of the Net Settlement Fund will be distributed to Settlement Class Members who submit eligible claims. ECF No. 138 ¶ 90.

The Court has also evaluated in detail "the terms of [the] proposed award of attorney's fees," Fed. R. Civ. P. 23(e)(2)(C)(iii), in connection with Class Counsel's motion for fees and costs. Class Counsel requests an attorney's fee that is 25% of the Settlement Fund—the prevailing benchmark for percentage fee awards in the Ninth Circuit. ECF No. 138 ¶ 84, 101–102; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). As explained in its separate order, the Court finds that the fees amount is presumptively reasonable. Accordingly, the Court finds that this weighs in favor of approval.

The only supplemental "agreement identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(C)(iv), permits Defendants to terminate the settlement if a certain percentage of the class requests exclusion. ECF No. 117-1 ¶ 38; ECF No. 138 ¶ 46. The existence of a termination option triggered by the number of class members who opt out of the settlement does not by itself render the settlement unfair. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 948. The Court concludes that the termination provision is fair and reasonable and does not weigh against approval.

#### d. Equitable Treatment of Class Members

Consistent with Rule 23's instruction to consider whether "the proposal treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D), the Court considers whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hefler*, 2018 WL 6619983, at *8.

The calculation of claim amount depends upon several factors, including when the claimant's stock was purchased and sold and the purchase or sale price. ECF No. 136 at 25. The calculations under the Plan of Allocation are intended as a method to weigh the claims of Settlement Class Members against one another for the purposes of making an equitable allocation of the Net Settlement Fund. ECF No. 138 ¶ 92.

The Court finds that the Settlement treats class members equitably and that this factor supports approval. *See Hefler*, 2018 WL 6619983, at *8; *see also In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. Jul. 22, 2019) (finding equitable to class members an allocation based on *pro rata* distribution).

#### e. Settlement Amount

Although not articulated as a separate factor in Rule 23(e), "[t]he relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C)–(D) advisory committee's note to 2018 amendment. The Court therefore examines "the amount offered in settlement." *Hanlon*, 150 F.3d at 1026.

To evaluate the adequacy of the settlement amount, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). But "a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Just.*, 688 F.2d at 628.

Here, the $30 million settlement fund achieves a good result for the class. Class Counsel calculates that the settlement "represents between approximately 5% and 20.5% of the realistic maximum damages for the Settlement Class, assuming that Lead Plaintiff prevailed on class certification and on all liability issues at trial and appeal." ECF No. 138 ¶ 81. It is well-settled

9

law that a cash settlement smaller than the potential recovery "does not per se render the settlement inadequate or unfair." *In re Omnivision Techs., Inc.,* 559 F.Supp.2d 1036, 1042 (N.D. Cal. 2008) (quoting *Officers for Just.*, 688 F.2d at 628). In light of the uncertainties with litigation described above, the Court finds the percentage of recovery fair and reasonable. *See, e.g., Omnivision*, 559 F. Supp. 2d at 1042 (approving settlement representing "just over 9% of the maximum potential recovery asserted by either party," which was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *see also* Cornerstone Research, *Securities Class Action Settlements: 2022 Review and Analysis* 9 (2023), https://securities.stanford.edu/research-reports/1996-2022/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf (last visited Feb. 21, 2024) (2022 median and average settlements as a percentage of calculated total damages were 3.6% and 5.4% respectively).

### f. Extent of Discovery

"[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego*, 213 F.3d at 459 (quotation marks and citation omitted). However, a greater amount of completed discovery supports approval of a proposed settlement, especially when litigation has "proceeded to a point at which both plaintiffs and defendants ha[ve] a clear view of the strengths and weaknesses of their cases." *Chun-Hoon*, 716 F. Supp. 2d at 852.

Here, the parties conducted sufficient discovery to make an informed decision about the adequacy of the settlement. ECF No. 138 ¶¶ 3, 24–38, 105, 117 (explaining that the parties conducted substantial fact discovery including: exchanging initial disclosures, propounding document requests, reviewing document productions, preparing and serving document subpoenas on non-party witnesses, briefing motions, and participating in mediation); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1042 (finding the parties were sufficiently informed about the case prior to settling because they engaged in discovery, took depositions, briefed motions, and participated in mediation). This factor weighs in favor of approval.

### g. Counsel's Experience

The Court also considers "the experience and views of counsel." *Hanlon*, 150 F.3d at

1026. That counsel advocate in favor of this Settlement weighs in favor of its approval.[2]

### h.   Absence of Collusion and Arm's Length Negotiations

"Where . . . the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness . . . ," and the Court must examine the risk of collusion with "an even higher level of scrutiny for evidence of collusion or other conflicts of interest." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (internal quotation marks omitted) (first quoting *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012); and then quoting *In re Bluetooth*, 654 F.3d at 946). Signs of potential collusion include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing agreement"; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund. *In re Bluetooth*, 654 F.3d at 947. If "multiple indicia of possible implicit collusion" are present, the Court has a "special 'obligat[ion] to assure itself that the fees awarded in the agreement [are] not unreasonably high.'" *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

Here, the settlement does not implicate any of the *Bluetooth* factors. Class Counsel requests an attorney's fee that is 25% of the Settlement Fund—the prevailing benchmark for percentage fee awards in the Ninth Circuit. ECF No. 138 ¶ 84, 101–102; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949. There is no clear sailing provision. ECF No. 117-1 ¶ 17. Furthermore, the Plan of Allocation identifies the Investor Protection Trust as the proposed *cy pres* recipient if there are any residual funds remaining after all cost-effective distributions to Settlement Class Members have been completed. ECF No. 138 ¶ 99. The Court concludes that the absence of any *Bluetooth* factors weighs in favor of approval.

### i.   Reaction of the Class

Finally, the Court considers the class's reaction to the settlement. "[T]he absence of a

---

[2] The Court considers this factor, as it must, but gives it little weight. "[A]lthough a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." *Principles of the Law of Aggregate Litigation* § 3.05 cmt. a (Am. Law. Inst. 2010).

United States District Court
Northern District of California

large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision*, 559 F. Supp. 2d at 1043 (quotation marks and citation omitted). Here, the reaction of the class was favorable. No class member objected to the settlement, and only 11 individuals have requested to be excluded from the class. ECF No. 139-1 ¶ 6. This factor therefore favors approval. *See Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

### 3. Balance of Factors

All of the factors outlined in *Churchill Village* weigh in favor of final approval and a finding that the proposed settlement is fair, reasonable, and adequate. 361 F.3d 566.

## CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1. For the reasons set forth in its October 2, 2023 Order, ECF No. 134, the Court confirms certification of the class for settlement purposes only.
2. The Court grants final approval of the proposed settlement agreement and plan of allocation.
3. Class members who asked to opt out of the settlement are excluded from the class.
4. The Releases set forth the Stipulation, together with the definitions relating thereto, are expressly incorporated herein in all respects. ECF No. 117-1.
5. If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Judgment shall be vacated, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Lead Plaintiff, the other Settlement Class Members, and Defendants, and Lead Plaintiff and Defendants shall revert to their respective positions in the Action as of immediately prior to the Parties' agreement in principle on December 15, 2022, as provided in the Stipulation.
6. All claims asserted against Defendants in this case by Lead Plaintiff and the other Settlement Class Members are hereby dismissed with prejudice.

7. The parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.
8. The Court retains continuing jurisdiction over this settlement solely for the purposes of enforcing this agreement, addressing settlement administration matters, and addressing such post-judgment matters as may be appropriate under Court rules and applicable law.

Judgment is hereby entered on the terms set forth above.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  March 4, 2024



JON S. TIGAR
United States District Judge

13