**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3472

John Rizio-Hamilton (*pro hac vice*)
johnr@blbglaw.com
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Tel: (212) 554-1505

*Lead Counsel for Lead Plaintiff Louisiana
Sheriffs' Pension & Relief Fund and the Settlement
Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| IN RE SPLUNK INC. SECURITIES LITIGATION | Case No. 4:20-cv-08600-JST |
| | **DECLARATION OF JOHN RIZIO-HAMILTON PROVIDING INFORMATION REQUESTED AT THE JANUARY 8, 2025 CASE MANAGEMENT CONFERENCE** |
| | Judge:      Hon. Jon S. Tigar |

DECLARATION OF                                                    4:20-cv-08600-JST
JOHN RIZIO-HAMILTON

I, JOHN RIZIO-HAMILTON, declare as follows:

1.     I am a partner in the law firm of Bernstein Litowitz Berger & Grossmann LLP, which is counsel for Lead Plaintiff Louisiana Sheriffs Pension & Relief Fund and Lead Counsel for the Settlement Class.  As the Court requested at the January 8, 2025 case management conference, I submit this Declaration to provide the Court with the facts concerning the expected residual funds remaining following the completion of the distribution of the Settlement Fund to eligible Claimants. I have personal knowledge of the matters set forth herein and, if called upon, could and would testify thereto.[1]

2.     By way of background, pursuant to the terms of the Stipulation, the full Settlement Amount of $30,000,000 was paid into an interest-bearing Escrow Account at Huntington National Bank by or on behalf of Defendants in 2023.  A portion of the Settlement was paid on February 2, 2023 and the remainder was paid in October 2023, after the Court granted preliminary approval of the Settlement.

3.     On March 4, 2024, the Court entered an Order Granting Lead Plaintiff's Motion for Final Approval of Settlement (ECF No. 142).  The same day, the Court entered an Order Awarding Attorneys' Fees and Litigation Expenses (ECF No. 143) ("Fee Order") that awarded "attorneys' fees in the amount of 25% of the Settlement Fund net of litigation expenses awarded, or $7,440,061 (plus interest earned on this amount at the same rate as the Settlement Fund)."  ECF No. 143, at ¶ 4.  The Fee Order further provided that "Plaintiffs' Counsel shall be paid 90% of the attorneys' fees awarded and 100% of the approved expenses immediately upon entry of the Judgment approving the Settlement and this Order.  The remaining 10% of the attorneys' fees awarded (and any interest earned thereon) will be paid after Lead Plaintiff conducts the distribution of the Net Settlement Fund to eligible claimants and files a Post-Distribution Accounting."  *Id.* at ¶ 5.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated January 30, 2023 (ECF No. 117-1) (the "Stipulation").

DECLARATION OF                                    1                           4:20-cv-08600-JST
JOHN RIZIO-HAMILTON

4.     On March 5, 2024, in accordance with the Fee Order, Lead Counsel arranged for payment from the Escrow Account of 90% of the attorneys' fees awarded and all of the litigation expenses awarded.  Specifically, with accrued interest, the $7,440,061 fee award had increased to $7,632,678.47.  Plaintiffs' Counsel took 90% of that amount ($6,869,410.62) plus the litigation expenses awarded ($239,754.85) on March 5, 2024.  The held-back 10% of the fees, which amounted to $763,267.85, was left in the Escrow Account at Huntington together with the funds intended to be distributed to the Settlement Class.

5.     On July 23, 2024, after the Claims Administrator had completed the processing of claims received, Lead Plaintiff moved to conduct the distribution of the Net Settlement Fund to Settlement Class Members who submitted eligible Claims.  *See* ECF No. 144.  The Court approved that motion on August 12, 2024.  *See* ECF No. 149 ("Distribution Order").

6.     Lead Counsel prepared to conduct the distribution, which ultimately occurred on August 23, 2024.  In preparation for the distribution, Lead Counsel prepared instructions to the Escrow Agent (Huntington Bank) to transfer the settlement funds from the Escrow Account held at Huntington Bank to the distribution account held at the claims administrator (A.B. Data), so that the checks and wires could be sent to Eligible Claimants.  Lead Counsel's intent had been to withhold the $763,267.85 in held-back attorneys' fees and maintain those funds in the Escrow Account.  However, through an error on Lead Counsel's part, the transfer instructions prepared by Lead Counsel told the Escrow Agent to transfer 100% of the remaining balance in the Escrow Account— rather than leaving the held-back 10% of the fees, or $763,267.85, in the Escrow Account pending the completion of the distribution.

7.     Once the full balance in the Escrow Account was transferred to the distribution account at A.B. Data, A.B. Data then distributed that full amount (except for $100,000 that it maintained as reserve for any potential tax liability) to the Eligible Claimants.

8.     This resulted in a total of $22,906,925.31 being distributed to Settlement Class Members, rather than $22,143,657.46, which would have been distributed if the remaining fees were correctly held back.  The larger amount distributed meant that Eligible Claimants received *pro rata* payments that were approximately 3% higher than they should have been.

DECLARATION OF
JOHN RIZIO-HAMILTON

2

4:20-cv-08600-JST

9.      As provided in the Distribution Order (ECF No. 149, at ¶ 3(d)), the checks mailed to Eligible Claimants on August 23, 2024 had a "stale date" of 90 days after their issuance, or November 21, 2024.  A relatively small amount of checks was then reissued in response to requests from Eligible Claimants; those reissued checks had stale dates of December 26, 2024 and February 10, 2025, as noted further below.

10.      A.B. Data has continued to honor any checks that are negotiated after their stale date. Since the Post-Distribution Accounting was filed, additional checks have been cashed (or reissued via wire), so that the current number of uncashed checks has fallen to 85 with a total value of $104,147.82, which is less than 0.5% of the total amount of funds distributed.

11.      As set forth in the [Proposed] Order Releasing Remainder of Attorneys' Fees (ECF No. 151-1) submitted to the Court and discussed in ¶ 32 of the Post-Distribution Accounting, Lead Counsel respectfully requests that, now that the distribution has been completed, the Court permit the residual remaining funds to be paid to Plaintiffs' Counsel up to the maximum of the withheld $763,268 in fees.  The residual funds consist of uncashed checks following the stale date of such checks, returned funds, any unused tax reserve, and tax refunds received by the Net Settlement Fund. Below are more details on these potential residual funds.

12.      **Uncashed Checks.**  Currently, there is $104,147.82 in uncashed checks.  A.B. Data is continuing to honor any checks that may be cashed until after the latest stale date on the uncashed checks.  There is a very small amount of checks that are being reissued (totaling $1,846.94) that have a stale date of February 10, 2025, which is the latest of all the stale dates.

13.      **Returned Funds.**  "Returned funds" total $28,323.01.  The large majority of these returned funds are from either (i) checks mailed to individuals which were returned as undeliverable by the post office and for whom no updated address could be located or (ii) payments sent to third-party filers (such as custodian banks) who filed on behalf of their clients, but who were currently unable to locate their clients to provide them the payment (for example, because they have closed their accounts), and those filers have returned the funds to A.B. Data.  This amount also includes $8,477.66 in funds that were previously believed to be uncashed checks, but after additional follow

DECLARATION OF                                    3                          4:20-cv-08600-JST
JOHN RIZIO-HAMILTON

up with these Claimants, the uncashed payments were identified as duplicates, and so these funds have been returned to the Settlement Fund.

14.    **Tax Reserve** and **Tax Refund**.  The last two categories—"unused tax reserve" and "expected tax refund"—are related.  As discussed at the hearing on January 8, 2025, the Settlement Fund is a legal entity, a form of trust known as a "Qualified Settlement Fund," established under Treasury Regulation § 1.468B-1, 26 C.F.R. § 1.468B-1.  The Settlement Fund is responsible for paying taxes on the interest income that it earns during its life (from its funding to the distribution).  *See* Stipulation ¶¶ 11-12.  No taxes are paid on the principal settlement funds, only on any interest accrued.  In this case, the Settlement Fund accrued a total of $1,329,808.30 in interest and paid a total of $365,000 in taxes during 2023 and 2024, which included estimated taxes paid during 2024, as well as $12,569 in tax preparation fees.

15.    At the time of the distribution in August 2024, A.B. Data maintained a reserve of $100,000 in cash to cover any potential additional tax liability of the Settlement Fund.[2]  That tax reserve has not been used, and the $100,000 cash reserved for that purpose remains in A.B. Data's distribution account.  According to information from accountants at EisnerAmper LLP, who act as tax accountants for the Settlement Fund, there will be no additional taxes owed and, accordingly, the $100,000 tax reserve will not be used.  Additionally, EisnerAmper LLP has informed us that a refund of approximately $180,000 is expected to be received in the second quarter of 2025, following the filing of the Settlement Fund's final year-end tax return for 2024.

16.    In sum, the residual amount available consists of the following: (1) uncashed checks in the amount of $104,147.82, which amount may decline as additional checks are cashed through the last stale date of February 10, 2025; (2) returned funds in the amount of $28,323.01; (3) an unused tax reserve in the amount of $100,000; and (4) an anticipated tax refund in the amount of $180,000.  If one assumes that all currently uncashed checks are cashed, these residual funds are expected to total approximately $308,000 (based on the approximately $28,000 in returned funds,

---

[2] *See* Distribution Order (ECF No. 149), at ¶ 3(c) ("A.B. Data is directed to distribute 100% of the Net Settlement Fund, after deducting all payments previously allowed, payments approved by this Order, and ***any estimated taxes*** . . . ") (emphasis added).

| DECLARATION OF JOHN RIZIO-HAMILTON | 4 | 4:20-cv-08600-JST |
| --- | --- | --- |

the $100,000 unused tax reserve, and the $180,000 expected tax refund. If no further checks are cashed, the maximum residual funds would be approximately $412,000. In all events, any residual funds will be substantially below the $763,268 in remaining fees that were previously awarded and intended to be withheld.

17. In conclusion, Lead Counsel respectfully requests that the Court enter the [Proposed] Order Releasing Remainder of Attorneys' Fees, which is submitted as an attachment to this declaration.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of January, 2025.

_/s John Rizio-Hamilton_
John Rizio-Hamilton